## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION | MDL-1586 |
| This Document Relates to:<br><br>In re ALGER, COLUMBIA, JANUS, MFS, ONE GROUP, ALLIANZ DRESDNER AND PUTNAM<br><br>*Saunders v. Putnam American Government Income Fund, et al.* | No. 04-md-15863<br>Hon. J. Frederick Motz<br><br><br>No. 04-cv-00560 |

## MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENTS, CERTIFICATION OF SETTLEMENT CLASS AND APPOINTMENT OF CLASS COUNSEL

Richard Cordray
ATTORNEY GENERAL FOR THE
STATE OF OHIO
Albert G. Lin
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
Telephone:     (614) 728-5454
Facsimile:     (614) 995-0246


Richard S. Wayne
Nicole M. Lundrigan
John M. Levy
STRAUSS & TROY, L.P.A.
The Federal Reserve Building
150 East Fourth Street
Cincinnati, OH 45202-4018
Telephone:     (513) 621-2120
Facsimile:     (513) 629-9426

Stanley M. Chesley
James R. Cummins
Terrance L. Goodman
Robert Heuck II
Jean M. Geoppinger
WAITE, SCHNEIDER, BAYLESS,
& CHESLEY CO., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202
Telephone:     (513) 621-0267
Facsimile:     (513) 621-0262


Sherrie R. Savett
Lawrence Deutsch
Glen L. Abramson
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone:     (800) 424-6690
Facsimile:     (215) 875-4604


*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................... i

TABLE OF AUTHORITIES ............................................................... iii

STATUTES ...................................................................................... viii

OTHER AUTHORITIES ................................................................... viii

STATEMENT OF THE CASE ............................................................. 1

PRELIMINARY STATEMENT ........................................................... 2

STATEMENT OF FACTS .................................................................. 2

THE SETTLEMENTS ....................................................................... 5

ARGUMENT ................................................................................... 7

A.    APPLICABLE LEGAL STANDARDS ........................................ 7

B.    THE PROPOSED SETTLEMENT IS THE RESULT OF ARMS-
      LENGTH NEGOTIATIONS ..................................................... 8

C.    THE PROPOSED SETTLEMENT IS WITHIN THE RANGE OF
      POSSIBLE APPROVAL ......................................................... 9

D.    THE STANDARDS FOR CERTIFICATION OF THE SETTLEMENT
      CLASS UNDER RULE 23 ARE SATISFIED ................................ 9

      1.    The Numerosity Requirement Is Satisfied ...................... 12

      2.    There Are Questions Of Law And Fact Common To
            The Class ................................................................... 13

      3.    Lead Plaintiffs' Claims Are Typical Of Those Of The
            Members Of The Class .................................................. 16

      4.    Lead Plaintiffs Will Fairly And Adequately Protect The Interests
            Of The Class ............................................................... 19

E.    THE REQUIREMENTS OF RULE 23(B)(3) ARE
      SATISFIED ......................................................................... 21

      1.    Common Questions Of Law And Fact Predominate ......... 21

      **2.**      **A Class Action Is Superior To Other Available Methods For The Fair And Efficient Adjudication Of This Action** ............................... 23

   **F.**      **Additional Considerations** ........................................................................ 25

      **1.**      **Distribution Of Class Recovery** ........................................................ 25

      **2.**      **Class Notice** ........................................................................................ 26

**Conclusion** ........................................................................................................................... 27

**Certificate of Service** ......................................................................................................... 29

# **TABLE OF AUTHORITIES**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591, 621, 625 (1997) ........................................................................ 12, 19, 22

*Arnett v. American Nat'l Red Cross*,
    78 F.R.D. 73, 75 (D.D.C. 1978) ..................................................................................... 20

*Ballard v. Blue Shield of S.W. Va., Inc.*,
    543 F.2d 1075, 1080 (4th Cir. 1976), *cert. denied*, 430 U.S. 922 (1977) ..................... 12

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ..................................................................................................... 10

*Blackie v. Barrack*
    524 F.2d 891, 909 (9th Cir. 1975) ................................................................................ 20

*Bronson v. Board of Education of the City School District of the City of Cincinnati*,
    604 F. Supp. 68, 71 (S.D. Ohio 1984) ............................................................................. 8

*Covelo Indian Cmty. v. Watt*,
    551 F. Supp. 366, 377 (D.D.C. 1982) ........................................................................ 16, 20

*Deutschman v. Beneficial Corp.*,
    132 F.R.D. 359, 371 (D. Del. 1990) ............................................................................... 18

*Dunnigan v. Metropolitan Life Ins. Co.*,
    214 F.R.D. 125, 137 (S.D.N.Y. 2003) ............................................................................ 15

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
    89 F.R.D. 87, 93 (S.D.N.Y. 1981) .................................................................................. 23

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156, 177-78 (1974) ......................................................................................... 11

*Eisenberg v. Gagnon*,
    766 F.2d 770, 785, 786 (3rd Cir. 1985) ................................................................. 11, 18, 20

*Fenner & Smith*,
    903 F.2d 176, 179 (2nd 1990) ........................................................................................ 10

*Foltz v. U.S. News & World Report, Inc.*,
    111 F.R.D. 49 (D.D.C. 1986) ......................................................................................... 10

*Forbush v. J.C. Penney Co.*,

994 F.2d 1101, 1106 (5th Cir. 1993) ........................................................................ 16

*Freeland v. Iridium World Communications, Ltd.*,
    233 F.R.D. 40, 42, 44 (D.D.C. 2006) ................................................................. 10, 11

*Ganesh, L.L.C. v. Computer Learning Ctrs., Inc.*,
    183 F.R.D. 487, 489 (E.D. Va. 1998) ............................................................... 12, 18

*General Tel. Co. of Southwest v. Falcon*,
    457 U.S. 147, 157, 158 n.13 (1982) ................................................................. 16, 19

*In re Arakis Energy Corp. Sec. Litig.*,
    No. 95-3431, 1999 U.S. Dist. LEXIS 22246 at *37, *38 (E.D.N.Y. Apr. 27, 1999) 22, 24

*In re Bank One Sec. Litig./First Chi. S'holder Claims*,
    Case No. 00 CV 0767, 2002 U.S. Dist. LEXIS 8709, at * 7 (N.D. Ill. May 9, 2002).... 10

*In re BearingPoint, Inc. Sec. Litig.*,
    232 F.R.D. 534, 539, 542, 545 (E.D. Va. 2006) ......................................... 10, 13, 22, 24

*In re Blech Sec. Litig.*,
    187 F.R.D. 97, 102, 104 (S.D.N.Y. 1999) ........................................................ 11, 14

*In re Drexel Burnham Lambert Group*,
    960 F.2d 285, 291 (2nd Cir. 1992) .................................................................. 17

*In re Dun & Bradstreet Credit Svcs. Customer Litig.*,
    130 F.R.D. 366, 370 (S.D. Ohio 1990) ............................................................... 8

*In re Enron Corp. Sec. Litig.*,
    206 F.R.D. 427, 445 (S.D. Tex. 2002) .............................................................. 18

*In re Gilat Satellite Networks, Ltd.*,
    2007 WL 2743675 at *19 (E.D.N.Y. Sept. 18, 2007) ...................................... 25

*In re IGI Sec. Litig.*,
    122 F.R.D. 451, 456 (D.N.J. 1988) .................................................................. 17

*In re Indep. Energy Holdings, PLC Sec. Litig.*,
    210 F.R.D. 476, 479 (S.D.N.Y. 2002) .............................................................. 11, 12

*In re Initial Pub. Offering Sec. Litig.*,
    227 F.R.D. 65, 86-87, 88 (S.D.N.Y. 2004) ....................................................... 12, 13, 19

*In re Kirschner Medical Corp. Sec. Litig.*,
    139 F.R.D. 74, 78, 79 80 (D. Md. 1991) ....................................................... 14, 17, 20, 22

iv

*In re Microsoft Corp. Antitrust Litigation,*
   185 F. Supp.2d 519, 523 (D. Md. 2002)(Motz. J.) ....................................... 26

*In re Nasdaq Market-Makers Antitrust Litig.,*
   1997-2 Trade Cas. (CCH) ¶ 71,981, at 80,817 (S.D.N.Y. Oct. 14, 1997)....................... 8

*In re Newbridge Networks Sec. Litig.,*
   926 F. Supp. 1163, 1176 (D.D.C. 1996).................................................. 10, 14

*In re Oxford Health Plans, Inc,*
   191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Oxford I")....................................... 23

*In re Salomon Inc. Sec. Litig.,*
   No. 91 Civ. 5442, 1994 U.S. Dist. LEXIS 8038, at *42 (S.D.N.Y. June 15, 1994)........ 9

*In re Sepracor, Inc. Sec. Litig.,*
   233 F.R.D. 52, 56 (D. Mass. 2005) ........................................................ 18

*In re Southeast Hotel Props. Ltd. Partnership Investor Litig.,*
   151 F.R.D. 597, 601, 605 (W.D.N.C.
   1993)……………………............................................................... 13, 16

*In re Sumitomo Copper Litig.,*
   194 F.R.D. 480, 482 (S.D.N.Y. 2000) .......................................................... 17

*In re Telectronics Pacing Sys., Inc.,*
   137 F. Supp.2d 985, 1026 (S.D. Ohio 2001) .................................................. 8

*In re The Mills Corp. Sec. Litig.,*
   257 F.R.D. 101, 108 (E.D. Va. 2009) ........................................................ 19

*In re Veeco Instruments, Inc. Sec. Litig.,*
   2007 WL 4115808 at *12 (S.D.N.Y. Nov. 7, 2007)....................................... 25

*In re Vitamins Antitrust Litig.,*
   209 F.R.D. 251, 256, 258, 260, 262 (D.D.C. 2002) .................................... 10, 11, 16, 22

*Jarvaise v. Rand Corp.,*
   212 F.R.D. 1, 4 (D.D.C. 2002); Fed. R. Civ. P. 23(b)(3) ............................... 24

*Jones v. Ford Motor Credit Co.,*
   No. 00-8330, 2005 U.S. Dist. LEXIS 5381 at *81 (S.D.N.Y. Mar. 31, 2005).............. 10

*King v. Kansas City S. Indus., Inc.,*
   519 F.2d 20 (7th Cir. 1975) ................................................................. 10

*Lewis v. Capital Mortg. Invs.*,
    78 F.R.D. 295, 304 (D. Md. 1977) ......................................................... 13, 14

*Lewis v. National Football League*,
    146 F.R.D. 5, 19 (D.D.C. 1992) Covelo, 551 F. Supp. at 377 ...................................... 20

*Lorazepam*,
    202 F.R.D. at 14, 27, 29 .......................................................... 12, 16, 17, 23

*Malone v. Microdyne Corp.*,
    148 F.R.D. 153, 156 (E.D. Va. 1993)............................................................ 12

*Meredith v. Mid-Atlantic Coca Cola Bottling Co., Inc.*
    129 F.R.D. 130, 133 (E.D. Va. 1989)........................................................... 17

*NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493, 514-15 (S.D.N.Y. 1996) .................................................... 20

*National Constructors Ass'n v. National Elec.Contractors Ass'n*,
    498 F. Supp. 510, 545 (D. Md. 1980), *modified* 678 F.2d 492 (4th Cir. 1982) ............ 17

*Pigford v. Glickman*,
    182 F.R.D. 341, 348, 349 (D.D.C. 1998) ............................................... 13, 16

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
    No. 94 Civ. 5587 (PKL), 1996 U.S. Dist. LEXIS 3531 at *21
    (S.D.N.Y. Mar. 25, 1996) ......................................................... 22

*Robbins v. Moore Med. Corp.*,
    788 F. Supp. 179, 187 (S.D.N.Y. 1992) ...................................................... 20

*Saxon Sec. Litig.*,
    No. 82-Civ-3103, 1984 U.S. Dist. LEXIS 19223 at *19 (S.D.N.Y. Feb. 23, 1984) ...... 18

*Scholes v. Stone, McGuire & Benjamin*,
    143 F.R.D. 181, 187 (N.D. Ill. 1992) ...................................................... 19

*Schur v. Friedman & Shaftan, P.C.*,
    123 F.R.D. 611,613-14 (N.D. Cal. 1988) .................................................... 18

*Shipes v. Trinity Indus.*,
    987 F.2d 311, 316 (5th Cir. 1993) ........................................................ 16

*Simpson v. Specialty Retail Concepts, Inc.*,
    149 F.R.D. 94, 102 (M.D.N.C. 1993)................................................... 16, 19

*Stewart v. Rubin,*
    948 F. Supp. 1077, 1088 (D.D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997) .......... 13

*Thomas v. Albright,*
    139 F.3d 227, 238 (D.C. Cir. 1998) ............................................................................ 17

*United States v. Trucking Employers, Inc.,*
    75 F.R.D. 682, 687 (D.D.C. 1977) ............................................................................. 17

**STATUTES**

U.S.C. § 78u-4(a)(3)(B)........ ....................................................................................... 3

**OTHER AUTHORITIES**

Fed.R.Civ.P. 23(e)............ ....................................................................................... 1

Fed.R.Civ.P. 23(b)(3)......... ..................................................................................... 24

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION | MDL-1586 |
| This Document Relates to: | No. 04-md-15863 |
| In re ALGER, COLUMBIA, JANUS, MFS, ONE GROUP, ALLIANZ DRESDNER AND PUTNAM | Hon. J. Frederick Motz |
| *Saunders v. Putnam American Government Income Fund, et al.* | No. 04-cv-00560 |
| *Zuber v. Putnam Investment Management LLC, et al.* | No. 04-md-0564 |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENTS, CERTIFICATION OF SETTLEMENT CLASS AND
APPOINTMENT OF CLASS COUNSEL**

Lead Plaintiff Ohio Tuition Trust Authority and Plaintiff Joseph Shanis (collectively, "Plaintiffs") hereby request pursuant to Federal Rule of Civil Procedure 23(e) that the Court preliminarily approve the settlements entered between Plaintiffs and: (1) Defendants Putnam Investment Management, LLC, Putnam Investments Trust, Putnam, LLC, Putnam Investment Management Trust, Putnam Retail Management Limited Partnership, Irene M. Esteves, Lawrence J. Lasser, Robert F. Lucey, Stephen M. Oristaglio and Gordon H. Silver (hereinafter collectively referred to as "Putnam Defendants"); (2) Prudential Securities Incorporated; (3) Banc of America Securities LLC ("BAS"); and (4) Canary Capital Partners, LLC; Canary Capital Partners, Ltd.; Canary Investment Management, LLC; and Edward Stern (hereinafter referred to as the "Canary Parties") (Putnam Defendants, Prudential Securities Incorporated, BAS and Canary Parties are hereinafter referred to collectively as the "Settling Defendants.")

1

The settlement agreements are attached hereto as Exhibit A. In addition, Plaintiffs request that the Court approve the requested certification of the settlement class and appointment of class counsel.

**PRELIMINARY STATEMENT**

Settlements were reached between Plaintiffs and BAS, the Canary Parties and Prudential Securities over several years. BAS and the Canary Parties settlements were settled jointly with plaintiffs in other subtracks, while the Prudential Securities settlement involved only this subtrack. After settlement conferences facilitated by Fourth Circuit Senior Mediator Tom Ball, Plaintiffs and the Putnam Defendants arrived at a proposed settlement of the claims in this case in December 2009.

**STATEMENT OF FACTS**

Putative class actions were filed against the Settling Defendants beginning on October 23, 2003. The complaints, filed throughout the United States in federal and state courts, alleged violations of federal securities laws and state laws. The complaints alleged that the defendants either engaged in, or allowed, trading in mutual funds using stale prices, a type of trading sometimes referred to as "market timing."[1]  The great majority of these actions were transferred to this Court pursuant to the February 20, 2004 Order of the Judicial Panel on Multidistrict Litigation.

---

[1] As set forth in the Putnam Stipulation, the Putnam Defendants deny any wrongdoing, fault, liability or damage to Plaintiffs, deny that they engaged in any wrongdoing, deny that they committed any violation of law or breach of duty, deny that they acted improperly in any way, believe that they acted properly at all times and assert that the actions brought against them have no merit.  Likewise, the other Settling Defendants also deny liability to Plaintiffs.  Nothing in this memorandum is, or is intended to be, an admission of any kind by the Settling Defendants. Further, the Settling Defendants reserve all arguments in opposition to class certification in the event that this settlement is not approved.

On May 25, 2004, the Court appointed the Ohio Tuition Trust Authority as Lead Plaintiff under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(3)(B). On August 16, 2006, the undersigned Stanley M. Chesley of the firm of Waite, Schneider, Bayless & Chesley was appointed Lead Counsel.

On August 22, 2006, Plaintiffs filed a second consolidated amended complaint (the "Complaint"), which alleged that: (1) the Putnam Defendants allegedly allowed certain shareholders to take advantage of stale prices by engaging in market timing trading of shares of Putnam mutual funds, despite allegedly being aware that market timing was harmful to long term shareholders; (2) the Putnam Defendants allegedly permitted certain Putnam employees, including fund managers, to engage in market timing of the Putnam funds; (3) the Putnam Defendants allegedly permitted certain participants in 401(k) and other plans to engage in market timing of the Putnam funds; (4) the prospectuses of the Putnam funds allegedly were false and misleading because they indicated that market timing would not be tolerated in the funds and omitted the material fact that Putnam Defendants allowed certain shareholders to engage in market timing; and (5) the other Settling Defendants allegedly took advantage of stale prices by engaging in or facilitating market timing trading of shares of Putnam mutual funds. The Putnam mutual funds potentially most likely affected by the alleged market timing were those funds identified by Professor Peter Tufano, in his capacity as the Independent Assessment/Distribution Consultant, as provided in his Reports to the United States Securities Exchange Commission and the Massachusetts Securities Division, dated March 2, 2005 (the "Affected Mutual Funds").  The Complaint asserted claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and S.E.C. Rule 10b-5 promulgated thereunder against all of the Settling Defendants; under Section 20(a) of the Exchange act against certain of the Putnam Defendants

alleged to be control persons; and Section 36(b) of the Investment Company Act against certain of the Putnam Defendants alleged to have received advisory fees in respect of improper market timing. In prior iterations of the Complaint, Plaintiffs alleged additional claims against other defendants.

The following rulings adverse to the Plaintiffs were entered in this action:

- In the 2005 Janus subtrack opinion, the Court dismissed claims against certain broker dealers for vagueness, dismissed 1933 Securities Act claims for failure to allege sale for less than purchase, dismissed Section 30(b) Investment Company Act claims based on a holding that the statute applies only to compensation, and dismissed Investment Company Sections 34(b) and 36(a) claims for lack of a private right of action;

- On May 1, 2006, the Court dismissed claims against mutual funds, holding that the funds were victims of market timing;

- On May 30, 2006, the Court dismissed claims against ten fund trustees for the same reason it had dismissed claims against the funds. The Court also dismissed Investment Company claims against four entities related to the Putnam Defendants for failure to allege excessive compensation;

- On July 7, 2006, claims against eight Putnam officers and employees and four traders were dismissed for failure to allege manipulative or deceptive acts, and claims against certain broker dealer defendants that had previously been dismissed were allowed to proceed;

- On December 30, 2008, summary judgment was granted as to all remaining claims except those based on 401(k) plans, based on holdings that plaintiffs had changed their theory, there was no evidence of agreements to allow market timing by traders and defendants were not reckless in failing to prevent market timing;

- On April 14, 2009, the Court dismissed the 401(k) claim based on the its holding that the payments to the SEC and Commonwealth of Massachusetts were sufficient to compensate plaintiffs.

Plaintiffs appealed the December 2008 and April 2009 rulings to the Fourth Circuit.

**THE SETTLEMENTS**

Plaintiffs' counsel conducted an extensive investigation into the facts, circumstances, and legal issues associated with this action. This investigation has included: (1) locating and interviewing witnesses; (2) drafting and service of written discovery requests; (3) inspecting, reviewing and analyzing the hundreds of thousands of pages of documents produced by Putnam Defendants, other parties and third parties; (3) drafting and service of requests for admissions; (4) taking and defending dozens of depositions; and (5) researching the applicable law with respect to the claims asserted in the action and the potential defenses thereto.

Defense counsel also conducted a thorough investigation into Plaintiffs' claims and the underlying events and transactions alleged in the Complaint, including the activities of employees alleged to have engaged in market timing and employees charged with investigating and preventing market timing.

After substantial arms-length negotiations conducted by experienced and informed counsel, the Plaintiffs and the Settling Defendants have agreed to a proposed settlement. For purposes of the proposed settlement only, Plaintiffs seek the certification of a class of: All persons who purchased and/or held shares in any mutual fund in the Putnam fund family adversely affected by market timing which funds and/or their registrants/ issuers were advised by Putnam Investment Management LLC during the period January 1, 1997 to December 31, 2003, inclusive (the "Settlement Class"). As noted, the funds potentially affected by market timing for

purpose of the class definition include those funds identified by Professor Peter Tufano, in his capacity as the Independent Assessment/Distribution Consultant, as provided in his Reports to the United States Securities Exchange Commission and the Massachusetts Securities Division, dated March 2, 2005.  Excluded from the class are defendants, members of their immediate families and their legal representatives, parents, affiliates, heirs, successors or assigns and any entity in which any defendant has or had a controlling interest, and any other person who engaged in the unlawful conduct described herein. Also excluded are the registrants, any officers, directors or trustees of excluded persons and trustees and portfolio managers of funds or registrants.

Plaintiffs and Settling Defendants have agreed to settle all claims asserted by the Settlement Class against Settling Defendants for $3,225,500, of which Putnam Defendants shall pay $2,500,000, Prudential Securities shall pay $450,000, BAS shall pay $17,500 and Canary Parties shall pay $105,000. The settlement also provides that the Putnam Defendants shall pay certain costs of class notice.

The principal reason for the settlement is recognition of the impact of the Court's rulings and provision of immediate and certain benefit to the Settlement Class.  The size and certainty of this benefit must be weighed against the risk that Plaintiffs and the Settlement Class might not have prevailed on some or all of their claims before this Court or on appeal. Indeed, this Court has dismissed all of Plaintiffs' claims against the Putnam Defendants either on the pleadings or summary judgment. Even if Plaintiffs and the proposed Settlement Class pursued additional years of litigation against the Settling Defendants, Plaintiffs and the proposed class might recover nothing or substantially less than the amount of the proposed settlement.

In determining whether preliminary approval is warranted, the sole issue is whether the proposed settlement is within the range of what might be found fair, reasonable and adequate, so that notice of the proposed settlement should be given to class members and a hearing scheduled to consider final settlement approval. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, §13.14 at 173 (Federal Judicial Center 2004) ("First, the court reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.") (hereinafter "MANUAL FOURTH").

The proposed settlement is within the range of what might be approved as fair, reasonable and adequate. Plaintiffs, therefore, respectfully request that the Court enter an order:

> preliminarily approving Plaintiffs' proposed settlement with the Settling Defendants and certifying the Settlement Class for that purpose;

> approving the form and program of notice to the Settlement Class described in the Putnam Stipulation and Agreement of Settlement with Settling Defendants (the "Stipulation") dated April 21, 2010; and

> scheduling a fairness hearing at which the Court shall consider whether the proposed settlement should be granted final approval.

## ARGUMENT

### A.    APPLICABLE LEGAL STANDARDS

Preliminary approval of a proposed settlement is the first step in a two-step process required before a class action may be settled. MANUAL FOURTH at § 21.632. First, the court reviews the proposed terms of the settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms. *Id.* "Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the

proposed settlement is not illegal or collusive." *In re Dun & Bradstreet Credit Svcs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990) (*citing Bronson v. Board of Education of the City School District of the City of Cincinnati*, 604 F. Supp. 68, 71 (S.D. Ohio 1984)); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp.2d 985, 1026 (S.D. Ohio 2001); *see* Plaintiffs' Omnibus Memorandum of Law in Support of Preliminary Approval of Proposed Settlements, filed contemporaneously herewith. Where, as here, "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Nasdaq Market-Makers Antitrust Litig.,* 1997-2 Trade Cas. (CCH) ¶ 71,981, at 80,817 (S.D.N.Y. Oct. 14, 1997).

Rule 23(e) of the Federal Rules of Civil Procedure requires that notice of the proposed settlement must be given in the manner directed by the court before the class action may be settled.  Preliminary approval permits notice to be given to the class members of a hearing on final settlement approval, at which class members and the settling parties may be heard with respect to final approval.

As set forth within, the proposed settlement satisfies the standards for approval in all respects.

### B.      THE PROPOSED SETTLEMENT IS THE RESULT OF ARMS-LENGTH NEGOTIATIONS

A proposed settlement that is result of arms-length negotiations by class counsel is presumptively fair and reasonable.  *See* 1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41 at 90 (4th Ed. 2002).  Here, the proposed settlement is the product of hard-fought negotiations conducted on both sides by experienced counsel who were thoroughly familiar with the factual and legal issues.  Counsel for both Plaintiffs and the Settling Defendants

are experienced lawyers who have been involved with complex commercial class action litigation including securities cases.  The negotiations between the Putnam Defendants and Plaintiffs were mediated by Thomas F. Ball III, Senior Circuit Mediator for the U.S. Court of Appeals for the Fourth Circuit.  Those negotiations were supervised by Mr. Ball over the course of several months and facilitated agreement between parties whose initial settlement positions were widely divergent.  Moreover, there is no question that this proposed settlement is not the product of collusion.

### C.   THE PROPOSED SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL

Courts recognize that the opinion of experienced and informed counsel supporting a proposed settlement is entitled to considerable weight.  *In re Salomon Inc. Sec. Litig.*, No. 91 Civ. 5442, 1994 U.S. Dist. LEXIS 8038, at *42 (S.D.N.Y. June 15, 1994).  Plaintiff's Counsel urge preliminary approval of the proposed settlement based upon their experience, their knowledge of the strengths and weaknesses of the case, their analysis of the discovery reviewed to date, the likely recovery at trial and on appeal, and all the other factors considered in evaluating proposed class action settlements.

### D.   THE STANDARDS FOR CERTIFICATION OF THE SETTLEMENT CLASS UNDER RULE 23 ARE SATISFIED

Federal Rule of Civil Procedure 23 ("Rule 23") requires a two-step analysis to determine whether class certification is appropriate. First, the action must satisfy the four prerequisites of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of

the class (adequacy).[2] *See Freeland v. Iridium World Communications, Ltd.*, 233 F.R.D. 40, 42 (D.D.C. 2006); *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 256 (D.D.C. 2002). Second, the action must satisfy one of the requirements of Rule 23(b) (with 23(b)(3) relating to predominance of common questions of law or fact and the superiority of the class action mechanism). *Id.* This action satisfies each of these requirements.

Courts widely recognize that class actions are an appropriate means to enforce the federal securities laws. *See, e.g., Basic Inc. v. Levinson*, 485 U.S. 224 (1988); *In re Newbridge Networks Sec. Litig.*, 926 F. Supp. 1163, 1176 (D.D.C. 1996) ("[C]ourts have widely recognized the utility of, and the necessity for, class actions in securities litigation.") (citations omitted); *Foltz v. U.S. News & World Report, Inc.*, 111 F.R.D. 49 (D.D.C. 1986); *see also In re Bank One Sec. Litig./First Chi. S'holder Claims,* Case No. 00 CV 0767, 2002 U.S. Dist. LEXIS 8709, at * 7 (N.D. Ill. May 9, 2002) ("[S]ecurities fraud cases are uniquely situated to class action treatment since the claims of individual investors are often too small to merit separate lawsuits.") (*quoting King v. Kansas City S. Indus., Inc.*, 519 F.2d 20 (7th Cir. 1975)).

Accordingly, courts liberally interpret Rule 23 to facilitate certification of class actions. *In re BearingPoint, Inc. Sec. Litig.,* 232 F.R.D. 534 (E.D. Va. 2006) ("it is important to bear in mind that, 'in light of the importance of the class action device in securities fraud suits', the requirements of Rule 23 'are to be construed liberally'") (*quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith*, 903 F.2d 176, 179 (2nd 1990). "[W]hen a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the

---

[2] Amendments to Rule 23 require that the adequacy of counsel determination, originally analyzed under Rule 23(a)(4), be made under Rule 23(g), which became effective December 1, 2003. *See Jones v. Ford Motor Credit Co.*, No. 00-8330, 2005 U.S. Dist. LEXIS 5381 at *81 (S.D.N.Y. Mar. 31, 2005) ("although Rule 23(g) replaces the adequacy test as originally developed under Rule 23(a)(4), it largely incorporates the adequacy standards developed thereunder").

class to go forward." *In re Indep. Energy Holdings, PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002) (citation omitted). *See also Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3rd Cir. 1985) ("The interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action."); *Vitamins,* 209 F.R.D. at 258 ("courts tend to favor class certification when in doubt."); *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) ("Class action treatment of related claims is particularly appropriate when plaintiffs seek redress for violations of the securities laws. It is well recognized that private enforcement of these laws is a necessary supplement to government regulation….Accordingly, in an alleged securities fraud case, when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward.") (citations omitted).

In deciding whether to certify the class, the court should not consider the merits of the suit. The Supreme Court has stated that the district courts have no authority to inquire into the merits of a suit in order to determine whether it may be maintained as a class action, because in determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) (citation omitted). Accordingly, "[c]ourts must not venture too deeply into the merits of a case in deciding whether to certify a class." *Freeland*, 233 F.R.D. at 44.

Although Plaintiffs have conducted substantial discovery and have presented a factual and evidentiary basis to support class certification, the Court when it decides whether to certify should assume that the allegations in the complaint are true and should limit its analysis to a review of whether Plaintiffs have complied with the requirements of Rule 23. *See, e.g., Lorazepam*, 202 F.R.D. at 14; *Malone v. Microdyne  Corp.*, 148 F.R.D. 153, 156 (E.D. Va.

1993). Finally, the Supreme Court has reiterated that the "dominant concern" governing Rule 23 applicability is "whether a proposed class has sufficient unity so that absent [class] members can fairly be bound by decisions of class representatives." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 621 (1997). As demonstrated below, this case satisfies all of the requirements for class certification.

### 1.     The Numerosity Requirement Is Satisfied

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. "Impracticability does not mean impossibility of joinder, but refers to the difficulty or inconvenience of joinder." *Indep. Energy*, 210 F.R.D. at 479. Impracticability of joinder is not determined solely by a numerical test, and impracticability of joinder is generally assumed in class action suits involving nationally traded securities. *See Ballard v. Blue Shield of S.W. Va., Inc.*, 543 F.2d 1075, 1080 (4th Cir. 1976), *cert. denied*, 430 U.S. 922 (1977); *Ganesh, L.L.C. v. Computer Learning Ctrs., Inc.,* 183 F.R.D. 487, 489 (E.D. Va. 1998) ("no mechanical test"). In the same vein, Plaintiffs are not required to quantify the precise number of persons in the class to demonstrate impracticability of joinder where such a conclusion is clear from reasonable estimates and the Court may make common sense assumptions to support a finding of numerosity. S*ee, e.g., In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 86-87 (S.D.N.Y. 2004) (precise calculation not required; court may rely on reasonable inferences).

Here, there can be no dispute that the various Putnam mutual funds had many millions of shareholders during the class period, and that the class is therefore sufficiently numerous for purposes of Rule 23(a)(1). Further, because shares of Putnam mutual funds are sold and marketed throughout the United States, it is reasonable to infer that members of the Class are dispersed throughout the United States. Such geographical dispersion among potential claimants

also militates in favor of class treatment. *See Stewart v. Rubin*, 948 F. Supp. 1077, 1088 (D.D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997) (245 member class spread throughout the country satisfies numerosity requirement); *In re Southeast Hotel Props. Ltd. Partnership Investor Litig.*, 151 F.R.D. 597, 601 (W.D.N.C. 1993) (over 400 limited partners throughout the United States satisfied numerosity requirement). Accordingly, numerosity is amply satisfied here.

### 2.     There Are Questions Of Law And Fact Common To The Class

Rule 23(a) provides that an action may be maintained as a class action if there are questions of law or fact common to the class. In determining whether common questions exist, Rule 23(a)(2) requires only that there must exist a common nucleus of operative facts or law; commonality does not require that all questions of law or fact be common. Instead, "[t]he commonality test is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Pigford v. Glickman*, 182 F.R.D. 341, 348 (D.D.C. 1998). A single common question may be sufficient to satisfy the commonality requirement. *Initial Pub. Offering*, 227 F.R.D. at 87 (citation omitted).

In the context of federal securities actions, courts have liberally applied the "common question" requirement. Indeed, "members of a proposed class in a securities case are especially likely to share common claims and defenses." *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. at 539. Similarly, in *Lewis v. Capital Mortg. Invs.*, 78 F.R.D. 295, 304 (D. Md. 1977), this court held that the alleged misrepresentations in, and omissions from, public filings were sufficiently similar and presented common questions of law and fact that predominated over individual questions: [i]t is well-established that a class action is appropriate in securities fraud cases involving similar or identical misrepresentations even if they are issued at different times [citations omitted]. Moreover, the courts generally have been quite liberal in certifying class

13

actions in such cases, recognizing that 'it is a rare case that involves but one fraudulent statement'. . . . Id. (citations omitted). *See also Blech*, 187 F.R.D. at 104 (holding that the commonality requirement has been applied permissively in securities fraud litigation). Thus, the "common question" requirement is satisfied where, as here, the Complaint alleges that Defendants, in a series of public statements and documents issued during the Class Period, misrepresented and failed to disclose material facts concerning Punam's market timing. *In re Kirschner Medical Corp. Sec. Litig.*, 139 F.R.D. 74, 78 (D. Md. 1991) ("a course of repeated misrepresentations will satisfy the commonality requirement.") (*citing Lewis*, 78 F.R.D. at 304). *See also Newbridge Networks,* 926 F. Supp. at 1176 (allegations of common questions of law and fact supported certification where complaint pled defendants' issuance of material misstatements and omissions in documents and public statements disseminated to the public during the class period).

Here, the case involves numerous common issues of fact and law, all amenable to aggregate proof through evidence of Defendants' conduct. These common issues include:

1. whether Putnam allowed market timing in violation of the prospectus;

2. whether Putnam made material misrepresentations concerning market timing;

3. whether the Fair Funds statute applies in this case;

4. whether Prudential violated Securities laws by market timing in Putnam Mutual Funds;

7. the amount of damage suffered by the class;

8. whether defendants engaged in fraudulent conduct that affected each of the class members and the class members' interests in the Affected Mutual Funds;

9. whether Putnam Defendants allowed Putnam employees to engage in market timing to the detriment of class members;

10.     whether the Canary Parties engaged in market timing to the detriment of class members;

11.     whether Prudential Securities allowed its employees and brokers to engage in market timing to the detriment of class members;

12.     whether BAS allowed its trading systems to be used by market timers to the detriment of class members;

13.     whether Putnam Defendants represented that they would detect and deter market timing, but instead failed to do so;

14.     whether Putnam Defendants failed to use all reasonable means at their disposal to prevent market timing of Putnam funds;

15      the extent of Putnam Defendants' knowledge of market timing of Affected Mutual Funds; and

16.     the extent of loss of the class and the Affected Mutual Funds due to market timing.

Proof of these issues, which concern Defendants' common course of conduct, will not vary from one Class member to another. Resolution of these issues will advance the claims of all Class members. Where "issues are 'central' to [plaintiffs'] cause[s] of action under [the federal securities laws], the commonality requirement is satisfied." *Dunnigan v. Metropolitan Life Ins. Co.*, 214 F.R.D. 125, 137 (S.D.N.Y. 2003). The Complaint's allegations thus amply satisfy the commonality requirement of Rule 23(a) (2).

### 3.     Lead Plaintiffs' Claims Are Typical Of Those Of The Members Of The Class

Under Rule 23(a)(3), a proposed class representative must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class.[3] The typicality requirement is met "if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments." *Lorazepam*, 202 F.R.D. at 27 (*quoting Pigford*, 182 F.R.D. at 349); *Vitamins*, 209 F.R.D. at 260; *Simpson v. Specialty Retail Concepts, Inc.*, 149 F.R.D. 94 (M.D.N.C. 1993); *Covelo Indian Cmty. v. Watt*, 551 F. Supp. 366, 377 (D.D.C. 1982). This requirement "is not demanding." *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (*citing Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993)). The focus of Rule 23(a)(3)'s typicality test is whether the proposed representatives' claims are possessed by the other members of the proposed class, making the proposed representatives' conduct or peculiarities completely immaterial. *See, e.g., Southeast Hotel Props.*, 151 F.R.D. at 605 (for typicality analysis, it is irrelevant "whether there is a similarity in personal backgrounds or knowledge between individuals").

"Typicality" does not require class representatives' claims to be identical to the Class' claims:

> Typicality...does not require that the claims of the named representatives be 'co-extensive with' or 'identical to' those of the other class members. Rather, this requirement [of typicality] is satisfied even though varying fact patterns support the claims or defenses of individual class members or there is disparity in the damages claimed by the named parties and the other members of the class.

---

[3]   Courts have recognized that the typicality requirement of Rule 23(a)(3) significantly overlaps with the commonality requirement of Rule 23(a)(2) and the adequacy of representation requirement of Rule 23(a)(4). *See, e.g., General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

*In re Kirschner*, 139 F.R.D. at 79 (*citing National Constructors Ass'n v. National Elec. Contractors Ass'n*, 498 F. Supp. 510, 545 (D. Md. 1980), *modified* 678 F.2d 492 (4th Cir. 1982)). *See also Thomas v. Albright,* 139 F.3d 227, 238 (D.C. Cir. 1998) ("as with the requirement of commonality, the facts and claims of each class member do not have to be identical to support a finding of typicality."); *United States v. Trucking Employers, Inc*., 75 F.R.D. 682, 687 (D.D.C. 1977) ("If the interests of all class members coincide with respect to the merits of the suit, then in advocating their own interests the named parties will necessarily represent the interests of absentees as well"). Therefore, "[f]actual variations between claims will not defeat typicality." *Meredith v. Mid-Atlantic Coca Cola Bottling Co*., *Inc.* 129 F.R.D. 130, 133 (E.D. Va. 1989).

In fact, in a securities fraud action "it is defendants' course of conduct . . . the release to the press of the allegedly fraudulent and misleading statements upon which the court must focus in determining typicality." *In re IGI Sec. Litig.*, 122 F.R.D. 451, 456 (D.N.J. 1988) (emphasis in original). *See also In re Sumitomo Copper Litig.*, 194 F.R.D. 480, 482 (S.D.N.Y. 2000) ("When inquiring into the typicality requirement…the focus must be on the defendants' behavior and not that of plaintiffs."). Plaintiffs' claims satisfy the typicality requirement if, as here, they arise "from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group,* 960 F.2d 285, 291 (2nd Cir. 1992); *Lorazepam*, 202 F.R.D. at 27 (same).

OTTA's claims are plainly typical of those of the Class. Plaintiffs, like the absent Class members, purchased Putnam securities during the Class Period and allegedly sustained damages due to Defendants' material misrepresentations and omissions. "In the context of a case that implicates Section 10 of the Securities Exchange Act of 1934 . . . and Rule 10b-5 . . . the

commonality of these questions and the typicality of the named Plaintiffs' claims cannot credibly be denied." *Ganesh*, 183 F.R.D. at 489. It is well established that a purchaser of one type of security of a given issuer may represent purchasers of other types of securities of that issuer where defendants, as here, are alleged to have engaged in a common course of fraudulent conduct that affected all issues similarly. *See, e.g., In re Sepracor, Inc. Sec. Litig.*, 233 F.R.D. 52, 56 (D. Mass. 2005) ("purchasers of different types of securities have often been found qualified to represent purchasers of other types of securities of the same issuer"); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 445 (S.D. Tex. 2002) ("When plaintiffs have alleged such a common course of conduct, courts consistently have found no bar to class certification even though members of a class may have purchased different types of securities or interests."); *Deutschman v. Beneficial Corp.,* 132 F.R.D. 359, 371 (D. Del. 1990) (certifying plaintiff who never purchased common stock to represent all purchasers of both common stock and call options).[4]

Here, the claims asserted by Plaintiffs on behalf of themselves and the Settlement Class arise from identical events and practices and are based on identical legal theories.   Each Settlement Class member and the Plaintiffs allege that the Settling Defendants violated federal securities laws by publishing false prospectuses and failing to disclose that market timing was occurring in the Putnam funds and the extent of such timing and/or by engaging in such market

---

[4]     *See also Eisenberg*, 766 F.2d at 786 (named plaintiffs "were not untypical because they invested in two different limited partnerships or because members of the class may have invested in either of these two or a third….these were identical investments prepared by the same defendants, and containing the same alleged omissions and misrepresentations"); *Schur v. Friedman & Shaftan, P.C*., 123 F.R.D. 611, 613-14 (N.D. Cal. 1988) (Plaintiff who invested in one limited partnership may represent investors in related limited partnerships where common overarching scheme to defraud was alleged); *In re Saxon Sec. Litig.*, No. 82-Civ-3103, 1984 U.S. Dist. LEXIS 19223 at *19 (S.D.N.Y. Feb. 23, 1984) (debenture holders could represent debenture holders and common stockholders because debenture holders had "an interest identical to that of the holders of common stock in demonstrating a common course of fraudulent conduct and in implicating defendants in that conduct.").

timing. Plaintiffs, like the absent Settlement Class members, held Putnam mutual fund shares and as a result allegedly suffered financial loss when market timing occurred and the value of their mutual fund shares was diluted and decreased. Plaintiffs' pursuit of their own interests, therefore, will advance the interests of the Settlement Class and their claims are typical of the Settlement Class they seek to represent.

Thus, the Plaintiffs' claims, which arise from the same course of conduct and are predicated on the same legal theories as the claims of all other Settlement Class members, easily satisfy the typicality requirement of Rule 23(a).

### 4. Lead Plaintiffs Will Fairly And Adequately Protect The Interests Of The Class

Rule 23(a) (4) requires that "the representative parties will fairly and adequately protect the interests of the class." *Initial Pub. Offering*, 227 F.R.D. at 88 (citation omitted); *Simpson*, 149 F.R.D. at 102. The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (*citing General Telephone Co. of Southwest v. Falcon*, 457 U.S. at 157-58, n.13). To meet this requirement, the named class representatives and their counsel (a) must possess the qualifications and ability to vigorously litigate the case, and (b) must be free of any conflicts of interest with other class members. *See In re The Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 108 (E.D. Va. 2009).

This requirement is met here because: (a) Plaintiffs have interests in common with, and not antagonistic to,[5] the interest of the other members of the Class; and (b) a common course of

---

[5]      For a conflict of interest to be sufficiently serious to defeat class certification, Defendants must make "an actual showing of a real probability of a potential conflict." *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 187 (N.D. Ill. 1992). In order to deny class certification, the court must find a "fundamental conflict or inconsistency between the claims of the proposed

conduct by the Settling Defendants is alleged to have caused all members of the class to sustain losses.

As demonstrated by their work to date, Plaintiffs' attorneys are qualified, experienced, and competent to conduct the litigation. *Id. See also Kirschner*, 139 F.R.D. at 79; *Lewis v. National Football League*, 146 F.R.D. 5, 19 (D.D.C. 1992); Covelo, 551 F. Supp. at 377; *Arnett v. American Nat'l Red Cross,* 78 F.R.D. 73, 75 (D.D.C. 1978).

Both prongs of the "adequacy" test are met here. First, OTTA lacks any interest that is antagonistic to those of the Class; indeed, its interests are directly aligned with the interests of the Class Members. Defendants' collective conduct during the Class Period allegedly caused the class to sustain substantial losses. Plaintiffs and the other members of the Class purchased Putnam Mutual Funds during the Class Period and allegedly have been similarly damaged by Defendants' misconduct. The claims of the Plaintiffs and the absent Class members arise from the same underlying conduct and they all seek redress under the same legal theories. Each proposed class representative has the same interest in recovering damages caused as a result of the Defendants' alleged unlawful conduct. No cognizable conflicts or antagonisms exist between Plaintiffs and the other members of the Class.

---

class members" that is "so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 514-15 (S.D.N.Y. 1996). Courts reject "efforts by Defendants to defeat certification by raising the possibility of hypothetical conflicts or antagonisms among class members, especially regarding proof of damages." Id. at 513 (citations omitted). *See also Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975). For instance, as discussed above, the timing of plaintiffs' purchases of the subject securities during the class periods is irrelevant as long as the representatives' claims arise from the same practice and course of conduct that forms the basis of the class claims. *See, e.g., Robbins v. Moore Med. Corp.*, 788 F. Supp. 179, 187 (S.D.N.Y. 1992) ("Whether plaintiff and other class members bought early in the Class Period or late, they are all alleged to have been injured by the inter-related misstatements and omissions . . ."). *See also Eisenberg*, 766 F.2d at 785.

Further, Plaintiffs have demonstrated their adequacy by retaining counsel extensively experienced in securities class action litigation to prosecute this action.[6] These firms have done extensive work in investigating and identifying the claims brought in this action and have zealously represented Plaintiffs and the putative class in this action, including by vigorously and successfully arguing against Defendants' motions to dismiss and undertaking extensive, expensive and time consuming discovery. Class Counsel have extensive experience and expertise in complex class actions, and have successfully prosecuted securities class action cases throughout the country.

### E.    THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED

In addition to satisfying the requirements of Rule 23(a), Plaintiffs must satisfy Rule 23(b)(3), which requires the Court to find that: (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. As discussed below, this case satisfies both of these criteria.

### 1.    Common Questions Of Law And Fact Predominate

---

[6]    Rule 23(g), providing for the appointment of class counsel, complements Rule 23(a)(4)'s requirement that class counsel be adequate. *Ford Motor Credit*, 2005 U.S. Dist. LEXIS 13224 at *81 (noting that 23(g) incorporates the adequacy of counsel analysis formerly performed under Rule 23(a)(4)). Rule 23(g) direct a court to appoint "class counsel" when a class is certified. Fed. R. Civ. P. 23(g)(1)(A). Consistent with Rule 23(a)(4), class counsel "must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g) (1) (B). In appointing class counsel, the Court must consider:

- the work counsel has done in identifying or investigating potential claims in the action,
- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
- counsel's knowledge of the applicable law, and
- the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(i). The Court may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(g)(1)(C)(ii).

Predominance is met "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." *Vitamins*, 209 F.R.D. at 262. "In determining whether the predominance standard is met, courts focus on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones." *Kirschner*, 139 F.R.D. at 80. Unlike certain other types of class actions, such as mass tort personal injury cases, the Supreme Court has held "[p]redominance is a test readily met in certain cases alleging. . . securities fraud. . . ." *Amchem* Prods., 521 U.S. at 625.

As set forth above, the core issues of liability common to the entire Class involve market timing activities. Accordingly, Plaintiffs have established that common issues predominate. "If the liability issue is common to the class, common questions are held to predominate over individual ones." *See In re BearingPoint, Inc. Sec. Litig.,* 232 F.R.D. at 542. In fact, trial courts typically find that securities fraud cases satisfy the predominance requirement, since defendants' liability to the entire class will be based on a common course of conduct. *See In re Arakis Energy Corp. Sec. Litig.*, No. 95-3431, 1999 U.S. Dist. LEXIS 22246 at *37 (E.D.N.Y. Apr. 27, 1999) ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues."); *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587 (PKL), 1996 U.S. Dist. LEXIS 3531 at *21 (S.D.N.Y. Mar. 25, 1996) (The issue of "whether defendants failed to disclose material non-public information . . . thereby committing a fraud on the market . . . is the same for all class members, and therefore predominates over the class.").

Moreover, "Rule 23(b)(3) does not require that all questions of law or fact be common; it only requires that the common questions predominate over individual questions." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981). *See also Lorazepam*, 202 F.R.D. at 29 ("The common issues must only predominate; they do not have to be dispositive of the litigation."). As the court explained in *In re Oxford Health Plans, Inc*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Oxford I"), "[c]ommon questions may predominate where there exists a common course of conduct even though there is not a complete identity of facts….Where, as here, there exists a common nucleus of operative facts affecting all members, common questions unquestionably prevail." (citation omitted).

In sum, the conduct upon which Plaintiffs' claims are founded alleged injury to each member of the Class in a substantially similar, if not identical, manner.  Market timing allegedly injured class members for a variety of reasons including: lost profits, administrative costs, and higher taxes. Accordingly, since Plaintiffs allege that Defendants' conduct was part of the same pattern and scheme to defraud, the common issues of fact and law arising from Defendants' conduct predominate over any individual issues and satisfy the standard for class certification under Rule 23(b)(3).

### 2.     A Class Action Is Superior To Other Available Methods For The Fair And Efficient Adjudication Of This Action

In determining whether the "superiority" requirement of Rule 23(b)(3) is satisfied, the Court must consider: (a) the interest of members of the class in individually controlling separate actions; (b) the extent and nature of any related litigation already commenced by class members; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the potential difficulties of managing a class action. *Jarvaise v. Rand Corp.*, 212 F.R.D. 1, 4 (D.D.C.

2002); Fed. R. Civ. P. 23(b)(3). In this case, each of these factors strongly militates in favor of class certification.

First, the expense of individual actions, weighed against the potential small individual recoveries of the vast majority of Class members here, would be prohibitive. Although some Class members may have suffered damages substantial enough that it might be economically viable for them to bring their own suits, this fact does not support a finding that Class members have an interest in individually "controlling" the litigation under Rule 23(b) (3). The reference in Rule 23(b) (3) to the interest of individual Class members in controlling the litigation relates to the interests of most or all of the Class members – rather than the interests of only a few – since if only a small fraction of the Class has an interest in controlling the litigation, they may serve their interest by opting out of the suit. 1 H. Newberg, Newberg on Class Actions § 4.29 at 332 (3d ed. 1992). Second, the burden on the courts of adjudicating hundreds of thousands of separate investor actions would be, to say the least, significant. See *Arakis*, 1999 U.S. Dist. LEXIS 22246 at *38 ("were plaintiffs required to bring individual actions, the potential for duplicative litigation and consequent waste of judicial and party resources would be significant."). Third, there is no other litigation outside of this action asserting the claims Lead Plaintiffs are pursuing here. Finally, there is no reason to believe that Lead Plaintiff's attorneys, who have experience in class action litigation, including in this District, will encounter significant or unusual difficulties in managing this litigation. Indeed, this case has proceeded through discovery. The United States District Court for Eastern District of Virginia in *In re BearingPoint, Inc. Securities Litigation* properly explained why class certification is superior to alternate forms of litigation..

> In sum, because class actions are a particularly appropriate and desirable means to resolve claims based on alleged violations of the securities laws, the plaintiff's

proposed class is the superior method for adjudicating this dispute.

232 F.R.D at 545.

### F.    ADDITIONAL CONSIDERATIONS

#### 1.    Distribution Of Class Recovery

As noted above, the total amount of recovery under the four settlements is $3,225,500. Plaintiffs' counsel requests reimbursement of their out-of-pocket expenditures from the settlement proceeds. As of the date of filing this motion, such expenditures are approximately $1,550,000. Plaintiffs' counsel is not seeking an award of any amount of attorneys' fees, only what counsel actually spent during the four years since being appointed Lead Counsel.

In addition, Lead Plaintiff Ohio Tuition Trust Authority requests an award of $24,008.24 in expenses related to the litigation, including travel expenses and the cost of staff time during depositions. Similarly, the Ohio Attorney General seeks an award of the nominal sum of $1,656.25 in connection with attorney time spend supervising the litigation. Such awards have been approved by numerous courts. *See In re Veeco Instruments, Inc. Sec. Litig.*, 2007 WL 4115808 at *12 (S.D.N.Y. Nov. 7, 2007)(approving reimbursement of Steelworkers for $16,000 related to monitoring litigation); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675 at *19 (E.D.N.Y. Sept. 18, 2007)("Since tasks undertaken by employees of Lead Plaintiffs reduced the amount of time those employees would have spent on other work and these tasks and rates appear reasonable to the furtherance of the litigation, the motion for $10,000 in expenses for Lead Plaintiffs is granted.")

In addition, Court-appointed Plaintiffs' Administrative Chair and Liaison Counsel will apply for an award of attorneys' fees and expenses of 1.25% of the total settlement amount. Plaintiffs have agreed not to oppose that application.

Plaintiffs propose that the remaining amount, approximately $1,600,000 be distributed into the Affected Mutual funds. As the Court stated in its May 1, 2006 opinion, the mutual funds were the victims of market timing. Moreover, paying the settlement proceeds into the funds best approximates payment to the fund shareholders under the circumstances where it would be impracticable to locate and pay the shareholders.

Legal support for such a distribution is found in the Court's opinion in *In re Microsoft Corp. Antitrust Litigation*, 185 F. Supp.2d 519, 523 (D. Md. 2002)(Motz. J.) in which the Court stated: "cy pres . . . has also been utilized as a means for distributing the entirety of a class fund where the proceeds cannot be economically distributed to the class members. . . '[C]ourts are saying, the game isn't worth the candle.'" *Id.* Here there are millions of shareholders located throughout the United States. The amount of recovery that any one shareholder would receive after payment of expenses would be de minimis. A cy pres distribution should therefore be approved.

### 2.   Class Notice

As noted above, the Settlement Class consists of millions of shareholders throughout the United States. The cost of providing individual notice would clearly exceed the amount of settlement left after payment of expenses. Accordingly, the most reasonable method of notification under the circumstances is the following:

- Provide publication notice in the New York Times and Wall Street Journal of a summary notice in the form attached hereto as Attachment 1 to Exhibit D to the Stipulation.

- Provide an Internet site with the full version of the settlement notice attached hereto as Attachment 2 to Exhibit D to the Stipulation. The summary notice will direct shareholders to the Internet notice.

- Provide mail notice to all named plaintiffs who filed any of the lawsuits against Putnam listed in Exhibit A to the Stipulation.

**CONCLUSION**

As set forth within, Plaintiffs recommend to the Court a program and form of notice substantially in the form of Attachmet 1 to Exhibit D of the Stipulation.  Plaintiff respectfully requests that the Court grant his motion for preliminary approval of the proposed settlement with the Settling Defendants and certification of the Settlement Class.  The Putnam Defendants assent to the relief sought in this motion.

Dated:  April 26, 2010

Respectfully submitted,


s/ Stanley M. Chesley

Richard Cordray
ATTORNEY GENERAL FOR THE
STATE OF OHIO
Albert G. Lin
30 East Broad Street, 17th Floor
Columbus, Ohio  43215
Telephone:     (614) 728-5454
Facsimile:     (614) 995-0246

Stanley M. Chesley
James R. Cummins
Terrance L. Goodman
Robert Heuck II
Jean M. Geoppinger
WAITE, SCHNEIDER, BAYLESS,
        & CHESLEY CO., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio  45202
Telephone:     (513) 621-0267
Facsimile:     (513) 621-0262
*Lead Counsel for Fund Investor Class
Lead*
*Plaintiff Ohio Tuition Trust Authority*


OF COUNSEL:

Richard S. Wayne
Nicole M. Lundrigan
John M. Levy
STRAUSS & TROY, L.P.A.
The Federal Reserve Building
150 East Fourth Street
Cincinnati, OH  45202-4018
Telephone:     (513) 621-2120
Facsimile:     (513) 629-9426


Sherrie R. Savett

Lawrence Deutsch
Glen L. Abramson
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone:     (800) 424-6690
Facsimile:     (215) 875-4604

***Counsel for Plaintiff Joseph Shanis***

## Certificate of Service

I hereby certify that on April 26, 2010, I caused a true and correct copy of the foregoing to be filed and served through the Court's CM/ECF Electronic Filing System pursuant to Case Management Order No. 1 (Docket No. 190-2, approved by paperless order on May 25, 2004 at Docket No. 216).

/s/ Robert Heuck II
Robert Heuck II