UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| CHAMBERS OF | 101 WEST LOMBARD STREET |
| J. FREDERICK MOTZ | BALTIMORE, MARYLAND 21201 |
| UNITED STATES DISTRICT JUDGE | (410) 962-0782 |
| | (410) 962-2698 FAX |

February 27, 2006

Memo to Counsel Re: MDL-15863, Putnam Subtrack
*Frederic Ian Fischbein PC, et c. v. Marsh & McLennan Companies, Inc., et al.*,
Civil No. JFM-04-1873

Dear Counsel:

I have reviewed the memoranda submitted in connection with defendants' motions to dismiss. The motions will be granted.

In ruling on the motions, my preference, of course, would be to write a formal opinion. However, my schedule simply does not permit me to do so. Therefore, in light of the facts that (1) I find some of the dispositive issues clear-cut, and (2) it is necessary for me to resolve the pending motions in order to get these MDL proceedings back on track, I am merely issuing this short letter encapsulating my rulings.[1]

I. CLAIMS UNDER SECTION 10(b) OF THE EXCHANGE ACT

*Motion of Marsh & McLennan ("MMC"), Jeffrey W. Greenberg, and Francis N. Bonsignore*

Plaintiffs' Section 10(b), 15 U.S.C. § 78j(b), claims against these defendants are clearly defective in one fundamental respect: the failure to allege facts demonstrating defendants' scienter.[2]

---

[1] I am basing my rulings upon what I consider to be the easiest questions presented. I express no opinion as to the other issues raised by defendants.

[2] It also appears clear that plaintiffs have not identified any statement made by MMC that is actionable under Section 10(b)(5). The statement in an MMC 10-K investment management disclosure relating to "reduc[ing] the possibility of conflicts of interest," when considered in context,

In the amended complaint plaintiffs allege that Lawrence Lasser, the president of Putnam Investment Management, LLC, who sat on MMC's board, *concealed* from MMC the market timing activities at Putnam of which he was aware. In their opposition memoranda, plaintiffs do not back away from this allegation but, instead, reaffirm it. Self-evidently, MMC could not have known of (or recklessly blinded itself to) information concealed from it. Therefore, as a matter of law plaintiffs' allegation of concealment negates the element of scienter as to MMC, Greenberg, and Bonsignore.

*Motion of Putnam Investment Management, LLC*

Plaintiffs' Section 10(b) claim against Putnam rests upon alleged misleading statements in Putnam mutual fund prospectuses and manipulative acts Putnam allegedly committed. Neither the alleged misstatements nor the alleged wrongful conduct are actionable unless Putnam owed a duty to plaintiffs. To establish such a duty, plaintiffs rely upon *Semerenko v. Cendant Corp.*, 223 F.3d 165 (3rd Cir. 2000); *In Re Carter-Wallace, Inc. Sec. Litig.*, 150 F.3d 153 (2d Cir. 1998); *Ames Dep't Stores, Inc. Stock Litig.*, 991 F.2d 953, 965 (2d Cir. 1993); and *Fischman v. Raytheon Mfg. Co.*, 188 F.2d 783, 787 (2d Cir. 1951).

The present case is critically distinguishable from all of these precedents. In *Semerenko*, although the alleged false statements were contained in documents disseminated to the stockholders of a corporation other than Cendant, Cendant clearly owed a duty to those persons under the federal securities laws because Cendant was making a tender offer for their shares. In *Carter-Wallace*, *Ames,* and *Fischman*, the defendant's duty to plaintiffs was likewise clear because the alleged

---

refers not to market timing but to the clearing, reporting, and/or restricting of transactions by Putnam personnel in securities held in the investment portfolios of Putnam funds. Further, the statements in the MMC 2002 Form 10-K and Annual Report certifying that "no financial misconduct" was occurring at MMC's subsidiaries and the statement in the MMC 2000 Annual Report concerning the close attention paid to asset quality are the type of generalized aspirational statements not actionable under Fourth Circuit law. *See Longman v. Food Lion, Inc.*, 197 F.3d 675, 685-86 (4th Cir. 1999); *Hillson Partners Ltd. v. Addage, Inc.*, 42 F.3d 204, 211 (4th Cir. 1994).

misstatements (although made to persons other than the plaintiffs), affected the value of the defendant's own securities that had been purchased and sold by plaintiffs. In the present case, in contrast, plaintiffs' claim is not based upon their purchase or sale of Putnam mutual funds but upon their purchase and sale of MMC stock. Thus, the nexus between the plaintiffs and the defendant that existed in *Carter-Wallace*, *Ames,* and *Fischman* is lacking here. *Cf. Lindblom v. Mobile Telecomms. Techs. Corp.*, 985 F. Supp. 161, 163 (D.D.C. 1997) ("A subsidiary owes no duty of disclosure to the shareholders of the parent whose own stock is the only stock being offered for purchase or sale.").

*Motion of William H. Woolverton*

Plaintiffs' claim against Woolverton is based upon the allegations that he served as General Counsel and Chief Compliance Officer for Putnam, that he had assured Putnam's trustees that certain violations of Putnam's Code of Ethics would be reported to them, and that he failed to report the fact that he was told that "employees had been market timing." Self-evidently, these allegations are insufficient to establish that Woolverton (1) owed any duty to plaintiffs, or (2) made any misleading statements to them or engaged in any manipulative conduct directed toward them.

*Motion of Lawrence J. Lasser*

Although not explicitly differentiated as such, plaintiffs' claims against Lasser appear to have three aspects: in his capacity as president and chief executive officer of Putnam, in his capacity as a director of MMC, and for insider trading. The first of these claims fails for the same reasons as do the claims against Putnam. The second fails because, assuming that MMC made any actionable misstatements, *but see supra* note 2, plaintiffs have not alleged facts demonstrating that Lasser was personally responsible for them.

As for the insider trading claim, plaintiffs concede that they did not assert such a claim under

Section 20A of the Exchange Act, 15 U.S.C. § 78t-1. In their opposition memorandum, however, plaintiffs argue that Lasser may be held liable for insider trading under Section 10(b). *See Neubroner v. Milken*, 6. F.3d 666, 670 (9th Cir. 1979). In response, Lasser contends that plaintiffs' allegations of scienter are insufficient because the trades in which he was engaged were not "unusual" or "suspicious." *See In re e.spire Communications, Inc. Sec. Litig.,* 127 F. Supp. 2d. 734, 743 (D. Md. 2001). This contention is unpersuasive. Most of the cases relied upon by Lasser are not insider trading cases at all but ones based upon allegedly false public statements in which plaintiffs sought to infer an officer or director's scienter from the fact that he had sold stock of his own during the times the statements were made. *See, e.g.*, *In re Humphrey Hospitality Trust, Inc. Sec. Litig.*, 219 F. Supp. 2d 675, 686-87 (D. Md. 2002); *In re Visual Networks, Inc. Sec. Litig.*, 217 F. Supp. 2d 662, 668-70 (D. Md. 2002). Here, in contrast, plaintiffs affirmatively allege that Lasser had material knowledge he concealed when he engaged in his trades of MMC stock. They are thus relying upon the "classic theory" of insider trading liability, s*ee United States v. Hagan*, 521 U.S. 642, 651-52 (1997), and require no inference of scienter from the nature of the trades.

Plaintiffs nevertheless have failed to state a claim for insider trading. Although in their opposition memorandum plaintiffs contend that the lead plaintiffs engaged in trades contemporaneously with Lasser's transactions, the only allegation of damage asserted in the amended consolidated complaint is that plaintiffs "paid artificially inflated prices for Marsh publicly traded securities." Cons. Am. Compl. ¶ 106. This is precisely the type of damage allegation the Supreme Court found to be insufficient in *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S.Ct. 1627 (2005). Moreover, the class is not restricted to persons who made trades contemporaneously with Lasser. Cons**.** Compl. ¶ 1. If plaintiffs want to pursue a claim only for the profits gained by Lasser as the result of his trades, *cf.* 15 U.S.C. § 78t-1(b)(2), they will have to seek to file a second amended complaint on behalf of a narrower class containing allegations specifically supporting that claim.

II.  CLAIMS FOR CONTROL PERSONAL LIABILITY UNDER SECTION 20(a)

Absent a primary violation of Section 10(b) there can be no "control person" liability under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  *See, e.g.*, *In re Criimi Mae, Inc. Sec. Litig.*, 94 F. Supp. 2d 652, 658 (D. Md. 2000); *In re Cryomedical Scis., Inc. Sec. Litig.*, 884 F. Supp. 1001, 1012 (D. Md. 1995).  Because plaintiffs have not stated a viable claim against any of the defendants for a primary violation of Section 10(b), their claims under Section 20(a) also fail as a matter of law.

For these reasons defendants' motions to dismiss will be granted.  I will enter a formal order to that effect after conferring with counsel about whether plaintiffs want to seek leave to file a second amended complaint as to their insider trading claim against Lasser.  Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Very truly yours,


J. Frederick Motz
United States District Judge