**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | ) | |
| In re Mutual Funds Investment Litigation | ) | MDL DOCKET 1586 |
| | ) | No. 04-md-15863 |
| | ) | |
| This Document Relates To: | ) | |
|     Janus Track | ) | |
|     Parent Derivative Class Subtrack | ) | |
| | ) | |
| _____ | ) | |
| | | |
| _____ | | |
| | ) | |
| Chasen v. Whiston, et al. | ) | Civ. No. 04-md-00855 |
| | ) | |
| _____ | ) | |

**MEMORANDUM FOR THE JANUS CAPITAL DEFENDANTS**
**IN SUPPORT OF THEIR MOTION TO DISMISS**
**THE PARENT DERIVATIVE COMPLAINT**


Mark A. Perry
Andrew S. Tulumello
Melanie L. Katsur
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, D.C.  20036
(202) 955-8500

*Counsel for Janus Capital Group Inc.*
*and Janus Capital Management LLC*

[Additional counsel listed on signature page]

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ....................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ................................................................................................................1

THE COMPLAINT'S ALLEGATIONS ..............................................................................2

ARGUMENT .......................................................................................................................3

I.      The Complaint Must Be Dismissed Because Plaintiff Failed To Make A
        Pre-Suit Demand. ....................................................................................................3

        A.      The Complaint Does Not Make Legally Sufficient Allegations
                That The Board Was Interested. ..................................................................5

        B.      The Complaint Does Not Make Legally Sufficient Allegations
                That A Majority Of The Board Faces A Substantial Likelihood Of
                Personal Liability. ........................................................................................6

                1.      The Complaint Does Not Allege That "Red Flags" Were
                        Brought To The Board's Attention Or That The Board
                        Acted In Bad Faith. ...........................................................................6

                2.      The Complaint Does Not Make Legally Sufficient
                        Allegations That The Board "Utterly Failed" To Attempt
                        To Establish Internal Controls. .......................................................11

CONCLUSION ..................................................................................................................14

**TABLE OF AUTHORITIES**

Page

**Cases**

*Allison v. General Motors Corp.*, 604 F. Supp. 1106 (D. Del.), *aff'd*, 782 F.2d 1026
    (3d Cir. 1985)..................................................................................................9

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984), *overruled on other grounds by Brehm v.
    Eisner*, 746 A.2d 244 (Del. 2000)................................................................. *passim*

*Ash v. McCall*, 2000 WL 1370341 (Del. Ch. Sept. 15, 2000) .......................................6

*Beam v. Stewart*, 845 A.2d 1040 (Del. 2004) .................................................5

*In re Caremark Int'l, Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996) ......................... *passim*

*Caruana v. Saligman*, 1990 WL 212304 (Del. Ch. Dec. 21, 1990)....................................6

*Cede & Co. v. Technicolor, Inc.,* 634 A.2d 345, 361 (Del. Ch. 1993)*.........................................10*

*In re Citigroup Inc. Shareholders Litig.*, 2003 WL 21384599 (Del. Ch. June 5, 2003),
    *aff'd*, *Rabinowitz v. Shapiro*, 839 A.2d 666 (Del. 2003) .....................................6, 10

*Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984)......................................................3

*David B. Shaev Profit Sharing Account v. Armstrong*, 2006 WL 391931 (Del. Ch.
    Feb. 13, 2006) ................................................................................. *passim*

*Decker v. Clausen*, 1989 WL 133617 (Del. Ch. Nov. 6, 1989)......................................6

*Dellastatious v. Williams*, 242 F.3d 191 (4th Cir. 2001) ................................................12

*Graham v. Allis-Chalmers Mfg. Co.*, 188 A.2d 125 (Del. 1963)....................................5

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003)................................................ *passim*

*Haber v. Bell,* 465 A.2d 353, 357 (Del. Ch. 1983).........................................................*10*

*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991).............................................1, 4

*Kelly v. Bell*, 266 A.2d 878, 879 (Del. 1970).........................................................10

*Khanna v. McMinn*, 2006 WL 13887445 (Del. Ch. May 9, 2006)...................................5

*Litt v. Wycoff*, 2003 WL 1794724 (Del. Ch. March 28, 2003) ......................................8

**TABLE OF AUTHORITIES--*Cont'd***

Page

*In re Mutual Funds Invest. Litig. (In re Janus Subtrack)*, 384 F. Supp. 2d 873 (D. Md. 2005) .................................................................................................................. *passim*

*Pogostin v. Rice, 1983 WL 17985, at * 3 (Del. Ch.), aff'd,* 480 A.2d 619 (Del. 1984)..................10

*Production Resources Group, LLC v. NCT Group, Inc.*, 863 A.2d 772 (Del. Ch. 2004)..........5, 10

*Rales v. Blasband*, 634 A.2d 927 (Del. 1992) ........................................................................1, 4

*Rattner v. Bidzos*, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003)....................................................11

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995).....................................................................10

*Spiegel v. Buntrock*, 571 A.2d 767 (Del. 1990) ............................................................................3

*Stone v. Ritter*, 2006 WL 302558 (Del. Ch. Jan. 26, 2006) ..........................................................10

*Werbowsky v. Collomb*, 766 A.2d 123 (Md. 2001) .........................................................................9

**Rules**

Del. Ch. R. 23.1 ......................................................................................................................3

Fed. R. Civ. P. 23.1.................................................................................................................3

**Other Authorities**

Lawrence A. Hammermesh & A. Gilchrist Sparks III, *Corporate Officers and the Business Judgment Rule:  A Reply to Professor Johnson*, 60 Bus. Lawyer 865 (May, 2005)................................................................................................................10

*David B. Shaev Profit Sharing Account*, 2006 WL 391931 .................................................. *passim*

**INTRODUCTION**

Plaintiff in this shareholder derivative action is a common stock owner of Janus Capital Group Inc. ("JCG") who seeks to hold JCG's Board of Directors personally liable for failing to oversee, detect, and prevent market timing in Janus mutual funds.  This claim for failure of oversight "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *In re Caremark Int'l, Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996).  And it is a claim that should be dismissed.

The Complaint readily concedes that plaintiff failed to make a pre-suit demand on JCG's Board of Directors.  Compl. ¶ 197.  That failure requires dismissal.  Under Delaware law, demand is excused only when a complaint contains particularized factual allegations sufficient to demonstrate that the Board could not "properly exercise[] its independent judgment and disinterested business judgment in responding to a demand."  *Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1992).[1]  The Complaint falls far short of satisfying that substantial pleading burden here.

This Court ruled in the Janus Fund Derivative case that the failure to make demand on the Janus fund trustees was not excused.  *See In re Mutual Funds Invest. Litig. (In re Janus Subtrack)*, 384 F. Supp. 2d 873, 877 (D. Md. 2005) (attached as Exhibit A).  The reasons for enforcing the pre-suit demand requirement are even stronger in this case, which seeks to impose personal liability on the Board of Directors of JCG, the publicly traded parent company of Janus Capital Management Group LLC ("JCM"), the investment adviser to the Janus mutual funds.

---

[1]  The law of the state under which an entity is organized governs the demand futility inquiry.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991).  Janus is incorporated in Delaware.

There are no allegations that any member of the JCG Board participated in, or profited from, the

alleged wrongdoing in the Janus funds.  Instead, the complaint boils down to the allegation that

the JCG Board should have done more to detect market timing in the Janus funds.  But as this

Court said in the Janus Fund Derivative case:  "Perhaps with the benefit of hindsight it may be

said that the [defendants] . . . should have been more vigilant in detecting . . . market timing

within the Janus funds. . . . [B]ut at most their failure to do so constituted negligence, not the

intentional conduct, recklessness, or, at the least, gross negligence, required to hold them liable

for their inactions."  *Id.* (citations omitted).

The principles set forth in the Court's Fund Derivative decision apply with powerful

force here.  Pre-suit demand was neither made nor excused, and the Complaint must accordingly

be dismissed.

## THE COMPLAINT'S ALLEGATIONS

Plaintiff seeks to hold JCG's Board of Directors liable for alleged breaches of their

fiduciary duties arising out of their asserted failure to identify or stop market-timing in Janus

mutual funds.  Compl. ¶¶ 1, 173-88.  The Complaint names JCG, JCM, and current and former

directors of JCG (the "Director Defendants") as defendants.  Compl. ¶¶ 12, 19, 22(a)-(i).  JCG is

incorporated in Delaware, and JCM is a Delaware limited liability company.  Compl. ¶¶ 9, 16.

The Director Defendants named in the Complaint were all members of JCG's Board of

Directors in September 2003, when the original civil lawsuits concerning market-timing and late-

trading allegations were filed.  Compl. ¶ 22(a)-(i).  According to the Complaint, at the time that

this suit was filed, eight members of the Board were outside directors.  Compl. ¶¶ 22(a)-(i), 199.

The Complaint does not allege that the outside directors maintained close, personal relationships

with Janus management or that they had any financial ties to Janus beyond their service on the

Board.  *Id.*  The Complaint recognizes that all of the Director Defendants are sophisticated

2

business persons with distinguished backgrounds.  Compl. ¶¶ 22(a)-(i), 30, 199-212.  There are

no allegations that Janus' Board of Directors participated in or profited from the alleged

wrongdoing.

The Complaint asserts two claims:  (1) a derivative claim against the Director Defendants

for breach of fiduciary duty and (2) a derivative claim against Mark Whiston in his individual

capacity as the CEO and President of Janus during the relevant period.  Compl. ¶¶ 26, 222-37.

Plaintiff concedes that he did not make a demand upon the Board of Directors before filing his

Complaint.  Compl. ¶ 197.

**ARGUMENT**

**I.      The Complaint Must Be Dismissed Because Plaintiff Failed To Make A Pre-Suit Demand.**

It is "[a] cardinal precept of the General Corporation Law of the State of Delaware . . .

that directors, rather than shareholders, manage the business and affairs of the corporation."

*Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm v.*

*Eisner*, 746 A.2d 244 (Del. 2000).  Thus, a shareholder who wishes to cause a corporation to

pursue a lawsuit must either (1) make a pre-suit demand by presenting the allegations to the

corporation's directors and requesting that they commence litigation, or (2) plead particularized

facts that show a pre-suit demand would be futile.  *Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del.

1990); *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984); Fed. R. Civ. P. 23.1; Del. Ch. R.

23.1.  Because the directors' right to manage the business and affairs of the corporation

necessarily encompasses the right to decide whether to "bring a lawsuit or refrain from litigating

a claim on behalf of a corporation" (*Spiegel*, 571 A.2d at 773), failure to make a demand will,

absent extraordinary circumstances, result in the automatic dismissal of a derivative action.  *See,*

*e.g.*, *Guttman v. Huang*, 823 A.2d 492, 500 (Del. Ch. 2003).

Whether a demand on a board of directors should be excused on the ground of futility is a question of the law of the state under which the entity is organized.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991).  Janus is incorporated in Delaware and, as this Court has noted, Delaware takes a very narrow view of when demand may be excused.  *See In re Mutual Funds Invest. Litig. (In re Janus Subtrack)*, 384 F. Supp. 2d 873, 877 (D. Md. 2005) (citing *Guttman*, 823 A.2d at 500).

The Delaware Supreme Court has articulated the standards for determining when demand would be futile.  *Aronson*, 473 A.2d at 812, 814; *Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1992).  When a derivative plaintiff challenges an affirmative business decision by the directors, the plaintiff must allege with particularity facts creating a reasonable doubt that "(1) the directors are disinterested and independent" or "(2) the challenged transaction was otherwise the product of a valid exercise of business judgment."  *Id.* at 814; *see also In re Mutual Funds Invest. Litig. (In re Janus Subtrack)*, 384 F. Supp. 2d at 878 n.8.

Where, as here, a derivative plaintiff is challenging the directors' alleged failure of oversight, demand is excused only if the complaint makes "particularized factual allegations . . . [that] create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent judgment and disinterested business judgment in responding to a demand."  *Rales*, 634 A.2d at 934; *see also David B. Shaev Profit Sharing Account v. Armstrong*, 2006 WL 391931, at *4 (Del. Ch. Feb. 13, 2006) ("the *Rales* test, in reality, folds the two-pronged *Aronson* test into one broader examination").

The burden of pleading a failure of oversight claim under Delaware law is "demanding," "most difficult," and "quite high."  *Guttman*, 823 A.2d at 506; *David B. Shaev Profit Sharing Account*, 2006 WL 391931, at *5 (pleading failure of oversight is "a difficult task").  Indeed, it

"is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re Caremark*, 698 A.2d at 967. Directors cannot be held liable on a failure of oversight claim unless they "ignored either willfully or through inattention obvious danger signs of employee wrongdoing." *Graham v. Allis-Chalmers Mfg. Co.*, 188 A.2d 125, 130 (Del. 1963). And "[o]nly a sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability." *Id.* at 971; *see also Production Resources Group, LLC v. NCT Group, Inc.*, 863 A.2d 772, 798 n.80 (Del. Ch. 2004) ("the plaintiff must plead facts supporting an inference of subjective bad faith").

Moreover, plaintiffs are required to plead facts in support of demand futility with particularity and may not rely on conclusory allegations. *See Guttman*, 833 A.2d at 501-03 (notice pleading inadequate); *Aronson*, 473 A.2d at 815; *Rales*, 634 A.2d at 933. "Conclusory allegations are not considered as expressly pleaded facts or factual inferences." *Beam v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004); *Khanna v. McMinn*, 2006 WL 1388744, at *12, 15 (Del. Ch. May 9, 2006).

**A.     The Complaint Does Not Make Legally Sufficient Allegations That The Board Was Interested.**

The Complaint's demand futility allegations appear at ¶¶ 196-221. With respect to director interest, the Complaint alleges only that demand should be excused because the directors' liability insurance coverage, which is maintained by Janus and is alleged to be the primary source of recovery, "would be rendered void if the Company commenced proceedings against the Director Defendants." Compl. ¶ 221. But these insurance allegations are plainly insufficient to excuse demand under Delaware law. The Delaware Chancery Court has repeatedly held that directors do not become "interested" simply because the plaintiff alleges that

the directors' liability insurance would not cover the director defendants if the company

commenced proceedings against them. *See Decker v. Clausen*, 1989 WL 133617, at \*2 (Del. Ch.

Nov. 6, 1989); *Caruana v. Saligman*, 1990 WL 212304, at \*4 (Del. Ch. Dec. 21, 1990).  As that

is the only allegation in the Complaint relating to director interest, the demand requirement

cannot be excused on that basis.

> **B.      The Complaint Does Not Make Legally Sufficient Allegations That A
> Majority Of The Board Faces A Substantial Likelihood Of Personal
> Liability.**

Plaintiff alleges that demand was excused because "at least a majority of the Board of

Directors face a substantial likelihood of liability."  *See* Compl. ¶ 198.  For demand to be

excused under the second prong of the *Aronson*/*Rales* test, the complaint must allege with

particularity that the board of directors is compromised by a "substantial likelihood of director

liability."  *Aronson*, 473 A.2d at 815 (emphasis added).  A "mere threat of personal liability" is

not enough.  *Id*.; *Ash v. McCall*, 2000 WL 1370341, at \*10 (Del. Ch. Sept. 15, 2000).  To satisfy

this pleading obligation, the complaint must allege, with particularity, that the Board ignored

"red flags," acted in bad faith, or grossly failed to require the existence of basic reporting and

oversight systems.  *See generally David B. Shaev Profit Sharing Account*, 2006 WL 391931, at

\*5.

> **1.      The Complaint Does Not Allege That "Red Flags" Were
> Brought To The Board's Attention Or That The Board Acted
> In Bad Faith.**

"Red flags" that were never brought to the board's attention cannot establish the bad faith

necessary to excuse demand.  *In re Citigroup Inc. Shareholders Litig.*, 2003 WL 21384599 (Del.

Ch. June 5, 2003), *aff'd*, *Rabinowitz v. Shapiro*, 839 A.2d 666 (Del. 2003), at \*2 ("'red flags' are

only useful when they are wa[v]ed in one's face or displayed so that they are visible to the

careful observer").  The red flags cited by the Complaint are the very same red flags that this

Case 1:04-md-15863-JFM   Document 2113   Filed 07/14/06   Page 11 of 19

Court concluded were inadequate to establish bad faith in the Fund Derivative case. *In re Mutual Funds Invest. Litig. (In re Janus Subtrack)*, 384 F. Supp. 2d at 878 (concluding that plaintiffs "have not alleged sufficient facts raising a reasonable doubt that the trustees do face a substantial likelihood of liability"). The Fund Derivative plaintiffs alleged that the trustees violated their fiduciary duties because they failed to "detect[] and prevent[] late trading and market timing activities," and that the trustees "were on notice that the activities might be occurring in the Janus funds" because market timing and late trading were "endemic in the mutual fund industry" and because there was "'copious coverage' of the problem in books and articles." *Id.* at 879. The Fund Derivative plaintiffs also alleged that the "directors—at least those on the funds audit committees—were aware of high turnover ratios in the Janus funds." *Id.* This Court concluded that these allegations were not sufficient to excuse demand in the Fund Derivative case. *See In re Mutual Funds Invest. Litig.*, 384 F. Supp. 2d at 878. The same conclusion should follow here.

Here, as in the Fund Derivative case, the Complaint contains numerous citations to "regulatory, academic, and general press red flags" (Compl. ¶ 203) that purportedly put the Director Defendants on notice of late trading and market timing. The Complaint cites general publications and academic articles concerning market-timing (Compl. ¶¶ 109-115), and alleges that knowledge about market timing was pervasive in the industry (Compl. ¶¶ 115-16, 129-33). But as in the Fund Derivative case, the Complaint does not allege that any articles specifically addressed Janus, much less that the Director Defendants knew of or discussed the articles or actual market timing occurring in the Janus funds.

Similarly, the Complaint alleges—in conclusory terms—that the Director Defendants, by virtue of their positions and experience, should have known of the alleged misconduct.

Compl. ¶¶ 199-215.  Indeed, the Complaint places near total weight on the general expertise and experience of the Director Defendants to establish that they *should* have known and detected market-timing in Janus funds.  Compl. ¶ 201 (Rowland "had long experience in senior executive management of mutual fund management and investment advisory businesses"); ¶ 206 ("Craig was an experienced investment advisor"); ¶ 207 (Scheid, Cox and Balser "have extensive experience in and specialized knowledge of the mutual fund industry and/or securities brokerage industry"); ¶ 210 ("Possessing such specialized knowledge and expertise, these Director Defendants were therefore duty bound to utilize it"); ¶ 213 ("As a result of the special knowledge, skill, and experience . . . the[] defendants had specific knowledge and understanding that rigorous attention to fiduciary compliance . . . was essential"); ¶ 214 ("by virtue of their personal experience, knowledge and expertise . . . the Director Defendants . . . were aware of and/or consciously disregarded [general information about the mutual fund industry]").  But as in the Fund Derivative case, "noticeably absent" are any allegations that the Director Defendants were actually confronted with "an extensive paper trail" showing "unmistakable signs that improper practices were being employed throughout the corporation."  *In re Mutual Funds Invest. Litig.*,  384 F. Supp. 2d at 878 (citations omitted).

Indeed, the Complaint purports to make specific allegations about only two members of the Board of Directors.  First, the complaint makes conclusory allegations about Hayes' purported knowledge of ostensible "red flags."  Compl. ¶¶ 149-52; 204-05.  It alleges that, based solely on her management position, "[i]t is not credible that market timing arrangements of the size and scope rampant at Janus . . . occurred within her funds without her knowledge or, at a minimum, acquiescence."  Compl. ¶ 150.  This, of course, is not a particularized allegation.  *Litt v. Wycoff*, 2003 WL 1794724, at *6 (Del. Ch. March 28, 2003) (noting that allegations that

actions were not taken in good faith must be pleaded with particularity); *Allison v. General Motors Corp.*, 604 F. Supp. 1106, 1114 (D. Del.), *aff'd*, 782 F.2d 1026 (3d Cir. 1985) (noting that demand futility based on bad faith requires pleading of particularized allegations). Plaintiff's conjecture that "it is not credible" that Hayes was unaware of market timing in the Janus funds is precisely the type of conclusory allegation deemed insufficient to excuse demand. This pleading failure is all the more significant given that plaintiff brought suit well after Janus settled with the SEC and the NYAG; despite all the publicly available information about what occurred at Janus, it is telling that plaintiff can no more than speculate as to what Hayes (and other board members) might have known.

Second, the Complaint alleges that Mr. Whiston commissioned a report that demonstrated that Janus had arrangements with "approved timers." Compl. ¶ 203. But the Complaint nowhere alleges that other members of the Board of Directors were aware of the contents of the report; it alleges only that certain individuals in management had knowledge of the report. Compl. ¶¶ 144-48, 203, 215. The Fund Derivative complaint—which this Court dismissed—made the identical allegation. *See* Fund Derivative Compl. at ¶¶ 280-82 (alleging that "the Report summarized the problem at Janus and identified several adverse impacts that market timing had on mutual funds and their investors"). Without having any knowledge of the alleged misconduct, the Director Defendants cannot be held liable for a failure to correct it. *See Ash*, 2000 WL 1370341, at *15. Moreover, even if some of the directors knew of the alleged market timing activities (a fact which is not alleged), demand would not be excused because the demand requirement is meant to provide directors with "an opportunity to consider, or reconsider, the issue in dispute." *Werbowsky v. Collomb*, 766 A.2d 123, 144 (Md. 2001);

*Aronson*, 472 A.2d at 809 (the demand requirement is "designed to give a corporation the opportunity to rectify an alleged wrong without litigation").[2]

Plaintiff was required to plead with particularity reasons the Director Defendants face a substantial likelihood of liability, including allegations of subjective bad faith.  *See Production Resources Group, LLC v. NCT Group, Inc.*, 863 A.2d 772, 798 n.80 (Del. Ch. 2004) ("the plaintiff must plead facts supporting an inference of subjective bad faith").  That standard has not been met.  As in the Fund Derivative case, at most the Complaint sets out a theory, informed by 20/20 hindsight, that the Board of Directors could have or should have done more to guard against wrongdoing.  But the Delaware courts have consistently dismissed complaints making similar allegations.[3]  As this Court said in the Fund Derivative case, although it may be said

---

[2] The complaint pleads a claim against Mark Whiston "in his capacity as CEO."  Compl.¶ 3. Whiston was a member of the Board at all relevant times, and the core theory of the complaint is that the Board failed in its duty, as the Board, to detect and prevent market timing activity.  To the extent Plaintiff alleges that Whiston is not entitled to the protections of the business judgment rule in his capacity as an officer, that theory fails as a matter of law. *See*, *e.g.*, *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. Ch. 1993); *Kelly v. Bell*, 266 A.2d 878, 879 (Del. 1970); *Pogostin v. Rice*, 1983 WL 17985, at * 3 (Del. Ch.), *aff'd*, 480 A.2d 619 (Del. 1984); *Haber v. Bell*, 465 A.2d 353, 357 (Del. Ch. 1983); *see generally*, Lawrence A. Hammermesh & A. Gilchrist Sparks III, *Corporate Officers and the Business Judgment Rule:  A Reply to Professor Johnson*, 60 Bus. Lawyer 865, 868-69 (May, 2005) ("Since we wrote on the subject in 1992, in fact, no court has stated that the business judgment rule does not apply to officers, and quite of number of opinions have held that it does"); *see also id*. at 869-73 (explaining policy reasons for applying business judgment rule to officers).

[3] *See David B. Shaev Profit Sharing Account*, 2006 WL 391931 (dismissing failure of oversight claim because plaintiff failed to plead particularized facts to establish a substantial likelihood of liability); *Stone v. Ritter*, 2006 WL 302558 (Del. Ch. Jan. 26, 2006) (dismissing failure of oversight claim because plaintiff failed to plead particularized facts to tie defendants to alleged wrongdoing); *Seminaris v. Landa*, 662 A.2d 1350, 1354-55 (Del. Ch. 1995) (dismissing failure of oversight claim because plaintiff failed to plead particularized facts to establish threat of liability); *In re Citigroup Inc. Shareholders Litig.*, 2003 WL 21384599 at *2 (holding demand not excused because no particularized allegations to

[Footnote continued on next page]

10

"with the benefit of hindsight . . . that the [defendants] . . . should have been more vigilant in

detecting late trading and market timing activities occurring within the Janus funds, at most their

failure to do so constituted negligence, not the intentional conduct, recklessness, or, at the least,

gross negligence, required to hold them liable for their inactions." *In re Mutual Funds Invest.*

*Litig. (In re Janus Subtrack)*, 384 F. Supp. 2d at 878 (citations omitted).

**2.      The Complaint Does Not Make Legally Sufficient Allegations
That The Board "Utterly Failed" To Attempt To Establish
Internal Controls.**

Nor can demand be excused on the ground that that the Director Defendants were guilty

of a "sustained or systemic failure . . . to exercise oversight." *In re Caremark*, 698 A.2d at 971.

The complaint must allege an "utter failure" by the board to attempt to establish internal controls,

including but not limited to particular "facts that show the company entirely lacked an audit

committee or other important supervisory structures, or that a formally constituted audit

committee failed to meet." *David B. Shaev Profit Sharing Account*, 2006 WL 391931, at *5.

Plaintiff's own allegations belie any suggestion that the company lacked the appropriate

supervisory structures.  To the contrary, according to the Complaint, Janus had a robust

compliance system.  Compl. ¶¶ 60-70.  To take just a few examples, Janus' compliance and

oversight systems included the following:

- an Audit Committee that was charged with "monitor[ing] the integrity of the

  Company's financial reporting process and systems of internal controls regarding

---

[Footnote continued from previous page]

establish defendants' knowledge of misconduct); *Guttman*, 823 A.2d at 496 (holding demand
not excused because no particularized allegations that the directors had "clear notice" of
misconduct); *Rattner v. Bidzos*, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) (holding demand
not excused because no particularized allegations of directors' involvement in the
misconduct).

11

financial, accounting and legal compliance, . . . [and] monitor[ing] compliance

with legal and regulatory requirements and to review areas of potential significant

financial risk to the Company."  Compl. ¶ 61; *see also* Compl. ¶¶ 65, 211-12;

- a Nominating and Corporate Governance Committee that was charged with
  "responsibility for promoting the best interests of the Company and its
  shareholders through the implementation of sound corporate governance
  principles and practices, to monitor compliance with legal and regulatory
  requirements, and to review areas of potential significant financial risk to the
  Company."  Compl. ¶ 211; and

- a Code of Business Conduct and Ethics requiring that Janus' business "be
  conducted in accordance with the highest ethical and legal standards." Compl.
  ¶ 65;

Perfection is not required of a board of directors, and it has been recognized that mistakes

by the board do not constitute an "utter failure" of oversight.  *See Dellastatious v. Williams*, 242

F.3d 191, 196 (4th Cir. 2001) (noting that "mishaps within a corporation do not alone entitle a

plaintiff to bring suit against directors in their personal capacities.").  *Caremark* states that a

board has a "duty to attempt in good faith to assure that a corporate information and reporting

system . . . exists," but recognizes that it is impossible that any system will remove every

"possibility that the corporation will violate laws or regulations." *Id.* at 970.  As a result, the

nature of corporate reporting and oversight systems is "a question of business judgment," where

much of the analysis turns on whether the board acted in good faith—which it did do here.  *In re*

*Caremark*, 69 A.2d at 970-71.  Directors simply do not bear liability "where a concededly well-

constituted oversight mechanism, having received no specific indications of misconduct, failed

to discover fraud." *David B. Shaev Profit Sharing Account*, 2006 WL 391931, at *5.

The Complaint does not set forth particularized facts to establish that the Director

Defendants face a "substantial likelihood of liability" based on an "utter failure" to attempt to

implement an information, compliance and oversight system. Indeed, the Fund Derivative

complaint similarly alleged that the Janus defendants "should have put procedures and processes

in place that would have provided them with relevant information about whether widespread late

trades and market timed transactions were being conducted," but this Court dismissed that

complaint due to the absence of particularized allegations of bad faith. *In re Mutual Funds*

*Invest. Litig. (In re Janus Subtrack)*, 384 F. Supp. 2d at 878. The same result should follow here.

The Complaint should be dismissed with prejudice.[4]

---

[4] Plaintiff's state-law claims against the Director Defendants for breach of fiduciary duty also fail on the merits. The Janus defendants reserve the right to move to dismiss such claims on the schedule to be determined by the Court in the event that the Complaint is not dismissed for failure to make pre-suit demand.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Respectfully submitted,

Dated:  July 14, 2006

\_\_/s/_____
Mark A. Perry
Andrew S. Tulumello
Melanie L. Katsur
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

*Counsel for Janus Capital Group Inc. and Janus
Capital Management LLC*

Robert C. Myers
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, NY  10019
Telephone: (212) 259-8000
Facsimile: (212) 259-6333

*Counsel for Paul F. Balser, Robert N. Burt, G.
Andrew Cox, James P. Craig, Landon H.
Rowland, Steven L. Scheid, Robert Skidelsky*

David C. Mahaffey
SULLIVAN & WORCESTER LLP
1666 K Street, N.W.
Washington, D.C.  20006
Telephone: (202) 775-1200
Facsimile: (202) 293-2275

*Counsel for Helen Y. Hayes*

Peter W. Devereaux
Ethan J. Brown
LATHAM & WATKINS LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA  90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763

*Counsel for Mark B. Whiston*