IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
BALTIMORE DIVISION

| | | |
|---|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION | : | MDL No. 1586 |
| ------------------------------------------------------ | : | |
| This Document Relates to: | : | |
| | : | |
| Barbara Walsh v. Marsh & McLennan Companies, Inc., et al., Civil Action No. 1:04-CV-00888 | : : : : : | 1:04-md-15863-JFM Judge J. Frederick Motz |

**THIRD AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS
OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT**

Plaintiff Barbara Walsh ("Walsh"), a participant in the Marsh & McLennan Companies Stock Investment Plan (the "Plan"), on behalf of herself and a class of all others similarly situated, alleges as follows:

**INTRODUCTION**

1.  This is a class action brought pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, against the named Plan fiduciary, of the Plan established for the benefit of employees of Marsh & McLennan Companies, Inc. ("Marsh & McLennan" or the "Company").

2.  401(k) plans confer tax benefits on participating employees to incentivize saving for retirement and/or other long-term goals. Employees participating in a 401(k) plan may have the option of purchasing the common stock of, or other investment options created by, their employer, often the sponsor of the plan, for part of their retirement investment portfolios.

Company stock and mutual funds within the Putnam family of mutual funds (as named in paragraph-below) are investment alternatives in the Plan.

3. Plaintiff Walsh was an employee of Marsh & McLennan and is a participant in the Plan. Plaintiff's retirement investment portfolio includes Marsh & McLennan stock and Putnam mutual funds.

4. Plaintiff alleges that Defendant, as a fiduciary of the Plan, breached its duties to her and to the other participants and beneficiaries of the Plan in violation of ERISA, particularly with regard to the Plan's holdings of Marsh & McLennan stock and Putnam Funds (as defined below in ¶ 20).

5. During the Class Period, Defendant knew or should have known that Company stock and mutual funds within the Putnam family of mutual funds were imprudent investment alternatives for the Plan. Defendant played an active role in implementing unlawful mutual fund trading methods utilized in the Putnam fund family and others to artificially dilute the value of certain investment alternatives within the Plan, namely, mutual funds within the Putnam family of mutual funds, or had intimate knowledge of these activities.

6. Defendant is liable under ERISA to restore losses sustained by the Plan as a result of its breaching fiduciary obligations.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

8. Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, some or all of the fiduciary

breaches for which relief is sought occurred in this district, and/or some Defendants reside or maintain their primary place of business in this district.

## PARTIES

**Plaintiff**

9. Plaintiff Walsh was an Marsh & McLennan employee, is a participant in the Plan pursuant to § 3(7) of ERISA, 29 U.S.C. § 1102(7), and continues to hold Company stock and Putnam Funds (as defined below in ¶ 20) in her retirement investment portfolio.

**Defendants**

10. Defendant Marsh & McLennan Companies, Inc. Stock Investment Plan Committee ("Plan Committee") is the Administrator of the Plan and a named fiduciary of the Plan within the meaning of ERISA in that it, through the actions of its appointed members, exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets, including but not limited to the discretionary authority to add and/or remove investment options under the Plan, and was charged with the concomitant responsibility to evaluate each investment option under the Plan.

11. There are fiduciaries of the Plan whose identities are currently unknown to Plaintiff, including additional Plan Trustees. Once their identities are ascertained, Plaintiff will seek leave to join them under their true names.

12. Defendant exercised discretionary authority or control regarding management of the Plan, management of the Plan's assets, and/or administration of the Plan.

**THE PLAN**

13.     The Marsh & McLennan Companies Stock Investment Plan is an "employee pension benefit plan," as defined by § 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A).  The relief requested in this action is for the benefit of the Plan and its participants/beneficiaries.

14.     According to the Company's Form 11-K, filed with the SEC on December 24, 2002 for the fiscal year ended June 30, 2002 (the "2002 Form 11-K"), the Plan is a defined contribution plan sponsored by Marsh & McLennan for the benefit of Company employees.

15.     Under the Plan, participants may contribute through payroll deductions from 1% to 15% of their salary, on a before and/or after-tax basis.  See 2002 Form 11-K.

16.     The Company matches up to the first six percent of participants' contributions in the following percentages:

> 71-2/3% for each participant who elects to receive dividends on their MMC shares as cash payments each quarter (100% for those participants age 55 or whose age plus years of plan participation equals at least sixty-five).

> 66-2/3% for each plan participant who elects not to receive the cash dividends (95% for those participants age 55 or whose age plus years of plan participation equals at least sixty-five).

17.     Any increase over the basic match must be invested in the Company stock fund. Participants who are age 55 or whose age plus years of plan participation equals at least sixty-five may diversify their contribution and accumulated balance among the MMC Stock Fund, a Fixed Income Fund and various Putnam mutual funds.  In addition, Company basic matching contributions are invested the same as participants' contributions.

18.     For employees hired on and after January 1, 1998, the Plan includes a vesting schedule for Company matching contributions.  These employees shall vest 33% in such

4

contributions after three years of service, 67% after four years of service and 100% after five years of service.

19. According to the 2002 11-K, as of June 30, 2002, the fair value of Company common stock held by the Plan was valued at **$1,315,391,574, or 65% of the total assets held by the Plan**.

20. Moreover, the 2002 11-K also indicates that as of June 30, 2002, Plan investments in mutual funds within the Putnam family of funds, including Putnam Investors Fund, The Putnam Fund for Growth and Income, Putnam Voyager Fund, Putnam Global Growth Fund, Putnam New Opportunities Fund, George Putnam Fund of Boston, Putnam S&P 500 Index Fund, and Putnam Bond Index Fund (collectively, the "Putnam Funds"), was valued at **$417,074,420, or 21% of the total assets held by the Plan**.

21. As a result of Defendant's investing in certain mutual funds where investors were treated differently than others, as described herein, the value of those Plan assets were materially diluted.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of herself and the following class of persons similarly situated (the "Class"):

> All persons who were participants in or beneficiaries of the Plan at any time between November 1, 1998 and September 3, 2003 (the "Class Period") and whose accounts included investments in Company stock and/or Putnam Funds.

23. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time,

5

and can only be ascertained through appropriate discovery, Plaintiff believes there are, at a minimum, thousands of members of the Class who participated in, or were beneficiaries of, the Plan during the Class Period.

24. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

 (a) whether Defendant owed a fiduciary duty to Plaintiff and members of the Class;

 (b) whether Defendant breached its fiduciary duties to Plaintiff and members of the Class by failing to act prudently and solely in the interests of the Plan's participants and beneficiaries;

 (c) whether Defendant violated ERISA; and

 (d) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

25. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other members of the Class each sustained damages arising out of the Defendant's wrongful conduct in violation of federal law as complained of herein.

26. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action, complex, and ERISA litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

27. Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter,

be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

28. Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendant; (ii) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole; and (iii) questions of law or fact common to members of the Class predominate over any questions affecting only individual members and a class action is superior to the other available methods for the fair and efficient adjudication of this controversy.

## DEFENDANT'S FIDUCIARY STATUS

29. During the Class Period, upon information and belief, Defendant had discretionary authority with respect to the management of the Plan and/or the management or disposition of the Plan's assets.

30. During the Class Period, Defendant acted as a named fiduciary of the Plan.

31. ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." § 402(a)(1), 29 U.S.C. § 1102(a)(1). Upon information and belief, Defendant is a named fiduciary of the Plan.

**SUBSTANTIVE ALLEGATIONS**

A.  **Market Timing And The Forward-Pricing Rule**

32.  Plaintiff hereby incorporates by reference the section entitled "SUBSTANTIVE ALLEGATIONS" and subsection A entitled "The Putnam Defendants" of the section entitled "ADDITIONAL SCIENTER ALLEGATIONS" of the Consolidated Amended Complaint against Putnam and certain of the individual Defendants herein for securities law violations filed with the Court in the In Re Putnam track of the *In Re Mutual Funds Investment Litigation*, MDL 1586, Civil Action No. 1:04-md-015863-JFM.

B.  **Defendant Knew or Should have Known that Company Stock and the Putnam Funds Were Not Prudent Plan Investments**

33.  Throughout the Class Period, employees of the Company's subsidiaries knowingly engaged in illegal conduct involving timing of the Putnam Funds, as described above, which constituted the vast majority of the available investment alternatives in the Plan.

34.  The above-described illegal timing activities materially diluted the value of the Putnam Funds.

35.  In addition, throughout the Class Period, Defendant knew that the Marsh & McLennan common stock was inflated in value as a result of employees of the Company's subsidiaries regular practice of allowing entities to time its mutual funds.

36.  At all relevant times, Defendant knew or should have known that the employees of the Company's subsidiaries were improperly diluting the revenues of the Putnam Funds by devising and implementing a scheme to obtain substantial fees and other income for themselves and their affiliates by allowing favored investors to engage in timing of the Putnam Funds throughout the Class Period and in violation of their fiduciary duties to the Plan participants.

8

37. Defendant failed to conduct an appropriate investigation into whether the Putnam Funds were prudent investments for the Plan and, in connection therewith, failed to provide the Plan participants with information regarding the true investment worthiness of the Putnam Funds, such that other fiduciaries and the Plan participants could make informed decisions regarding the Putnam Funds and otherwise failed to protect the Plan and its participants against inevitable losses. Such failures constituted breaches by Defendant of its fiduciary duties owed to the Plan and its participants, including but not limited to its duty to protect the Plan and its participants from making imprudent investments.

38. An adequate investigation by Defendant would have revealed to a reasonable fiduciary that investment by the Plan in the Putnam Funds and, relatedly in Company stock, under these circumstances, was imprudent. A prudent fiduciary acting under similar circumstances would have acted to protect participants against unnecessary losses, and would have made a different investment decision.

39. Because Defendant knew or should have known that Company stock and Putnam Funds were not prudent investment options for the Plan, it had an obligation to protect the Plan and its participants from unreasonable and entirely predictable losses incurred as a result of the Plan's investment in Company stock and Putnam Funds.

40. Defendant had available to it several different options for satisfying this duty, including: making appropriate public disclosures as necessary; divesting the Plan of Company stock and/or the Putnam Funds; consulting independent fiduciaries regarding appropriate measures to take in order to serve prudently and loyally the participants of the Plan; or resigning as Plan fiduciaries to the extent that as a result of their employment by the Company they could

9

not loyally serve Plan participants in connection with the Plan's acquisition and holding of Company stock and/or Putnam Funds.

## CLAIMS FOR RELIEF UNDER ERISA

41.     At all relevant times, Defendant was and acted as a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

42.     ERISA § 502, 29 U.S.C. §1132, provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA § 409, 29 U.S.C. §1109.

43.     ERISA § 409(a), 29 U.S.C. §1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

44.     ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge its duties with respect to a plan *solely in the interest of the participants* and beneficiaries, for the *exclusive purpose of providing benefits to participants* and their beneficiaries, and *with the care, skill, prudence, and diligence* under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

45. Plaintiff therefore brings this action under the authority of ERISA §502 for Plan-wide relief pursuant to ERISA § 409(a) to recover losses sustained by the Plan arising out of the breaches of fiduciary duties by the Defendant.

## CAUSATION

46. The Plan suffered at least millions of dollars in losses because substantial assets of the Plan were imprudently allowed to be put at great risk by Defendant, through Plan investment in Marsh & McLennan common stock and Putnam Funds during the Class Period, in breach of Defendant's fiduciary duties. This loss is reflected in the diminished account balances of the Plan's participants.

47. Defendant is responsible for losses caused by participant direction of investment in Marsh & McLennan common stock, as well as the Putnam Funds, because it failed to take the necessary and required steps to ensure effective and informed independent participant control over the investment decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated thereunder.

48. Had Defendant not breached its fiduciary duty by treating certain mutual fund investors differently than other mutual fund investors; failing to follow its disclosed policy and procedures of preventing market timing, affirmatively allowing certain investors to engage in timing in exchange for investing in Defendant's funds; and failing to disclose its true practices and procedures to Plaintiff and the Class, the Plans would have avoided a substantial portion of the losses suffered through continued investment in Putnam Funds.

49. Had Defendant not breached its fiduciary duties by investing in funds that treated certain mutual fund investors different than others, as described herein, the Plan would have

11

avoided a substantial portion of the losses it suffered through such continued investments in Putnam Funds.

## CLAIM

### Failure to Prudently and Loyally Manage Plan Assets
### (Breaches of Fiduciary Duties in Violation of ERISA § 404)

50.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

51.     At all relevant times, as alleged above, Defendant was a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

52.     As alleged above Defendant was responsible for the selection and monitoring of the Plan's investment options, including Company stock and the Putnam Funds.

53.     Under ERISA, fiduciaries who exercise discretionary authority or control over management of a plan or disposition of a plan's assets are responsible for ensuring that investment options made available to participants under a plan are prudent. Furthermore, such fiduciaries are responsible for ensuring that assets within the plan are prudently invested. Defendant was responsible for ensuring that all investments in Marsh & McLennan stock and/or shares of the Putnam Funds in the Plan were prudent, and are liable for losses incurred as a result of such investments being imprudent.

54.     Moreover, a fiduciary's duty of loyalty and prudence requires it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D). Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor

allow others, including those whom they direct or who are directed by the plan (e.g. plan trustees) to do so.

55.     Defendant breached its fiduciary duties to manage prudently and loyally manage the Plan's assets.  During the Class Period Defendant knew or should have known that Marsh & McLennan stock and/or shares of the Putnam Funds were not suitable and appropriate investments for the Plan as described herein.  Nonetheless, during the Class Period, these fiduciaries continued to offer Marsh & McLennan stock and/or shares of the Putnam Funds as an investment options for the Plan and to direct and approve the investment of Marsh & McLennan stock and/or shares of the Putnam Funds, instead of cash or other investments.  Similarly, during the Class Period, these fiduciaries continued to provide Company matching contributions in Marsh & McLennan stock, and/or shares of the Putnam Funds, instead of in a prudent retirement investment.  In so doing, Defendant further breached its fiduciary duties.  Moreover, during the Class Period, despite its knowledge of the imprudence of the investment, Defendant failed to take adequate steps to prevent the Plan, and indirectly the Plan participants and beneficiaries, from suffering losses as a result of the Plan's investment in Marsh & McLennan stock, and/or shares of the Putnam Funds.  In addition, given that such a high percentage of the assets of the Plan were concentrated in the stock of a single company, Marsh & McLennan and the mutual fund offerings of its subsidiaries, Defendant was obliged to have in place some financial strategy to address the extreme volatility of such a large single equity investment, paired with a heavy investment in mutual funds created and managed by subsidiaries of the Company.

56.     Defendant was unjustly enriched by the fiduciary breaches described herein.

57.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan (and indirectly the Plaintiff and the Plan's other participants and beneficiaries) lost a significant portion of the value of its investments.

58.     Defendant may not avail itself of any defense under ERISA § 404(c) to relieve it of liability for its ERISA violations insofar as: (a) ERISA § 404(c) does not relieve fiduciaries of the responsibility under ERISA § 404(a)(1)(A) and (B) to select prudent and suitable investment options in the first instance, and to monitor those selections, and therefore Defendant had ongoing fiduciary liability with respect to the selection of investment options, including the choice of the Putnam Funds, even if participants were permitted to direct the investment of their accounts; (b) the Plan did not satisfy the administrative requirements under Department of Labor regulations for the application of ERISA § 404(c); and (c) any Plan provision which purports to relieve fiduciaries of the obligation to select and monitor prudent investment options, and transfer such liability to participants, would be void as against public policy and be in violation of ERISA § 410, 29 U.S.C. § 1110

**WHEREFORE**, Plaintiff prays for relief as set forth below.

## REMEDY FOR BREACHES OF FIDUCIARY DUTY

59.     Defendant breached its fiduciary duties in that it knew or should have known the facts as alleged above, and therefore knew or should have known that the Plan's assets should not have been so heavily invested in Company stock and the Putnam Funds.

60.     As a consequence of the Defendant's breaches, the Plan suffered significant losses.

61.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. Section 409 requires "any person who is a fiduciary . . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such plan any losses to the plan . . . ." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . . ."

62.     With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the participants and beneficiaries in the plan would not have made or maintained its investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available.  In this way, the remedy restores the values of the plan's assets to what they would have been if the plan had been properly administered.

63.     Plaintiff and the Class are therefore entitled to relief from the Defendant in the form of: (1) a monetary payment to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (2) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3); (3) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (4) taxable costs and (5) interests on these amounts, as provided by law; and (6) such other legal or equitable relief as may be just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for:

A.	A Declaration that Defendant has breached its ERISA fiduciary duties to the Participants;

B.	A Declaration that Defendant is not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

C.	An Order compelling the Defendant to make good to the Plan all losses to the Plan resulting from it's breaches of fiduciary duties under all applicable ERISA provisions, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits the Defendant made through use of the Plan's assets, and to restore to the Plan all profits which the Participants would have made if Defendant had fulfilled its fiduciary obligations;

D.	Imposition of a Constructive Trust on any amounts by which Defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

E.	Actual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual accounts in proportion to the accounts' losses;

F.	An Order that Defendant allocate the Plan's recoveries to the accounts of all participants who had any portion of their account balances invested in Company stock and/or the Putnam Funds maintained by the Plan in proportion to the accounts' losses attributable to the decline in the price/value of Company stock and the Putnam Funds;

G.	An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

H. An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

I. An Order for equitable restitution and other appropriate equitable monetary relief against Defendant.

DATED: October 19, 2006

**WECHSLER HARWOOD LLP**

By:    /s/ Samuel K. Rosen
       Robert I. Harwood
       Samuel K. Rosen
       Matthew M. Houston
       Peter W. Overs, Jr.
488 Madison Avenue
New York, NY 10022
Telephone: (212) 935-7400
Facsimile: (212) 753-3630

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I, Cary Savitz, hereby certify that I am not a party to the action, am over the age of eighteen years, am employed by the law firm of Wechsler Harwood LLP, attorneys for Plaintiff, and that on October 19, 2006, I served the foregoing **THIRD AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT** in the within action, by causing a true and correct copy of the same to be electronically mailed to counsel for Defendant as indicated below:

Seth M. Schwartz, Esq.
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-2710
E-Mail: sschwart@skadden.com

Attorneys for Putnam

    /s/ Cary Savitz
    Cary Savitz