LAW OFFICES
# WOLF POPPER LLP
845 THIRD AVENUE

NEW YORK, N.Y. 10022-6601

(212) 759-4600

FACSIMILE: (212) 486-2093

WWW.WOLFPOPPER.COM

DIRECT DIAL:

October 31, 2006

By ECF Filing

Honorable J. Frederick Motz
United States District Judge
United States District Court for the
District of Maryland
101 West Lombard Street
Baltimore, MD 21201

    Re:    MDL 1586 – *In re Mutual Funds Investment Litigation*
             *In re Alger, Columbia, Janus, MFS, One Group, Putnam and Allianz Dresdner*
             *Allianz Dresdner* Subtrack

Dear Judge Motz:

       We represent Lead Investor Class Plaintiff ("Lead Plaintiff") and the putative Class in the *Allianz Dresdner* subtrack, and write in response to the October 24, 2006 letter submitted by the Allianz Dresdner investment adviser, distributor and parent entity defendants (the "Allianz Defendants"). These defendants seek leave to file renewed motions to dismiss regarding two issues previously briefed extensively by the parties, specifically, (i) whether the named Investor Class plaintiffs' ("Plaintiffs") have "standing" to assert claims on behalf of all shareholders injured by defendants' alleged fraudulent scheme, and (ii) whether Plaintiffs may assert claims for market timing activity that the Allianz Defendants prematurely brand "under-the-radar" timing. For the reasons set forth below, Plaintiffs strongly believe that the Allianz Defendants' request to renew motion practice on these issues at this juncture – before a factual record is developed – is untimely, futile, and would likely cause needless delay, expense and uncertainty in this and other sub-tracks. Accordingly, we respectfully request that the Court deny the Allianz Defendants leave to file an additional round of redundant motion to dismiss briefing.

       Before addressing the thrust of the Allianz Defendants' arguments, Plaintiffs must clarify the record concerning the investigations by the regulators of wrongful market timing and the "fair fund" established in connection with Allianz Defendants' settlement with the Securities and Exchange Commission ("SEC"). First, while the Allianz Defendants imply that the "fair fund" created in connection with their SEC settlement entitles them to a $50 million credit, the reality is far different: the terms of the Allianz Defendants' SEC settlement explicitly provide that only $10 million of the "fair fund" may be offset against private actions. The remaining $40 million is a civil penalty intended to deter wrongful conduct by these defendants. Furthermore, in accord with the Court's ruling denying the recent *Janus* motion to dismiss, at this stage of the litigation, when there has not been discovery of the full extent of defendants' market timing activity, Plaintiffs' action is not circumscribed by the Allianz Defendants' SEC settlement. The Allianz Defendants have, until very recently, largely refused to produce damages discovery requested by

WOLF POPPER LLP

Plaintiffs, contending, *inter alia*, that the SEC settlement had uncovered all wrongdoing.[1]

### A.    There Are No "Standing" Issues That Require Further Briefing At This Time

The Allianz Defendants' request for another round of motion to dismiss briefing on "standing" may, and should be, deferred until the class certification stage. As a threshold matter, we note that the Allianz Defendants ***do not contest*** that the named Plaintiffs in this action possess standing to assert claims against the Allianz Defendants. For each fund purchased or held by Plaintiffs and *every other Allianz/PIMCO fund*, the Allianz Defendants are the same group of affiliated entities: the investment advisor, distributor and parent corporation. Therefore, the investor class action will involve the very same Allianz Defendants no matter how many (or which) funds ultimately are confirmed to have been market timed and there is no prejudice to those defendants to having the litigation continue on the path established long ago. The only contested "standing" issue is whether additional **plaintiffs** who have purchased shares in each and every Allianz/PIMCO mutual fund during the Class Period must be added now as named plaintiffs in this action. This very issue has been fully briefed, considered and deferred by the Court before. The Allianz Defendants' renewed challenge on the same grounds offers no compelling reason to deviate from the Court's prudent approach.

By way of background, we note that the Court has at least twice considered this issue and both times reached the same conclusion. First, during the "organization of counsel" phase of MDL 1586 in mid-2004, the Court rejected the request of certain plaintiffs' counsel that the Court appoint a separate lead plaintiff, and lead counsel, for each and every fund in a family of mutual funds. This would have added a large number of named plaintiffs (and counsel) in each consolidated investor class action. In rejecting this request, the Court correctly reasoned that adding a plaintiff for every fund was unnecessary, unwieldy and highly inefficient. *See* Letter from Hon. J. Frederick Motz to Counsel of 4/30/04, at 1 ("First, we are strongly of the view that only one lead plaintiff or one group of plaintiffs closely related to one another prior to the institution of the suit (and one attorney for that plaintiff or group of plaintiffs) should be appointed in the PSLRA actions."). Instead, the Court elected to appoint a single lead plaintiff in each of the family of funds subtracks, consistent with the purposes and procedures of the Private Securities Litigation Reform Act of 1995. The Court deferred the purported "standing" issue until an appropriate time. After the consolidated amended complaints were filed, defendants again raised the same "standing" issue. In its opinion in the *Janus* subtrack, the Court again decided to "defer ruling on the standing issue" (*Janus* Opinion, p.4, n.4), and again did so for good reasons. There is simply nothing to be gained by attempting to resolve whether class representatives should be added before Plaintiffs have uncovered the full scope of harm to the

---

[1] In a related vein, Plaintiffs observe that New York Attorney General Spitzer recently renewed an action against mutual fund advisor J. & W. Seligman & Co. ("Seligman") because, despite detailed investigations resulting in an "all clear" for Seligman, Mr. Spitzer's office very recently discovered instances of market timing that had allegedly been hidden from the investigators due to a limited trading period examined by Mr. Spitzer's office at Seligman's insistence. *See* http://www.sec.gov/litigation/litreleases/2006/lr19888.htm.

Class.

  Specifically, the Court-appointed Lead Plaintiff in this case is an institution that has fought long and hard to obtain discovery regarding every fund in the Allianz sub-track, which the Allianz Defendants have finally agreed to produce, and seeks to recover damages for all injured shareholders across all Allianz/PIMCO mutual funds. Thus, as the Allianz Defendants cannot dispute, the Lead Plaintiff has, and will continue to, faithfully and vigorously represent the interests of the entire putative Class to seek remuneration for all shareholders in all Allianz/PIMCO funds damaged by unlawful market timing/late trading.[2]

  The issue that the Allianz Defendants flag concerns class certification (*i.e.*, whether additional class representatives should be added) and therefore is more appropriately resolved at that phase of the proceedings and once the scope of the wrongdoing and damages is fully known.[3] A named plaintiff's ability to represent all affected securities purchasers is routinely presented and resolved in the context of a class certification motion, not as a threshold "standing" issue.[4] Indeed, the Allianz Defendants acknowledge as much in their letter to the Court. In their attempt to brush aside the concerns of other defendants in this MDL proceeding (whom they do not identify) who apparently share Plaintiffs' concerns about derailing ongoing settlement discussions and the progress of the litigation, the Allianz Defendants concede that if the Court does not resolve the "standing" issue now, such issues will be resolved when the Court

---

[2] As the Court is likely aware, the Class definitions in the investor class actions include all shareholders who purchased and/or held mutual fund shares advised by the fund adviser and who were harmed by unlawful market timing and/or late trading.

[3] *See, e.g., Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 187 (4th Cir. 1993) (holding that "[i]t was not an abuse of discretion to delay ruling on the standing issue until discovery of the relevant underlying facts was complete") (citing *In re School Asbestos Litig.*, 921 F.2d 1310, 1316 (3d Cir. 1990) (noting the district court's "discretionary authority" to defer subject matter determinations)).

[4] *See, e.g.*, cases cited in Class Plaintiffs' Omnibus Memorandum of Law in Response to Defendants' Omnibus Briefs in Support of Their Motions to Dismiss ("Omnibus Opposition"), at pp. 78-86, including, *e.g., Goodman v. Lukens Steel Co.*, 777 F.2d 113, 122 (3d Cir. 1985) ("[C]ontrary to the defendants' contentions, the issue here is one of compliance with the provisions of Rule 23, not one of Article III standing. Each of the named plaintiffs has presented claims of injury to himself and has alleged facts which present a case or controversy under the Constitution."), *aff'd on other grounds*, 482 U.S. 656 (1987); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 411-12, 424 (6th Cir. 1998) ("once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong."); *In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901, 911 n.7 (D.N.J. 1998) ("Courts have allowed those with valid securities claims to represent the interests of the purchasers of other type[s] of securities in class action suits.... Given Plaintiffs have sufficiently alleged individual cognizable injuries pursuant to Section 11 and Section 12(a)(2), Plaintiffs have standing to bring these claims. Concerns over whether stock purchasers should represent notes purchasers are better addressed at the time of class certification."); *Hicks v. Morgan Stanley & Co.*, 2003 WL 21672085, at *3 (S.D.N.Y. July 16, 2003); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000) (certifying named plaintiffs who invested in the Dreyfus Aggressive Growth Fund to represent purchasers in the Dreyfus Premier Aggressive Growth Fund).

certifies a class.[5] And just as the Court's prior rulings and the law support deferring the "standing" issue raised by the Allianz Defendants, so do overwhelming practical considerations.

Ultimately, Plaintiffs are confident that, as a matter of law, the Allianz Defendants will lose a "standing" challenge at any stage of the litigation. As set forth in Plaintiffs' Omnibus Opposition to defendants' motions to dismiss concerning the "standing" issue, more named plaintiffs can be added (and indeed, could have been added at the inception of the litigation) to cover the bulk or all of the funds in the Allianz/PIMCO family, if necessary. However, to compel plaintiffs in each subtrack to amend their complaints now, and invite additional rounds of briefing, would be ill-advised. That is especially so where, as here, there are dozens of funds in the Allianz/PIMCO fund family and counsels' best estimate at this time (without the benefit of full damages discovery and trading data) is that less than half of such funds were significantly impacted by market timing. Adding plaintiffs who held shares in funds that may not have been harmed would be not be fruitful, and may, indeed, be very counter-productive.

The Allianz Defendants have not demonstrated any real prejudice to a deferral of further briefing of "standing" issues – claims will proceed against the same defendants and discovery will be substantially similar. Should the Court entertain the Allianz Defendants' "standing" motion again at this juncture, parties in all the sub-tracks may wish to weigh in on this issue, as occurred with the Omnibus briefing, and who knows how many other issues that have already been briefed and decided.

For the foregoing reasons, we respectfully request that the Court abide by its prior sound decisions and deny the Allianz Defendants' instant request for leave to file a motion to dismiss on "standing" grounds.

B.  **Motion To Dismiss Briefing Concerning Claims Defendants Characterize As "Under the Radar" Is Inappropriate**

Although the Allianz Defendants contend that there is a "live" issue concerning the scope of actionable market timing in this case, the issues are largely factual in nature. The real issue is not, as the Allianz Defendants suggest, whether in the abstract so-called "under-the-radar" market timing that amounts to negligent conduct gives rise to a securities fraud claim, but what trading constitutes fraudulent, "approved" market timing under the unique facts and circumstances of this case.[6] This issue can only be resolved after there has been appropriate

---

5 *See* Allianz ltr., p.2. While the Allianz Defendants allude to several new "on point" and potentially dispositive rulings on the "standing" issue they wish to brief, we are aware of none and find their reluctance to refer to even a single case very telling.

6 As Plaintiffs clarified during the October 16, 2006 status conference, Plaintiffs' Second Amended Complaint was filed prior to the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336 (2005). As the Court and the Allianz Defendants are aware, investor class plaintiffs in MDL 1586 voluntarily dismissed their state law claims subsequent to *Dura*. Accordingly, any allegations of aiding, abetting and other alleged negligent conduct supporting the dismissed state law claims may be disregarded.

discovery.

In considering the market timing allegations in this and other subtracks, it is helpful to consider three varieties of market timing: (1) market timing under a specific agreement; (2) market timing that the fund advisors tracked and had the ability to stop but knowingly or recklessly allowed to continue; and (3) market timing by traders who deliberately tried to deceive the fund by attempting to hide their trading patterns *and actually succeeded in doing so* by, among other techniques, using multiple accounts, multiple registered representative/broker numbers, and other deceptive practices. This Court has already concluded that the first species of market timing described above is inherently fraudulent when not disclosed to ordinary investors. *See* November 3, 2005 Opinion (adopting *Janus*, 384 F. Supp. 2d at 856-57.) Both the mutual fund family and the market timer face liability for this fraud. *Id.*

The second category of market timing is ultimately a question of *fact*: what did the fund know about the market timing that it could, and in some cases did, easily identify, and what did it do (or, more accurately, not do) to protect the interests of long-term shareholders from such market timing? Depending on the facts, knowingly permitting billions of dollars worth of short-term, round-trip trading without disclosing this harmful trading activity at a minimum creates a dispute of fact about whether the conduct was knowing or reckless. In this sense, the phrase "under-the-radar" is perhaps inartful; this second category actually refers to timing that is not specifically negotiated, but that is identified and nevertheless permitted.[7]

The third type of market timing discussed above, market timing by traders who deliberately tried to deceive the fund by attempting to hide their trading patterns *and actually succeeded in doing so* by, among other techniques, using multiple accounts, multiple registered representative/broker numbers, and other deceptive practices, does not result in liability for the fund defendants. Recognizing this fact, the Allianz Defendants attempt, again, to shoehorn Plaintiffs' Complaint's allegations into this category. *See* Allianz ltr., p.2. The Allianz Defendants' characterization of the many allegations of knowingly wrongful conduct in the Complaint as "issues of negligence" indicates the direction of their proposed renewed motion to dismiss briefing and demonstrates that such an exercise would certainly be futile.

As Your Honor recognized with respect to the recent motion to dismiss the *Janus* investor class action on similar grounds, the better approach is to consider such a motion with a concrete factual record before the Court, rather than deal with an abstract question – in hundreds of shades of gray – about what constitutes "approved" timing. As the Court observed during the

---

[7] Depending on the specific facts and whether a deceptive act was committed by the market timer, the market timer may or may not have liability for these trades. *Id.* Notably, a conspiracy between the two types of defendants is *not necessary* for one, the other or both to be liable for fraud. *See Janus*, 384 F. Supp. 2d at 855 (scheme liability attaches to any person who employs a device, scheme, or artifice to defraud or who engages in a deceptive act, practice, or course of business in connection with the purchase or sale of any security).

WOLF POPPER LLP

Honorable J. Frederick Motz
October 31, 2006
Page 6

August 23, 2006 *Janus* hearing, there may be degrees of approved timing, short of an affirmative written agreement to time. *See Janus* Hearing Tr. 40-42, Tr. 51. The Court should not hypothetically determine every fact pattern that would fall under the category "approved" timing at this time. *Janus* Hearing, Tr. 51 (agreeing with Fund Defendants Liaison Counsel that such an issue should be resolved not in the abstract but in a particular factual context). Here, the Allianz Defendants have only recently (on the date of the October 16 Court conference) agreed to produce relevant trading data. Thus, the Allianz Defendants' attempt to have the Court consider these mixed questions of fact and law now, in the abstract, would be a waste of time, money and effort and would amount to an advisory opinion.

Moreover, even based on the limited evidence to date, Plaintiffs believe they could easily defeat a dispositive motion based on defendants' "under the radar theory." While the Allianz/PIMCO funds' prospectuses purportedly limited traders to 6 round-trip trades in a year, the preliminary analysts by Plaintiffs' damages based on very limited data, show, for example, that one timer alone, using <u>one</u> account number (not changing account numbers to disguise him/herself), made <u>71 round trip trades in a 14-month period</u>. Those facts strongly suggest that this timing activity was "approved." To date, Plaintiffs have identified 23 such timers, in just the four funds for which we have been provided data to date. This alone is strong evidence of, at a minimum, recklessness, which is sufficient to plead scienter for Plaintiffs' Exchange Act claims (not "mere negligence," as defendants would seek to downplay it). These startling trading trends merit further investigation through discovery.

In sum, Plaintiffs believe the Court's stated preference to defer ruling on the "under-the-radar" timing issue until summary judgment or even later is correct. Allianz Oct. 16, 2006 Conference, Tr. 14.

C.   **Conclusion**

As explained above, there are no compelling grounds for another round of motion to dismiss briefing on issues that the parties have briefed and the court has before considered. Denying leave would not prejudice the Allianz Defendants (who will remain defendants even if their proposed briefing is decided in their favor) from raising the same arguments at a later, appropriate stage in the litigation.[8] The appropriate activity in this case, at this time, is focused discovery, including a full review and analysis of the trading data that the Allianz Defendants have very recently agreed to produce. This discovery will move this action towards a fair and

---

8 To the extent the Allianz Defendants suggest that uncertainty over these issues may somehow hinder settlement discussions, Plaintiffs would simply point out that such litigation uncertainties are an everyday occurrence, and have not hindered the other settlements which have been reached.

final outcome whether the outcome be a settlement, or briefing on these issues at the right time, in the right contest, and with the benefit of a factual record. Plaintiffs therefore respectfully request that the Court deny leave for the Allianz Defendants to file renewed motions to dismiss.

                        Respectfully submitted,

                        /s/
                        Chet B. Waldman

cc: All Counsel (via ECF)