IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE ALGER, COLUMBIA, JANUS, MFS, ONE GROUP, ALLIANZ DRESDNER AND PUTNAM | No. 04-MD-15863-05 |
| This Document Relates To: | (Hon. J. Frederick Motz) |
| The One Group Subtrack | |

**LONG-FORM NOTICE OF PENDENCY AND PROPOSED SETTLEMENTS OF CLASS, ERISA AND DERIVATIVE ACTIONS, MOTION FOR ATTORNEYS' FEES AND EXPENSES, AND SETTLEMENT HEARING**

*IF YOU (1) PURCHASED OR OTHERWISE ACQUIRED AND/OR HELD SHARES IN ANY OF THE IDC FUNDS[1] DURING THE PERIOD FROM NOVEMBER 1, 1998 THROUGH SEPTEMBER 3, 2003, INCLUSIVE (THE "CLASS PERIOD"), AND ARE A FAIR FUND RECIPIENT[2] OR DISTRIBUTION CLASS MEMBER[3] (THE "INVESTOR CLASS"); OR (2) PARTICIPATED IN OR WAS A BENEFICIARY OF THE BANK ONE CORPORATION SAVINGS AND INVESTMENT PLAN DURING THE CLASS PERIOD AND YOUR ACCOUNTS INCLUDED INVESTMENTS IN THE IDC FUNDS AND YOU ARE A FAIR FUND RECIPIENT OR A DISTRIBUTION CLASS MEMBER (THE "ERISA CLASS") (COLLECTIVELY, THE "CLASSES"), YOU COULD RECEIVE A PAYMENT FROM A CLASS ACTION SETTLEMENT. IN ADDITION, IF YOU CURRENTLY HOLD SHARES IN THE SUCCESSORS TO THE ONE*

---

[1]     "IDC Funds" means the following One Group Mutual Funds:  One Group Mid Cap Growth Fund, One Group Large Cap Growth Fund, One Group Diversified Equity Fund, One Group Mid Cap Value Fund, One Group Large Cap Value Fund, One Group Diversified Mid Cap Fund, One Group Small Cap Value, One Group Diversified International Fund, One Group International Equity Index Fund, One Group Small Cap Growth Fund and One Group Equity Income Fund.

[2]     "Fair Fund Recipients" means those One Group shareholders who, pursuant to the Independent Distribution Counsel (IDC)'s Plan of Distribution, have received a distribution from the fund (comprised of $50 million, plus accumulated interest) paid by BOIA (the "BOIA Fair Fund") for distribution to affected shareholders pursuant to the June 29, 2004 Order of the U.S. Securities and Exchange Commission (SEC) in *In the Matter of Banc One Investment Advisors Corporation, et al.*, Administrative Proceeding File No. 3-11530 (the "SEC Order").

[3]     "Distribution Class" means those shareholders in the Distribution Funds during the Class Period who have been identified by the Plaintiffs as allegedly having suffered dilution harm as a result of under-the-radar trading.  "Distribution Funds" means the following 5 funds from among the 11 IDC funds:  One Group International Equity Index Fund, One Group Diversified International Fund, One Group Diversified Mid Cap Fund, One Group Mid Cap Value Fund and One Group Small Cap Value Fund.

GROUP FUNDS (CURRENTLY KNOWN AS CERTAIN JP MORGAN MUTUAL FUNDS) CERTAIN OTHER RIGHTS MAY BE AFFECTED BY A SETTLEMENT OF A DERIVATIVE ACTION.
**A federal court authorized this Notice.  This is not a solicitation from a lawyer.**

**Securities and Time Period:**  Shares purchased and/or held in any of the IDC Funds during the period from November 1, 1998 through September 3, 2003, inclusive (the "Class Period").

**The Investor Class:**  If you purchased or otherwise acquired and/or held shares in any of the IDC Funds during the Class Period, and are a Fair Fund Recipient or Distribution Class Member, then you are a member of the Investor Class.  Certain persons and entities are excluded from the Investor Class as discussed below in Question 7.  If you are an Investor Class Member, your rights will be affected by the proposed Settlements and you may be entitled to a payment from the settlement proceeds.

**The ERISA Class:**  If you were a participant in or beneficiary of the Bank One Corporation Savings and Investment Plan during the Class Period and your accounts included investments in the IDC Funds and you are a Fair Fund Recipient or Distribution Class Member, then you are a member of the ERISA Class.  Certain persons and entities are excluded from the ERISA Class as discussed below in Question 9.  If you are an ERISA Class Member, your rights will be affected by the proposed Settlements and you may be entitled to a payment from the settlement proceeds.

**Derivative Settlements:**  If you continue to hold shares in the current successors of the One Group Mutual Funds, your rights may be affected by settlement of derivative actions on behalf of the current successors to the One Group Funds.

**Settlement Amounts and Statement of Recovery:**  As more fully described below in Question 12, the proposed Settlements collectively provide for payment of a total of $5,599,500 in cash (the "Settlement Funds"), plus interest earned on the Settlement Funds (the "Gross Settlement Funds").  The Settlement Funds are comprised of (i) $5,100,000 paid on behalf of the Bank One Defendants (as defined below), (ii) $15,500 paid on behalf of BAS (as defined below), (iii) $154,000 paid on behalf of the Bear Stearns Defendants (as defined below), and (iv) $330,000 paid on behalf of the Canary Defendants (as defined below).  In addition to these amounts, Class Counsel intends to distribute another $660,000, plus interest (the "OAG/Canary Amount"), which was obtained by the Office of the New York Attorney General ("OAG") in its settlement with certain of the Canary Defendants.

Based on Plaintiffs' estimate of the number of shares in the Distribution Funds entitled to participate in the Settlements, and assuming that all such shares entitled to participate do so, Plaintiffs estimate that the average recovery per eligible share (before deduction of Court-awarded attorneys' fees and expenses and the costs of providing notice and administering the Settlements, and not including the OAG/Canary Amount) will be as follows:

| **Distribution Fund** | **Average Recovery per Eligible Share (in ¢)** |
|---|---|
| | |

| Distribution Fund | Average Recovery per Eligible Share (in ¢) |
|---|---|
| One Group International Equity Index Fund | 8.12069446 |
| One Group Diversified International Fund | 2.69130232 |
| One Group Diversified Mid Cap Fund | 0.37772611 |

**Please Note: The average amounts listed above are only estimates.**   A Class Member's actual recovery will depend on, among other things:  (1) the number of Distribution Fund shares the Class Member purchased and/or held during the Class Period; (2) the particular Distribution Fund(s) in which the Class Member held shares; (3) whether market timing occurred in the Distribution Funds during the period that Class Members held their shares; (4) the timing of the Class Member's purchases and sales of Distribution Fund shares; (5) application of a *de minimis* cut off; (6) the amount of the Gross Settlement Funds that is paid directly to the successors to the One Group Mutual Funds; and (7) the amount awarded by the Court for attorneys' fees, costs and expenses.  Distributions to Class Members and/or the successors to the One Group Mutual Funds will be made based on the Plan of Allocation set forth in this Notice.  *See* the Plan of Allocation on pages [__-__].  Administrative costs, including the costs of notice, for the Actions are being paid separately by Bank One Defendants pursuant to the terms of the Stipulation and Agreement of Settlement with the Bank One Defendants, entered into on or about June 1, 2009.  A $670,000 recovery in the Derivative Action will be distributed to the current successors of the One Group Mutual Funds, in a manner to be determined by the Derivative Plaintiffs, the Bank One Defendants and the Trustees of the current successors of the One Group Mutual Funds, with due regard to the appropriate roles and responsibilities of each as set forth in the Plan of Allocation set forth below on pages [__-__].

Because the Distribution Funds were each allegedly impacted in the aggregate over the Class Period in varying degrees, not all of the Distribution Funds are listed above.  If you held shares in the Mid Cap Value Fund and/or the Small Cap Value Funds during the Class Period you may still be eligible for a recovery, however, depending on when you held those shares.  Lead Class Counsel determined, in consultation with an expert retained to analyze the effect of alleged market timing in IDC Funds by reviewing the data for each and every transaction that took place in the IDC Funds during the Class Period to allocate Settlement Funds in respect of holdings in the Distribution Funds (the International Equity Index Fund, Diversified International Fund, Diversified Mid Cap Fund, Mid Cap Value Fund and Small Cap Value Fund) only for shares held for certain times but not during the entire Class Period, because they determined that the alleged market timing potentially had an adverse effect on those Distribution Funds only at certain times.  The Plan of Allocation reflects the conclusions of Lead Class Counsel concerning the extent to which alleged market timing potentially impacted the various Distribution Funds for each day during the Class Period.

In addition to the Settlement Funds obtained on behalf of the Classes and the successors to the One Group Mutual Funds in these Actions, while these Actions were pending, several regulatory bodies entered into their own market timing and/or late trading-related settlements with certain Defendants in these Actions, including the Bank One Defendants.  These regulatory settlements resulted in payments to compensate investors, including certain Class Members, for market timing and/or late trading-related harm suffered by investors.  In total, more than $50

million has been distributed to One Group investors and/or the funds from these regulatory settlements.  In addition, the regulatory settlements provided for reductions in management fees, certain corporate governance reforms and disclosure requirements to investors.  These Settlements supplement and add to those regulatory distributions.  These Settlements do not seek to compensate Class Members for alleged market timing harm that has already been compensated by regulatory settlements.

In connection with these settlements, experts retained by class counsel examined trading records in the One Group Funds, and reviewed the IDC distribution. As a result of this examination and review, plaintiffs' class counsel represent that they have concluded that shareholders of the Releasing Funds who fall outside of the class now proposed to be certified for settlement purposes suffered no damages (other than de minimis damages) as a result of Market Timing activities in the Releasing Funds, and that such shareholders have no viable claims against the Canary Defendants, the Bear Stearns Defendants, or BAS.  In light of this representation, the Canary Defendants, the Bear Stearns Defendants, and BAS have agreed that plaintiffs may seek certification of such class for settlement purposes, even though such class is narrower than the class contemplated by their Stipulations.   The Canary Defendants, the Bear Stearns Defendants, and BAS reserve all rights in the event that any such claims are prosecuted in the future.

**The Lawsuits:**  Multiple lawsuits concerning alleged frequent trading, market timing, or late trading in One Group Funds have been consolidated for pretrial purposes in the United States District Court for the District of Maryland.  The lawsuits include a class action on behalf of former investors in One Group Funds (*Robinson* v. *One Group International Equity Index Fund, et al.*, D. Md. Civil Action No. 04cv00629), a class action on behalf of former participants in or beneficiaries of the Bank One Corporation Savings and Investment Plan (*Zarate* v. *Bank One Corporation, et al.*, D. Md. Civil Action No. 04cv00830), and a derivative action on behalf of the One Group Funds (*Williams, et al.* v. *Bank One Corp., et al.*, D. Md. Civil Action No. 04cv00832) (collectively, the "Actions").  Claims alleged in the Actions arise under the federal securities laws and state law, and (in respect of claims on behalf of former participants in or beneficiaries of the Plan) the Employee Retirement Income Security Act of 1974 ("ERISA").

**Settling Defendants.**  Lead Plaintiffs in the Actions have reached settlements with four groups of defendants (collectively, the "Settling Defendants"):  (i) Bank One Corporation, Banc One Investment Advisors Corporation, Bank One High Yield Partners, LLC, One Group Dealer Services Inc., One Group Services Company, Bank One Trust Company, Mark A. Beeson, David J. Kundert, Peter W. Atwater, Richard R. Jandrain, Gary J. Madich, John Abunassar, Kenneth T. Stevens, David R. Meuse, William G. Jurgenson, William P. Boardman, Richard W. Vague and Richard R. Wade (collectively, the "Bank One Defendants"); (ii) Banc of America Securities LLC ("BAS"); (iii) Bear, Stearns & Co. Inc. (n/k/a J.P. Morgan Securities Inc.), Bear, Stearns Securities Corp. (n/k/a J.P. Morgan Clearing Corp.), and The Bear Stearns Companies Inc. (n/k/a The Bear Stearns Companies LLC) (collectively, the "Bear Stearns Defendants"); and (iv) Canary Capital Partners, LLC, Canary Capital Partners, Ltd., Canary Investment Management, LLC, and Edward Stern (collectively, the "Canary Defendants").   The releases that will be ordered if the Settlements are approved apply to claims against the Settling Defendants and their related persons and entities (collectively, the "Released Parties").

**The Class Action Lawsuit:**  This Long-Form Notice relates to four proposed settlements of claims in a pending class action lawsuit.  A description of the nature of the class action lawsuit and the claims alleged in that lawsuit can be found on page [__].  Specifically, the Settlement with the Bank One Defendants resolves claims brought by Plaintiffs, on behalf of the Investor Class, that the Bank One Defendants violated the securities laws by:  (1) permitting investors to engage in market-timing and/or late trading activities, in some cases pursuant to undisclosed arrangements, in order to increase the amount of assets in the One Group Mutual Funds; (2) failing to disclose to investors that market timing was occurring in the Funds, which caused harm to investors, and that the Bank One Defendants were unwilling or unable to stop this market timing; and (3) failing to take effective precautions to protect long-term shareholders from the effects of market timing and late trading.  The Settlements with BAS, the Bear Stearns Defendants, and the Canary Defendants resolve claims brought by Plaintiffs, on behalf of the Investor Class, that BAS, the Bear Stearns Defendants and the Canary Defendants violated the securities laws by engaging in, or facilitating, market timing and/or late trading in the One Group Mutual Funds.  *See* Question 2 below for more information.

**The Derivative Lawsuit:**  This Long-Form Notice also relates to the proposed settlement of derivative litigation against many of the same parties over whether certain managers, investment advisers and trustees of the One Group Mutual Funds[4] breached their fiduciary and contractual duties to the Funds by allegedly allowing improper trading practices to occur in the Funds, and whether other defendants violated applicable laws by engaging or assisting in such trading.  The derivative lawsuit is brought derivatively on behalf of the One Group Mutual Funds, and not on behalf of the individual shareholders of the Funds.

**The ERISA Lawsuit:**  This Long-Form Notice also relates to the proposed settlement of related claims in a lawsuit brought under the Employee Retirement Income Security Act of 1974 ("ERISA") against certain of the Bank One Defendants.

**Attorneys' Fees and Expenses:**  Lead Class Counsel, Counsel for the ERISA Plaintiffs, and Counsel for the Derivative Plaintiffs (together, "Lead Counsel") have litigated their respective actions on a contingent basis and have litigated the Actions and advanced the expenses of litigation with the expectation that if they were successful in recovering money for the Classes and/or the Funds, they would receive fees and be reimbursed for their litigation expenses from the Settlement Funds, as is customary in this type of litigation.  Lead Counsel will apply to the court for attorneys' fees not to exceed 20% of the Gross Settlement Funds for their efforts in connection with the Actions, including investigating the facts, litigating the case, and negotiating the Settlements.  Lead Counsel will also ask the Court for reimbursement of their litigation expenses paid or incurred in connection with the commencement, prosecution and resolution of the Actions in an amount not to exceed $560,000, to be paid from the Gross Settlement Funds.  In addition, Court-appointed Plaintiffs' Administrative Chair and Liaison Counsel will apply for an award of attorneys' fees and expenses of an additional 1.25% of the Gross Settlement Funds for its efforts on behalf of plaintiffs.  If the above amounts are requested and approved by the Court, for each of the Distribution Funds the average cost of attorneys' fees

---

[4]     "One Group Mutual Funds" means the current successors to the 48 distinct funds as of March 31, 2003 that were sponsored by Bank One that are identified on Schedule 1.

and expenses per share will be equal to approximately 31.25% of the average recovery per eligible share as set forth above.  **Please note that this amount is only an estimate.**

**Identification of Plaintiffs' Representatives:**  The Court has appointed the following lawyers as counsel for the Plaintiffs:  Clifford Goodstein, Milberg LLP, One Penn Plaza, New York, NY  10119-0165 (212-594-5300) (Lead Class Counsel); Samuel K. Rosen, Harwood Feffer LLP, 488 Madison Avenue, 8th Floor, New York, NY  10019 (212-935-7400) (Counsel for ERISA Plaintiffs); and Nicholas E. Chimicles, Chimicles & Tikellis LLP, 361 West Lancaster Avenue, Haverford, PA  19041 (610-642-8500) (Lead Derivative Counsel).  The Court has also appointed John B. Isbister, Tydings & Rosenberg LLP, 100 East Pratt Street, 26th Floor, Baltimore, MD 21202 as Plaintiffs' Administrative Chair and Liaison Counsel.  If you want to be represented by your own lawyer, you may hire one at your own expense and enter an appearance in the Actions.

*NOTE:  This Notice (except with respect to the OAG/Canary recovery described above) concerns the settlement of private lawsuits.  These Settlements are distinct from the settlements that government regulators, including the Securities and Exchange Commission ("SEC"), previously reached concerning market-timing and late trading in certain One Group Mutual Funds.  Any payment that you may be eligible for under these private settlements is in addition to any payment you may have received from the SEC and/or other regulators.  For more information about the SEC litigation, see http://www.sec.gov/divisions/enforce/claims/banconeia.htm.*

**Deadlines:**

| Request Exclusion: | **September 21, 2010** |
|---|---|
| File Objection: | **September 21, 2010** |
| Court Hearing on Fairness of Settlements: | **October 21-22, 2010** |

| **More Information:** | | |
|---|---|---|
| Settlement Fund Administrator: | | |
| Boston Financial Data Services, Inc. P.O. Box 9104 Canton, MA  02021-9104 888-850-3599 | | |
| Lead Class Counsel: | Counsel for ERISA Plaintiffs: | Counsel for Derivative Plaintiffs: |
| Clifford S. Goodstein, Esq. **MILBERG LLP** One Penn Plaza, 49th Floor New York, NY  10119-0165 Telephone:  (212) 594-5300 | Robert Harwood, Esq. Samuel K. Rosen, Esq. **HARWOOD FEFFER LLP** 488 Madison Avenue, 8th Floor New York, NY  10022 Telephone:  (212) 935-7400 | Nicholas Chimicles, Esq. **CHIMICLES & TIKELLIS LLP** 361 West Lancaster Avenue Haverford, PA  19041 Telephone:  (610) 642-8500 |

Your legal rights are affected whether you act or do not act.  Please read this Notice carefully.

## The Circumstances of the Settlements

The principal reason for Plaintiffs' consent to the Settlements is to provide a benefit to the Classes and, with respect to the Derivative Action, the Funds.  This benefit must be compared to the risk that a lesser recovery, or even no recovery at all, might be achieved after contested motions, a trial and likely appeals, possibly years into the future.  While Lead Counsel believe their claims were meritorious, they also recognize that further litigation of complex claims such as the ones brought in the Actions, including a trial, is a risky proposition and that Plaintiffs and the Classes, and the Funds, might not prevail on all their claims.  The claims advanced in the Actions involve numerous complex legal and factual issues, including complicated trading practices, which would require voluminous discovery and extensive expert discovery and testimony, and would add considerably to the expenses and duration of the litigation.  If the Actions were to proceed, Plaintiffs would have to overcome significant defenses to *scienter* and damages.  Among other things, the parties disagree about:  (1) whether the statements made or facts allegedly omitted by certain Settling Defendants were false, material or otherwise actionable under the federal securities laws to the Investor Class; (2) whether the Settling Defendants engaged in permitted market timing and late trading practices during the Class Period; (3) whether, and to what extent, such conduct was unlawful; (4) whether shares in the IDC Funds were adversely affected by such market timing or late trading practices; (5) whether Plaintiffs were damaged by Settling Defendants' alleged conduct; and (6) the amount of any such damage..  If the Actions went to trial, issues of liability and the measure of damages, if any, would be hotly contested.  These Settlements therefore enable the Class and the successors to the One Group Funds to recover a substantial cash payment without incurring any additional risk or costs.  In addition, while these Actions were pending, several regulatory bodies entered into market timing and/or late trading-related settlements with certain Defendants in these Actions, including the Bank One Defendants, that resulted in payments to compensate to certain Class Members for market timing and/or late trading-related harm suffered by such Class Members.  As a result, Plaintiffs believe these Settlements are a fair, reasonable, and adequate recovery for the Class and the Funds.

By agreeing to the Settlements, the Settling Defendants do not concede any infirmities in their defenses to the claims asserted, or that the claims are valid or have merit.  The Settling Defendants have denied, and continue to deny, each and all of the claims and contentions alleged by the Plaintiffs in the Actions.  The Settling Defendants expressly have denied, and continue to deny, all charges of wrongdoing or liability against them arising out of any of the conduct alleged, or that could have been alleged, in the Actions.  The Settling Defendants have also denied and continue to deny, *inter alia*, the allegations that the Plaintiffs or the Classes have suffered damages by reasons of alleged conduct by the Settling Defendants or otherwise, and that Plaintiffs or the Classes were harmed by the conduct alleged in the Actions.  Nonetheless, the Settling Defendants consent to the Settlements to eliminate the burden and expense of further litigation.

## YOUR LEGAL RIGHTS AND OPTIONS IN THESE SETTLEMENTS

**DO NOTHING**                  You may receive a payment if one is called for by the Plan of Allocation described below.  You will be bound by the terms of the Settlements, including the release of the Settling Defendants and the Released Parties for all claims being released in these Settlements.

**EXCLUDE YOURSELF**            Receive no payment from the Settlement Funds.  This is the only option that allows you to bring or participate in another lawsuit against the Settling Defendants or the other Released Parties concerning the Released Claims.

**OBJECT**                      You may write to the Court if you do not like the Settlements, the Plan of Allocation, or Lead Counsel's request for attorneys' fees and expenses.

**GO TO A HEARING**             You may ask to speak in Court about the fairness of the Settlements.

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.  Please note the date of the Settlement Hearing – currently scheduled for **October 21-22, 2010** – is subject to change without further notice.  If you plan to attend the hearing, you should check the website, ***www.onegroupnoticeanddistribution.com*** or with Lead Counsel to be sure that no change to the date and time of the hearing has been made.

- The Court in charge of the Actions still has to decide whether to approve the Settlements. Payments will be made to Class Members and/or the Funds if the Court approves the Settlements and those approvals are upheld if any appeals are filed.  Please be patient.

## BASIC INFORMATION

**1.      To whom is this notice package directed?**

You or someone in your family may have (1) purchased or otherwise acquired and/or held shares in any of the IDC Funds during the period from November 1, 1998 through September 3, 2003, inclusive (the "Class Period"), and be a Fair Fund Recipient or Distribution Class Member, or (2) participated in or been a beneficiary of the Bank One Corporation Savings and Investment Plan during the Class Period whose account(s) included investments in the IDC Funds, and be a Fair Fund Recipient or Distribution Class Member.  You may also currently hold shares in one of the successors to the One Group Mutual Funds (currently known as certain JP Morgan mutual funds).

If this description applies to you, you have a right to know about proposed Settlements of class action, ERISA, and derivative lawsuits, and about all of your options, before the Court decides whether to approve the Settlements.  If the Court approves the Settlements and after any objections or appeals are resolved, the Settlement Fund Administrator appointed by the Court will make the payments that the Settlements allow.

This Notice explains the lawsuits, the Settlements, your legal rights, what benefits are available, who is eligible for them, and how to receive them.

**2.      What is this lawsuit about?**

In late 2003, a number of putative securities class action complaints were filed against Bank One and related entities in various United States District Courts, alleging market-timing and late trading in the Bank One Mutual Funds in violation of the federal securities laws. Market-timing is an investment technique involving short-term, "in and out" trading of mutual fund shares, designed to exploit inefficiencies in the way mutual fund companies price their shares.  Late trading is an investment practice whereby investors are permitted to place orders to buy, sell or exchange mutual fund shares using the day's net asset value ("NAV") after the 4:00 p.m. eastern time cut-off, capitalizing on post-4:00 p.m. information.

On November 25, 2003, the first derivative action resulting from the same alleged market-timing and late trading practices was filed in the United States District Court for the Southern District of Illinois.

On October 16, 2003, the complaint in the ERISA Action was filed as a class action against fiduciaries of the Bank One Corporation Savings and Investment Plan. The ERISA complaint alleged that at all relevant times, defendants knew or should have known that Bank One was improperly inflating its revenues by devising and implementing a scheme to obtain substantial fees and other income for themselves and their affiliates by allowing certain favored investors to engage in late trading and timing of the One Group Funds throughout the Class Period and in violation of their fiduciary duties to the Plan participants. It was also alleged that defendants failed to conduct an appropriate investigation into whether the Bank One Fund, Bank One common stock, and One Group Funds were prudent investments for the Plan and failed to provide the Plan participants with information regarding the true financial health of Bank One

and One Group Funds, such that other fiduciaries and the Plan participants could make informed decisions regarding the Bank One Fund, Bank One common stock, and One Group Funds, and otherwise failed to protect the Plan and its participants against unreasonable and predictable losses incurred as a result.

In the weeks and months that followed, numerous suits were filed in District Courts throughout the country.  Various other mutual fund families identified as being involved in the regulatory market-timing and late trading investigations likewise were named in numerous complaints filed in courts throughout the United States.  On February 20, 2004, the Judicial Panel on Multi-District Litigation issued an order, followed on March 3, 2004 and April 5, 2004, with the Judicial Panel's Conditional Transfer Orders Nos. 1 & 2, respectively, centralizing all of these actions in one multi-district docket in the United States District Court for the District of Maryland under the caption *MDL-1586 - In re Mutual Funds Investment Litigation* (the "MDL Actions").  By letters to counsel in the MDL Actions dated April 9, 2004 and April 12, 2004, the Court assigned four Judges a separate track of the MDL Actions, with multiple mutual fund families assigned to sub-tracks within each track.  The One Group Sub-track was assigned to the Honorable J. Frederick Motz.

On May 25, 2004, the Court issued a case management order consolidating all class actions and other direct cases involving Alger, Columbia, Janus, MFS, One Group and Putnam mutual funds, as well as all cases filed on behalf of purchasers or holders of shares of the corporate parents of any of these entities or their investment advisors (including all cases brought nominally on behalf of the funds or corporate parents of the funds or their investment advisors and styled as derivative actions), for pretrial purposes under the caption *In re Alger, Columbia, Janus, MFS, One Group and Putnam*, Civil No. 04-md-15863.  By this same case management order, the Court appointed Linda Parker as lead plaintiff for the consolidated class claims and her selection of the law firm now known as Milberg LLP as lead class counsel for the MDL One Group Sub-track ("Investor Lead Counsel").  The Court also appointed Chimicles & Tikellis, LLP as lead fund derivative counsel for the MDL One Group sub-track ("Derivative Counsel").

On September 30, 2004, amended complaints were filed in the class and derivative actions (the "Complaints").  Claims were asserted in the Complaints against persons and entities affiliated with the One Group Funds, including the investment advisor to the One Group Mutual Funds and its affiliates, as well as unaffiliated entities, including alleged market-timers and other parties that were alleged to have participated in or facilitated the market timers' trading of the One Group Funds.  Specifically, plaintiffs in the class action asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 ("Securities Act"), Sections 34(b), 36(a), 36(b) and 48(a) of the Investment Company Act of 1940 ("ICA"), and state law.  Likewise, the plaintiffs in the derivative action asserted claims under Sections 36(a), 36(b), 47 and 48 of the ICA, Sections 206 and 215 of the Investment Advisors Act of 1940 ("IAA"), and state law. On February 25, 2005, defendants moved to dismiss the Complaints.

On December 6, 2004, a Stipulation and Order Staying the MDL Actions Against the Canary Defendants in Contemplation of Settlement was filed, informing the court that the plaintiffs had entered into a Memorandum of Understanding with respect to the Canary

Defendants resolving those claims in consideration of cash payments as well as cooperation by Canary personnel and production of Canary documents.

On August 25, 2005, Judge Motz issued one order addressing common issues presented in the MDL Actions. On November 3, 2005, Judge Motz issued a Memorandum ruling on the motions to dismiss in the One Group Sub-track, denying in part and granting in part the motions to dismiss. Following further briefing, the parties submitted proposed orders for the Court's review and entry.

Certain of the parties began discovery, including production and review of documents. Discussions of possible settlements of the Actions proceeded with various groups of defendants at various times throughout the litigation. Agreements in principle to settle the Actions with various groups of defendants were reached at various times.

**3.      What is a class action?**

In a class action, one or more individuals and/or entities called class representatives (in this case the court-appointed lead plaintiff, Linda B. Parker (the "Lead Plaintiff") on her own behalf and on behalf of the Investor Class and Lenore Zarate, a participant in the Bank One Corporation Savings and Investment Plan, on behalf of herself and a class of all others similarly situated ("ERISA Plaintiffs") (collectively, "Class Plaintiffs")) sue on behalf of individuals and entities who have similar claims. All of these individuals and entities who have similar claims are referred to collectively as a class, or individually as a class member. One court resolves the issues for all class members, except for those who exclude themselves from the Settlements. The United States District Court for the District of Maryland, the Honorable J. Frederick Motz, is in charge of the Class Action as well as the ERISA Action and the Derivative Action.

**4.      What is a derivative action?**

In a derivative action, one or more people and/or entities who are shareholders of a corporation (in this case, Datren Williams, individually and Datren Williams f/u/b/o Ledelous Little, Jerry Huang, Mark Snyder, Warren Sherman, Julian Rose Gillis and John Joseph Gillis, derivatively and on behalf of the One Group Mutual Funds (collectively, the "Derivative Plaintiffs"), sue on behalf of the corporation, alleging that the corporation was injured, and seek recovery on behalf of the corporation. In a derivative action, the corporation usually receives the benefit of the settlement. In the mutual fund context, payments to the Funds increase the NAV of present holders of shares.

**5.      Why are there Settlements?**

The Court did not decide in favor of Plaintiffs or the Settling Defendants. Instead, in order to avoid the risks and costs of further litigation and trial, all parties agreed to a series of settlements. As explained above, Class Plaintiffs and their attorneys believe the Settlements are best for all members of the Classes and likewise, Derivative Plaintiffs and their counsel believe the Settlements are best for the successors to the One Group Mutual Funds.

**WHO IS PART OF THE SETTLEMENTS**

To see if you will receive money from these Settlements, you first have to determine if you are a member of the Investor Class or the ERISA Class.

### 6.      How do I know if I am an Investor Class Member?

The Investor Class includes:  all persons, entities, or legal beneficiaries of or participants in any entities who, during the Class Period, purchased or otherwise acquired and/or held shares in any of the IDC Funds and who are Fair Fund Recipients or Distribution Class Members.

### 7.      Are there exceptions to being included in the Investor Class?

Excluded from the Investor Class are the Defendants, members of their immediate families, and the legal representatives, heirs, successors or assigns of any such excluded party. Also excluded from the Investor Class are all persons and entities who exclude themselves from the Settlements by timely requesting exclusion in accordance with the requirements set forth in this Notice.

### 8.      How do I know if I am an ERISA Class Member?

The ERISA Class includes:   all participants in or beneficiaries of the Bank One Corporation Savings and Investment Plan during the Class Period whose accounts included investments in the IDC Funds and who are Fair Fund Recipients or Distribution Class Members, except those persons and entities that are excluded as described below.

### 9.      Are there exceptions to being included in the ERISA Class?

Excluded from the ERISA Class are the Defendants, members of their immediate families, and the legal representatives, heirs, successors or assigns of any such excluded party.

### 10.     Who is affected by the settlement of the Derivative Action?

The Derivative Action was brought by shareholders on behalf of the One Group Mutual Funds.  The successors to the One Group Mutual Funds, and not the individual shareholders (except insofar as the value of their shares may increase), will receive the direct benefit of the settlement of the Derivative Action.

### 11.     I Am Still Not Sure if I Am Included.

If you are still not sure whether you are included, you can ask for free help.  You can call the Settlement Fund Administrator, Boston Financial Data Services, Inc., at 1-888-850-3599, for more information.

## THE SETTLEMENT BENEFITS – WHAT YOU RECEIVE

### 12.     What Do the Settlements Provide?

The proposed Settlements provide for payment of a total of $5,599,500 in cash (the "Settlement Funds"), comprised of (i) $5,100,000 paid on behalf of the Bank One Defendants,

(ii) $15,500 paid on behalf of BAS, (iii) $154,000 paid on behalf of the Bear Stearns Defendants, and (iv) $330,000 paid on behalf of the Canary Defendants.

The Settlement Funds plus all interest earned thereon shall be referred to as the "Gross Settlement Funds."

The Gross Settlement Funds, after payment of court-approved attorneys' fees and litigation expenses, are the "Net Settlement Funds." Subtracted from the Net Settlement Funds will be a payment to the successors to the One Group Mutual Funds (the "Derivative Fund"). The remaining "Class Fund" will be divided among all Distribution Class Members who do not exclude themselves from the Settlements.

*See* Question 13 below for more details regarding the allocation of the Net Settlement Funds.

The OAG/Canary Amount is not a part of the Net Settlement Funds. But with the approval of the OAG, Class Counsel will cause the Settlement Fund Administrator to distribute the OAG/Canary Amount to Class Members, along with the Class Fund, in accordance with the Plan of Allocation described below.

## PLAN OF ALLOCATION OF NET SETTLEMENT FUNDS

### 13.     How Much Will My Payment Be?

The proposed Plan of Allocation provides for distribution of the Net Settlement Funds as follows:

### A.     To the Derivative Fund:

$670,000 from the Net Settlement Funds (the "Derivative Fund") will be distributed to the current successors of the One Group Mutual Funds, in a manner to be determined by the Derivative Plaintiffs, the Bank One Defendants and the Trustees of the current successors of the One Group Mutual Funds, with due regard to the appropriate roles and responsibilities of each.

### B.     To the Distribution Class:

The Bank One Defendants have provided Plaintiffs with data for each and every transaction that took place in the IDC Funds during the Class Period. Plaintiffs' expert has analyzed this data and determined the amount of market timing dilution the Plaintiffs allege occurred in each of the IDC Funds for each day during the Class Period. Plaintiffs believe that the Fair Fund Recipients have been fully compensated by the BOIA Fair Fund for the market timing that is the subject of the SEC Order. Accordingly, the Class Fund shall be distributed, pursuant to the Plan of Allocation, only to shareholders in the 5 One Group Distribution Funds (the International Equity Index Fund, Diversified International Fund, Diversified Mid Cap Fund, Mid Cap Value Fund and Small Cap Value Fund) whom Plaintiffs' expert has identified as allegedly having suffered dilution from "under-the-radar" market timing during the Class Period (the "Distribution Class"). Therefore, the Plan of Allocation will not allocate any amount from

the Class Fund to investors in the One Group Mid Cap Growth, Large Cap Growth, Small Cap Growth, Diversified Equity, Large Cap Value and Equity Income Funds.

The Class Fund will be distributed to Distribution Class Members without the requirement that they submit claim forms or documentation of their mutual fund transactions. The Bank One Defendants have secured daily listings of shareholders for each of the IDC Funds for each day during the Class Period from the appointed Settlement Fund Administrator for the regulatory settlement. Plaintiffs' Counsel believes this claims-free process, which is similar to the process used by the Independent Distribution Consultant to distribute the regulatory settlement payments, will increase the accuracy of the allocation while saving considerable administrative expense.

If you are entitled to a payment under the Plan of Allocation described below, your share of the Class Fund will depend on the number of shares in the Distribution Funds you purchased and/or held during the Class Period, and whether market timing occurred in the Distribution Funds on during the period you held shares of the funds. The Settlement Fund Administrator will distribute the Class Fund according to the Plan of Allocation after the Court has approved the Settlements and the Settlement Fund Administrator has made a final determination, subject to Court approval, of the amount of each Class Member's recovery.

The Plan of Allocation is a matter separate and apart from the proposed Settlement, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlements if approved by the Court. The Plan of Allocation may be modified in connection with, among other things, a ruling by the Court, or an objection filed by a Class Member, without further notice to the Classes.

The Settlement Fund Administrator shall determine each Distribution Class Member's *pro rata* share of the Class Fund based upon each Distribution Class Member's "Recognized Loss." The Recognized Loss formula is not intended to be an estimate of the amount a Distribution Class Member might have been able to recover after a trial; nor is it an estimate of the amount that will be paid to Distribution Class Members pursuant to the Settlements. The Recognized Loss formula is the basis upon which the Class Fund will be proportionately allocated to the Distribution Class Members.

Under the Plan of Allocation, each Distribution Class Member's Recognized Loss shall be calculated at the direct account level. No distribution will be made where the potential distribution amount is less than $10.00 in cash or, at Bank One Defendants' option, a lower amount. (the "De Minimis Cutoff"). In order to effectuate the De Minimis Cutoff, there will be a provisional allocation of the available Class Fund to all Distribution Class Members. The determination that a Distribution Class Member would receive less than the De Minimis Cutoff would remove that Distribution Class Member from the provisional allocation and the remaining available Class Fund will be allocated to all Distribution Class Members who were not eliminated by the De Minimis Cutoff. Bank One Defendants or their authorized agents shall perform these calculations in such a manner (including recalculating if necessary) to ensure that as few Distribution Class Members as possible are excluded by the De Minimis Cutoff.

Any residual amount that remains in the Class Fund by the application the De Minimis Cutoff, by reason of uncashed distributions or otherwise, shall be: (i) first, used to reimburse Bank One Defendants for notice and administration costs related to the Settlements, up to a limit of $500,000.00; and (b) second, paid to the current successors of the Distribution Funds.

## CALCULATION OF RECOGNIZED LOSSES

The objective of the Plan of Allocation is to equitably distribute the proceeds of the Settlements to those Class Members who were damaged by the alleged fraud.  Under the Plan of Allocation, a "Recognized Loss" will be calculated for all Distribution Class Members who do not exclude themselves from the Settlements.  Recognized Losses are based on Plaintiffs' expert's analysis of transaction records in the Distribution Funds during the Class Period.  Based on his analysis of the trading data, Plaintiffs' expert has estimated the "dilution losses" suffered by shareholders in each of the Distribution Funds, for each trading day during the Class Period, as a result of "under-the-radar" market timing.  Dilution losses are monies allegedly drained from a fund due to market timing and/or late trading.

First, for each of the Distribution Funds, the Settlement Fund Administrator will calculate the Distribution Class Member's Daily Recognized Loss as follows:  For each trading day during the Class Period, the Settlement Fund Administrator will calculate the percentage of the total fund owned by the Distribution Class Member on that day.  Using the Plaintiff's expert's damages calculations, the Settlement Fund Administrator will then multiply the Distribution Class Member's percentage ownership in the Distribution Fund by the daily dilution for the Distribution Fund on that particular day to reach the Distribution Class Member's Daily Recognized Loss in that Distribution Fund on that day.  Any net negative dilution in a Distribution Fund will be set to zero.  This will be done for each Distribution Fund and for each trading day during the Class Period.

The Settlement Fund Administrator will then add up all of the Distribution Class Member's Daily Recognized Losses to reach the Recognized Loss for that Distribution Class Member.  The Settlement Fund Administrator will then divide the Distribution Class Member's Recognized Loss by the sum of all Distribution Class Members' Recognized Losses, and multiply the result by the Class Fund to reach the payment allocable to each Distribution Class Member.

The Daily Recognized Losses used by the Settlement Fund Administrator to calculate Recognized Losses for Distribution Class Members can be found at: ***www.onegroupnoticeanddistribution.com***

Below is an example for illustrative purposes:

On Day 1 of the Class Period, Distribution Class Member X owns 1000 shares of Distribution Fund A.  Distribution Fund A had a total of 100,000 shares outstanding on Day 1.  Distribution Class Member X thus owns 1% (1,000 / 100,000) of the Distribution Fund on that day.  The Daily Net Dilution measured in Distribution Fund A on Day 1 is $100,000.  Distribution Class Member X's Daily Recognized Loss for Day 1 in Distribution Fund A is 1% x $100,000 = $1,000.  On Day 2, Distribution Class Member X still owns 1,000 shares of Distribution Fund A,

but there are now 110,000 shares of Distribution Fund A outstanding.  For Day 2, Distribution Class Member X owns 0.91% of Distribution Fund A.  The Daily Net Dilution measured in Distribution Fund A is $50,000.  Distribution Class Member X's Daily Recognized Loss for Day 2 in Distribution Fund A is 0.91% x $50,000 = $455.  On Day 3, Distribution Class Member X sells 1,000 shares of Distribution Fund A.  Distribution Class Member X does not buy any other shares during the Class Period.  Distribution Class Member X's Recognized Claim is $1,455 ($1,000 + $455).

The Claims Administrator determines that the Total Recognized Loss of all Distribution Class Members is $50,000,000.  The Class Fund is $10,000,000.  Distribution Class Member X will receive ($1,455 / $50,000,000) x $10,000,000, or $291.

(Please note that these numbers are only used as an illustrative example.  Actual payments to Distribution Class Members may be more or less depending on numerous factors, including when shares were held during the Class Period, in which Distribution Funds the shares were held, the Total Recognized Loss measured for all Distribution Class Members, and the amount of attorneys' fees, costs, and expenses authorized by the Court.)

Finally, Distribution Class Members who are determined to have participated in market timing or late trading during the Class Period will receive nothing under the Plan of Allocation.  For purposes of the Plan of Allocation, a Distribution Class Member will be determined to have participated in market timing or late trading if their trading during the Class Period meets the following requirements:

***For Class Members who purchased Distribution Funds:***  Any Class Member who, during the Class Period, purchased and sold or exchanged shares in the Distribution Fund (such purchase and sale or exchange referred to as a "round trip") more than two (2) times during a thirty-day (30) period, provided that the purchase was in excess of $50,000 for each round trip.

Accounts held by financial intermediaries ("omnibus accounts") will not be excluded from the Plan of Allocation based on these criteria but the alleged dilution caused by their trades have been discounted by 66% based on the Plaintiffs' expert's damages calculations.

Payments will be final and conclusive against all Distribution Class Members.  All Distribution Class Members who do not exclude themselves, even if they do not receive a distribution from the Class Fund, shall be bound by all of the terms of the Settlements, including the terms of the final judgment to be entered in the Actions and will be barred from bringing any Released Claim against any Released Parties.

## HOW YOU RECEIVE A PAYMENT

### 14.     How will I receive a payment?

To qualify for a payment, you must be an eligible Distribution Class Member and must have sustained damages in accordance with the Plan of Allocation described above.  You need not submit any documentation in order to receive a payment.

**15.     When will I receive my payment?**

The Court will hold a hearing on **October 21-22, 2010**, to decide whether to approve the Settlements.  If the Court approves the Settlements, there may be appeals.  It is always uncertain whether appeals, if any, can be resolved, and resolving them can take time, perhaps several years.  In addition, the Settlement Fund Administrator must analyze the trading and damages data for all Distribution Class Members.  The processing is complicated and will take many months, and may take longer.  Please be patient.

**16.     What am I giving up by staying in the Investor Class?**

Unless you exclude yourself from the Investor Class, you are staying in the Investor Class, and that means that you cannot sue, continue to sue, or be part of any other lawsuit against the Settling Defendants or the Released Parties about the claims released in the Settlements.  It also means that all of the Court's orders will apply to you and legally bind you, and you will release forever any claims that you may have against the Released Parties relating to market timing, late trading or excessive trading in the One Group Mutual Funds.  The terms of the releases are as follows:

In the settlement with the Bank One Defendants:

Who am I releasing?:  The "Bank One Defendant Releasees," which means "Bank One Defendant Class Releasees" and "Bank One Defendant Derivative Releasees," which, respectively, shall each be further defined as follows:

a.     Bank One Defendant Class Releasees shall be defined as:  (1) the Bank One Defendants; (2) the "Other One Group Parties" identified in the Master Tolling Agreement, dated September 28, 2004, between Class Plaintiffs and Defendants; (3) the "Other One Group Parties" identified in the Master Tolling Agreement, dated September 28, 2004, between Derivative Plaintiffs and Defendants; (4) the One Group Mutual Funds; (5) the One Group Trustees; and (6) JPMorgan Chase & Co., JPMorgan Investment Advisors, Inc., JPMorgan Trust I and JPMorgan Trust II; and each of their respective present and former parents, subsidiaries, divisions and affiliates, the present and former employees, officers and directors of each of them, the present and former attorneys, accountants, insurers, and agents of each of them, and the predecessors, heirs, successors and assigns of each, and any person or entity which is or was related to or affiliated with any of the foregoing or in which any of the foregoing persons and entities has or had a controlling interest and the present and former employees, officers and directors, attorneys, accountants, insurers, and agents of each of them.

b.     "Bank One Defendant Derivative Releasees" shall be defined as:  (1) the Bank One Defendants; (2) the "Other One Group Parties" identified in the Master Tolling Agreement, dated September 28, 2004, between Class Plaintiffs and Defendants; (3) the "Other One Group Parties" identified in the Master Tolling Agreement, dated September 28, 2004, between Derivative Plaintiffs and Defendants; (4) the One Group Mutual Funds; (5) the One Group Trustees; and (6) JPMorgan Chase & Co., JPMorgan Investment Advisors, Inc., JPMorgan Trust I and JPMorgan Trust II; and each of their respective present and former parents, subsidiaries, divisions and affiliates, the present and former employees, officers and directors of each of them,

the present and former attorneys, accountants, insurers, and agents of each of them, and the predecessors, heirs, successors and assigns of each, and any person or entity which is or was related to or affiliated with any of the foregoing or in which any of the foregoing persons and entities has or had a controlling interest and the present and former employees, officers and directors, attorneys, accountants, insurers, and agents of each of them.

<u>What am I releasing?</u>:  The "Released Plaintiffs' Claims," which means:

a.     With respect to the Bank One Defendant Class Releasees, the release by Lead Plaintiff and all Class Members of all claims of every nature and description, known and Unknown, accrued and unaccrued, arising out of or relating to:  market timing, late trading, excessive trading or short-term trading in the IDC Funds during the Class Period, including without limitation all claims asserted or that could have been asserted by Lead Plaintiff or any member of the Classes in the Action against the Bank One Defendant Class Releasees, whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, whether asserted in the Complaints[5], in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere.

b.     With respect to the Bank One Defendant Derivative Releasees, the release by Derivative Plaintiffs of all claims of every nature and description, known and Unknown, accrued and unaccrued, arising out of or relating to:  market timing, late trading, excessive trading or short-term trading in the One Group Mutual Funds during the Class Period, including without limitation all claims asserted or that could have been asserted by Derivative Plaintiffs in the Action against the Bank One Defendant Derivative Releasees, whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, whether asserted in the Complaints, in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere.

<u>In the settlement with BAS</u>:

<u>Who am I releasing?</u>:  The "Bank of America Released Parties," which means Banc of America Securities LLC, Bank of America Corporation, and Bank of America, N.A. and all of their respective Related Parties ("Related Parties" means (a) with respect to natural persons, their past or present agents, servants, attorneys, accountants, insurers, co-insurers and re-insurers, executors and administrators; (b) with respect to legal entities other than natural persons, their past and present parents, subsidiaries, general partners, limited partners, officers, directors, trustees, members, employees, agents, servants, attorneys, accountants, insurers, co-insurers and re-insurers; and (c) the predecessors, successors, heirs and assigns of the foregoing).

---

[5]     "Complaints" shall include the following:  (1) *Robinson* v. *One Group International Equity Index Fund, et al.*, D. Md. Civil Action No. 04cv00629; (2) *Williams, et al.* v. *Bank One Corp., et al.*, D. Md. Civil Action No. 04cv00832; (3) *Zarate* v. *Bank One Corporation, et al.*, D. Md. Civil Action No. 04cv00830; and (4) the complaints listed on Schedule 2.

<u>What am I releasing?</u>:  The "Released Claims," which means any and all claims, rights, causes of action or liabilities whatsoever against the Bank of America Released Parties, whether direct, derivative or brought in any other capacity, whether under federal, state, local, statutory or common law, whether known or unknown (including "Unknown Claims"), whether suspected or unsuspected, whether accrued or unaccrued, concerning in any respect, directly or indirectly, market-timing, late-trading, or short-term or excessive trading in any of the One Group Funds during the Class Period, including any claims that the Bank of America Released Parties allowed, assisted, cleared, brokered, financed, provided the means for, subjected investors to or otherwise facilitated market-timing, late-trading, or short-term or excessive trading and including, without limitation, all claims that were alleged in the Class Complaint and the Fund Derivative Complaint and all claims that could have been brought against the Bank of America Released Parties that concern, relate to or arise out of, in any respect, directly or indirectly, market-timing, late-trading, or short-term or excessive trading in any of the One Group Funds during the Class Period.

<u>In the settlement with the Bear Stearns Defendants</u>:

<u>Who am I releasing?</u>:  The "Bear Stearns Released Parties," which means, collectively, Bear, Stearns & Co. Inc., Bear, Stearns Securities Corp., and The Bear Stearns Companies Inc., currently known as J.P. Morgan Securities Inc., J.P. Morgan Clearing Corp. and The Bear Stearns Companies LLC, respectively, and all of their respective Related Parties ("Related Parties" means (a) with respect to natural persons, all of their past or present agents, servants, attorneys, accountants, insurers, co-insurers and re-insurers, executors and administrators; (b) with respect to legal entities other than natural persons, all of their past and present parents, employees, subsidiaries, affiliates, general partners, limited partners, officers, directors, trustees, members, employees, agents, servants, attorneys, accountants, insurers, co-insurers and re-insurers, in any and all capacities; and (c) all of the predecessors, successors, heirs and assigns of the foregoing).

<u>What am I releasing?</u>:  The "Released Claims," which means any and all claims, rights, causes of action, counts, or liabilities against any or all of the Bear Stearns Released Parties, whether direct, derivative or brought in any other capacity, whether under federal or state law, whether known or unknown (including "Unknown Claims"), whether suspected or unsuspected, whether accrued or unaccrued, whether asserted or unasserted, concerning in any respect, directly or indirectly, market-timing, late-trading, or short-term or excessive trading in any of the One Group Mutual Funds during all or any part of the Class Period, including any claims that any or all of the Bear Stearns Released Parties allowed, assisted, cleared, brokered, financed, caused, acquiesced in, participated or engaged in, provided the means for, subjected investors to or otherwise facilitated or were responsible for market-timing, late-trading, or short-term or excessive trading and including, without limitation, all of the claims and causes of action that were brought and all of such claims and causes of action that could have been brought against any or all of the Bear Stearns Released Parties in the Class Action or the Fund Derivative Action, or in any other legal proceeding or forum.

<u>In the settlement with the Canary Defendants</u>:

<u>Who am I releasing?</u>:   The "Canary Released Parties," which means Canary Capital Partners, LLC; Canary Capital Partners, Ltd.; Canary Investment Management, LLC; and Edward Stern and their respective Related Parties ("Related Parties" means (a) with respect to natural persons, their past or present agents, servants, attorneys, accountants, insurers, co-insurers and re-insurers, executors and administrators; (b) with respect to legal entities other than natural persons, their past and present, parents, employees, subsidiaries, general partners, limited partners, officers, directors, trustees, members, employees, agents, servants, attorneys, accountants, insurers, co-insurers and re-insurers; and (c) the predecessors, successors, heirs and assigns of the foregoing).

<u>What am I releasing?</u>:   The "Released Claims," which means any and all claims against the Canary Released Parties, whether direct, derivative or brought in any other capacity, whether under federal or state law, whether known or unknown (including "Unknown Claims"), whether suspected or unsuspected, whether accrued or unaccrued, concerning in any respect, directly or indirectly, market-timing, late-trading, or short-term or excessive trading in any of the One Group Mutual Funds during the Class Period, including any claims that the Canary Released Parties allowed, assisted, cleared, brokered, financed, provided the means for, subjected investors to or otherwise facilitated market-timing, late-trading, or short-term or excessive trading and including, without limitation, all claims that were alleged in the Class Complaint and the Fund Derivative Complaint and all claims that could have been brought against the Canary Released Parties concerning in any respect, directly or indirectly, market-timing, late-trading, or short-term or excessive trading in any of the One Group Mutual Funds during the Class Period.

As used in the foregoing definitions, capitalized terms have the meanings ascribed to them in the stipulations with the Settling Defendants (the "Stipulations"), which are available for examination as described in Question 30.

## EXCLUDING YOURSELF FROM THE INVESTOR CLASS

If you are a member of the Investor Class and do not want a payment from these Settlements, but you want to keep the right to sue or continue to sue the Settling Defendants on your own about the same claims being released in these Settlements, then you must take steps to exclude yourself from the Investor Class.  This is referred to as opting out of the Investor Class.

**17.     How do I exclude myself from the Investor Class?**

To exclude yourself from the Investor Class, you must send a letter by mail stating that you want to be excluded from the Settlements in the *In re Mutual Funds Investment Litigation – One Group Sub-Track*, 1:04-MD-15863.   You must include your name, address, telephone number, signature, and information concerning your holding(s) and purchase(s) of shares in the IDC Funds, including the amount of shares and the dates of each purchase and sale of such shares.  You must mail your exclusion request so that it is received no later than **September 21, 2010** to:

***In re Mutual Funds Investment Litigation – One Group Sub-Track***
**c/o Boston Financial Data Services, Inc.**
**Settlement Fund Administrator**

**P.O. Box 9104**
**Canton, MA  02021-9104**

Please keep a copy of everything you send by mail, in case it is lost or destroyed during shipping.

You cannot exclude yourself over the phone or by e-mail.  If you ask to be excluded from the Investor Class, you will not be eligible to receive any payment from the Class Fund, and you cannot object to the Settlements.  You will not be legally bound by anything that happens in this lawsuit and you will be able to pursue the claims that are being released in these Settlements.

Pursuant to separate letter agreements, the Settling Defendants may withdraw from and terminate their respective Settlements if certain threshold levels of investors who would otherwise be entitled to participate as members of the Investor Class timely and validly request exclusion from the Investor Class.

**18.    If I do not exclude myself, can I sue the Settling Defendants for the same thing later?**

No.  Unless you exclude yourself from the Investor Class, you give up any right to sue the Settling Defendants or the other Released Parties for the claims released by these Settlements.  If you have a pending lawsuit or arbitration relating to the claims being released in the Actions against any of the Settling Defendants or the Released Parties, speak to your lawyer in that case immediately.  Remember, the exclusion deadline is **September 21, 2010**.

**19.    Can I exclude myself from the ERISA Action?**

No.  Because the ERISA Class will be certified as non-opt-out class, you cannot exclude yourself from the settlement in the ERISA Action.  As discussed below in Question 24, members of the ERISA Class may object to the settlement of the ERISA Action, the Plan of Allocation, or the application for attorneys' fees and litigation expenses.

**20.    Can I exclude myself from the Derivative Action?**

No.  Because the Derivative Action is on behalf of the One Group Mutual Funds, you cannot exclude yourself from the settlement in the Derivative Action. As discussed below in Question 24, current shareholders of the successors to the One Group Mutual Funds may object to the Settlement of the Derivative Action.

You will receive the benefit of the Derivative Action if you are a current holder of shares in one of the current successor funds to the One Group Mutual Funds.

**21.    If I exclude myself, can I receive a payment from these Settlements?**

No.  But, you may sue, continue to sue, or be part of a different lawsuit or arbitration asserting the claims being released in these Settlements against the Settling Defendants or the other Released Parties.

## THE LAWYERS REPRESENTING YOU

### 22.   Do I have a lawyer in this case?

The Court appointed the law firm of Milberg LLP (formerly, Milberg Weiss Bershad & Schulman LLP) as Lead Class Counsel to represent the Class.  The Court also appointed the law firm of Chimicles & Tikellis LLP as Lead Derivative Counsel and Tydings & Rosenberg LLP as Plaintiffs' Administrative Chair and Liaison Counsel.

You will not be individually charged for the services of these lawyers beyond your *pro rata* share of any attorneys' fees and expenses awarded by the Court that will be paid from the Settlement Funds.  If you want to be represented by your own lawyer, you may hire one at your own expense.

### 23.   How will the lawyers be paid?

Lead Counsel will jointly apply to the Court for attorneys' fees not to exceed 20% of the Gross Settlement Funds.  Plaintiffs' Counsel will also apply to the Court for reimbursement of their litigation expenses paid or incurred in connection with the commencement, prosecution and resolution of the Actions in an amount not to exceed $560,000, to be paid from the Gross Settlement Funds.  In addition, Court-appointed Plaintiffs' Administrative Chair and Liaison Counsel will apply for an award of attorneys' fees and expenses of an additional 1.25% of the Gross Settlement Funds for its efforts on behalf of plaintiffs.  *Such sums as may be approved by the Court will be paid from the Settlement Funds.*  Class Members are not personally liable for any such fees or expenses.

The attorneys' fees and expenses requested will be the only payments to Plaintiffs' Counsel for their efforts in achieving these Settlements and for their risk in undertaking this representation on a wholly contingent basis and advancing the money necessary to pursue the Actions.  To date, Plaintiffs' Counsel have not been paid for their services or for their substantial litigation expenses.  The fees requested will compensate Plaintiffs' Counsel for their work in achieving the Settlements and Plaintiffs' Counsel believe that it is well within the range of fees awarded to counsel under similar circumstances in other cases of this type.  The Court has discretion, however, to award less than this amount.

## OBJECTING TO THE SETTLEMENTS

You can tell the Court that you do not agree with the Settlements or some part of them.

### 24.   How do I tell the Court that I do not like the Settlements?

If you are a member of the Investor Class or the ERISA Class or are a current shareholder of one of the successors to the One Group Mutual Funds, and will continue to own shares in one of the successors to the One Group Mutual Funds through the date of the Settlement Hearing, then you can object to the Settlements if you do not like any part of them, the Plan of Allocation, or the application for attorneys' fees and litigation expenses.  To object, you must send a letter saying that you object to the Settlements in the *In re Mutual Funds Investment Litigation – One*

*Group Sub-Track*, 1:04-MD-15863, and the reasons why you object to the Settlements.  Be sure to include your name, address, telephone number and signature.  Objections by members of the Classes must also include information or documents concerning your holding(s), purchase(s) and sale(s) of your shares in the One Group Funds during the Class Period, including the amount of shares and the dates of each purchase and sale of such shares.  Objections to the Settlements of the Derivative Action must include information concerning your current holdings of shares in one of the successors to the One Group Mutual Funds.  You must file any objection with the Clerk's Office at the United States District Court for the District of Maryland at the address set forth below on or before **September 21, 2010**.  You must also serve any objection on Lead Class Counsel at the address set forth below, so that the objection is received by **September 21, 2010**:

| COURT | COUNSEL FOR PLAINTIFFS |
|---|---|
| Clerk of the Court<br>United States District Court<br>District of Maryland<br>101 W. Lombard Street<br>Baltimore, MD  21201 | Lead Class Counsel:<br>Clifford S. Goodstein, Esq.<br>**MILBERG LLP**<br>One Penn Plaza, 49th Floor<br>New York, NY  10119-0165 |

### 25.    What is the difference between objecting and excluding?

Objecting means telling the Court that you do not like something about the Settlements, the Plan of Allocation, or the application for attorneys' fees and litigation expenses, and want the Court to disapprove the Settlements or modify them in some way.  You can object ***only if*** you stay in the Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlements.  If you exclude yourself, you have no basis to object because the case no longer affects you.

### THE COURT'S SETTLEMENT FAIRNESS HEARING

### 26.    When and where will the Court decide whether to approve the Settlements?

The Court will hold a fairness hearing at **10:00 a.m.**, on **Thrursday-Friday, October 21-22, 2010**, at the United States District Court for the District of Maryland, 101 W. Lombard Street, Baltimore, MD  21201.  At this hearing, the Court will consider whether the Settlements and the Plan of Allocation are fair, reasonable, and adequate.  If there are objections, the Court will consider them.  The Court will listen to people who have requested in writing by **September 21, 2010** to speak at the hearing.  The Court may also consider Lead Counsel's application for attorneys' fees and reimbursement of expenses.

### 27.    Do I have to come to the Settlement Hearing?

No.  Lead Counsel will answer any questions Judge Motz may have.  But, you are welcome to come at your own expense.  If you send an objection, you do not have to come to Court to talk about it.  As long as you mailed your written objection so that it is received on time, the Court will consider it.  You may also pay your own lawyer to attend, but it is not required.

You are not required to retain a lawyer to exclude yourself from the Investor Class or to object to the Settlements.

### 28.    May I speak at the Settlement Hearing?

Yes, but you must first ask the Court for permission to speak at the Settlement Hearing. To do so, you must send a letter stating your intention to appear in the *In re Mutual Funds Investment Litigation – One Group Sub-Track*, 1:04-MD-15863.  Be sure to include your name, address, telephone number, signature, and also identify your holding(s) in the One Group Funds and/or the date(s), price(s) and amount(s) of all purchases of shares in the One Group Funds you made during the Class Period.  Your notice of intention to appear must be received no later than **September 21, 2010**, and be sent to the Clerk of the Court and Lead Class Counsel at the addresses listed in Question 24.  You cannot speak at the hearing if you exclude yourself from the Settlements.

## IF YOU DO NOTHING

### 29.    What Happens if I Do Nothing at All?

If you do nothing, you may receive a payment if one is called for by the Plan of Allocation described above.  You will be bound by the terms of the Settlements, including the release of all claims against the Settling Defendants and the Released Parties.  Unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Settling Defendants or the Released Parties about the same claims being released in these Settlements.

## OBTAINING MORE INFORMATION

### 30.    Are There More Details About the Settlements?

This Long-Form Notice summarizes the proposed Settlements.  More details can be found in the stipulations with the Settling Defendants (the "Stipulations").  Unless otherwise defined, all capitalized terms used in theis Long-Form Notice shall have the same meanings as in the Stipulations.  You can obtain copies of the Stipulations or more information about the Settlements by visiting ***www.onegroupnoticeanddistribution.com*** or by writing to Lead Class Counsel, Counsel for Derivative Plaintiffs, or Counsel for ERISA Plaintiffs as listed under "More Information" on page [___] above..  You can also obtain copies of the Stipulations and all other papers filed in the Actions from the Clerk's office at the United States District Court for the District of Maryland, 101 W. Lombard Street, Baltimore, MD  21201, during regular business hours.

## DO NOT TELEPHONE THE COURT REGARDING THIS NOTICE

DATED:  June 30, 2010                    BY ORDER OF THE COURT
                                         UNITED STATES DISTRICT COURT
                                         DISTRICT OF MARYLAND

## SCHEDULE 1

One Group Mutual Funds:
***Money Market Funds:***

> U.S. Treasury Securities Money Market Fund
> *(formerly, U.S. Treasury Money Market Portfolio*
> Prime Money Market Fund
> Municipal Money Market Fund
> *(formerly, Tax-Free Obligations Portfolio)*
> Ohio Municipal Money Market Fund
> Michigan Municipal Money Market Fund
> *(formerly, Pegasus Michigan Municipal Money Market Fund)*
> U.S. Government Securities Money Market Fund

***Equity Funds:***

> Equity Income Fund
> *(formerly, Income Equity Fund)*
> Mid Cap Value Fund
> *(formerly, Disciplined Value Fund)*
> Mid Cap Growth Fund
> *(formerly, Growth Opportunities Fund and the Small Company Growth Fund)*
> Equity Index Fund
> International Equity Index Fund
> Large Cap Value Fund
> *(formerly, Large Company Value Fund and the Quantitative Equity Portfolio)*
> Large Cap Growth Fund
> *(formerly, Large Company Growth Fund)*
> Balanced Fund
> *(formerly, Asset Allocation Fund and the Flexible Balanced Portfolio)*
> Diversified Equity Fund
> *(formerly, Value Growth Fund)*
> Small Cap Growth Fund
> *(formerly, Small Capitalization Fund and the Gulf South Growth Fund)*
> Small Cap Value Fund
> *(formerly, Pegasus Small-Cap Opportunity Fund)*
> Diversified Mid Cap Fund
> *(formerly, Pegasus Mid-Cap Opportunity Fund)*
> Diversified International Fund
> *(formerly, Pegasus International Equity Fund)*
> Market Expansion Index Fund
> *(formerly, Pegasus Market Expansion Index Fund)*
> Technology Fund
> Health Sciences Fund
> Market Neutral Fund
> Real Estate Fund

***Bond Funds:***

    Intermediate Bond Fund
    Income Bond Fund
    Government Bond Fund
    Ultra Short-Term Bond Fund
    *(formerly, Ultra Short-Term Income Fund and the Government ARM Fund)*
    Short-Term Bond Fund
    *(formerly, Limited Volatility Bond Fund)*
    Treasury & Agency Fund
    High Yield Bond Fund
    *(formerly, Income Fund)*
    Bond Fund
    *(formerly, Pegasus Bond Fund)*
    Mortgage-Backed Securities Fund

***Municipal Bond Funds:***

    Intermediate Tax-Free Bond Fund
    Municipal Income Fund
    *(formerly, Tax-Free Bond Fund)*
    Tax-Free Bond Fund
    *(formerly, Pegasus Municipal Bond Fund)*
    Short-Term Municipal Bond Fund
    *(formerly, Pegasus Short Municipal Bond Fund)*
    Ohio Municipal Bond Fund
    West Virginia Municipal Bond Fund
    Kentucky Municipal Bond Fund
    Arizona Municipal Bond Fund
    Louisiana Municipal Bond Fund
    Michigan Municipal Bond Fund
    *(formerly, Pegasus Michigan Municipal Bond Fund)*

***Institutional Money Market Funds:***

    Treasury Only Money Market Fund
    Government Money Market Fund
    Institutional Prime Money Market Fund
    Institutional Tax-Free Money Market Fund
    Institutional Prime Plus Money Market Fund

## SCHEDULE 2

<u>Complaints</u>

*Robinson* v. *One Group International Equity Index Fund, et al.*, D. Md. Case No. 04cv00629

*Williams, et al.* v. *Bank One Corp.,* et al., D. Md. Case No. 04cv00832

*Zarate* v. *Bank One Corporation, et al.*, D. Md. Case No. 04cv00830;

*Bloomfield* v. *Beeson, et al.*, S.D.N.Y. Case No. 03cv06975

*Brett* v. *Bank One Corp., et al.*, S.D. Ohio Case No. C2 03cv00818

*Dunlap* v. *One Group, et al.*, S.D. Ohio Case No. C2 03cv00916

*Dworkin v. One Group, et al.*, S.D.N.Y. Case No. 03cv06915

*Flucke* v. *Bank One Corp., et al.*, S.D. Ohio Case No. C2 03cv01016

*Holton* v. *Bank One Corp., et al.,* N.D. Ill. Case No. 03cv07940

*Huang* v. *One Group, et al.*, D.N.J. Case No. 03cv04514

*Huang* v. *Marshall, et al.*, S.D. Ohio Case No. C2 03cv01038

*Maged* v. *One Group Technology Fund, et al.*, N.D. Ill. Case No. 03cv07029

*Metzger* v. *Banc One Investment Advisers, et al.*, S.D.N.Y. Case No. 03cv007751

*Mule* v. *Strong Capital Management, et al.*, D.N.J. Case No. 03cv04221

*Parker* v. *One Group Technology Fund*, S.D.N.Y. Case No. 03cv08364

*Pelak* v. *Bank One Corp., et al.*, N.D. Ill. Case No. 03cv06591

*Robinson* v. *One Group International Equity Index Fund, et al.,* N.D. Ill. Case No. 03cv06986

*Sayegh* v. *Janus Capital, et al.*, C.D. Cal. Case No. 03cv08736

*Sherman* v. *Marshall, et al.*, S.D. Ohio Case No. C2 03cv01037

*Snyder* v. *Marshall, et al.*, S.D. Ohio Case No. C2 03cv01039

*Tischler* v. *Bank One Corp., et al.*, S.D.N.Y. Case No. 03cv06970

*Wiley* v. *Bank One Corp., et al.*, S.D.N.Y. Case No. 03cv08593

*Williams v. Bank One Corp., et al.*, N.D. Ill. Case No. 03cv08561

*Zarate* v. *Bank One Corp., et al.*, N.D. Ill. Case No. 03cv07315