IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION | MDL 1586 |
| IN RE ALLIANCE, FRANKLIN/TEMPLETON, BANK OF AMERICA/NATIONS FUNDS, and PILGRIM BAXTER | Case No. 04-md-15863 (Judge J. Frederick Motz) |
| [Allianz-Dresdner Subtrack] | |

MEMORANDUM

Kimberly J. Clifton ("Clifton"), a shareholder of mutual funds in the Allianz-Dresdner fund family, brings an objection to the proposed settlement reached in the mutual funds MDL.[1] Clifton's primary objection relates to the timeliness of the settlement notice received by class members, and she also briefly raises other objections related to the adequacy of the settlement, the suitability of the class representative, and the reasonableness of attorneys' fees. For the reasons that follow, I find that Clifton's arguments are without merit.

A. **Timeliness of Notice**

Prior to approving a proposed settlement, a court must confirm that the notice provided to class members and shareholders meets the requirements of Rule 23, Rule 23.1, and due process.

---

[1] Clifton brings this objection by and through her attorney, Thomas L. Cox, Jr. It appears that Mr. Cox is a frequent and professional objector, as he has objected or represented objectors in at least six other class actions since 2010. *See In re Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litig.*, MDL No. 08-1982, 2010 U.S. Dist. LEXIS 48518 (D. Md. May 11, 2010); *Dewey v. Volkswagen of Am.*, 728 F. Supp. 2d 546 (D.N.J. 2010); *In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997 (E.D. Wis. 2010); *In re Lifelock, Inc. Mktg. & Sales Practice Litig.*, MDL No. 08-1977, U.S. Dist. LEXIS 130075 (D. Ariz. July 24, 2009); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, MDL No. 08-1998, 2010 U.S. Dist. LEXIS 131775 (W.D. Ky. Dec. 13, 2010). Mr. Cox's objections were not sustained in any of these cases.

Notice need not be perfect, and all class members do not have to actually receive notice in order to satisfy the requirements of Rule 23 and due process. Rather, what is required is "the best notice . . . practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), such that notice is "reasonably calculated to reach interested parties," *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 318 (1950); *see also Buxbaum v. Deutsche Bank AG*, 216 F.R.D. 72, 80 (S.D.N.Y. 2003) ("It is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected.").

In an effort to provide notice to as many class members as possible, plaintiffs' counsel mailed notices to all identified class members. Additionally, plaintiffs' counsel published a summary notice relating to all subtracks "in a number of nationally circulated magazines and newspapers and through various web-based media outlets, which were all specifically targeted to reach likely mutual fund owners." (Pls.' Omnibus Mem., Sept. 14, 2010, ECF No. 3453, at 24.) Yet Clifton argues that the postcard notice of the proposed settlement was defective because she did not receive it until after the September 21, 2010 deadline for objections and opt-outs had passed. Clifton acknowledges, however, that as directed by the notice, she visited the settlement website and learned that the deadline for objecting had been extended to January 14, 2011 for any class member who received the notice after September 21, 2010. (Clifton Objection at 2.) Nonetheless, she argues that it is "likely" that "many people who received a notice late" did not visit the website and therefore did not know that the deadline to object had been extended. (*Id.*) Clifton concludes that "[f]or class members who received notice after September 21, 2010, a completely new notice should have been issued to actually inform the class members of the actual, pertinent dates." (*Id.*)

Clifton's objections based on inadequate or untimely notice are without merit. As an initial matter, the following timeline might be helpful in understanding the unique nature of Clifton's complaint:

- June 30, 2010: Rust Consulting Inc. ("Rust"), the claims administrator, sends notice to Salomon Smith Barney ("SSB"), Clifton's broker, requesting that they provide the names and addresses of Allianz beneficial owners within ten days.

- September 2, 2010: After a delay of approximately two months, SSB provides Clifton's name and address to Rust.

- September 15, 2010: Rust mails a postcard notice of the proposed settlement to Clifton.

- October 1, 2010: The postcard notice sent to Clifton is returned as undeliverable because the address provided to Rust by SSB was incorrect.

- October 7, 2010: Rust, having discovered Clifton's correct address through a search using LexisNexis, re-mails the settlement notice to Clifton, who receives it several days later.

From this timeline, it is clear that Clifton's belated receipt of the settlement notice was caused by SSB's delay in providing her address to Rust and SSB's failure to provide Rust with a correct address, not by any defect in the notice program. Moreover, Clifton admits that by visiting the claim settlement website, as the notice directed, she learned that the deadline for filing an objection had been extended, meaning that she was not actually prejudiced in any way.

Aside from a lack of prejudice as to Clifton, it is unlikely that a significant number of other class members were prejudiced by delays in receiving notice. When plaintiffs' counsel learned in early October 2010 that approximately 300,000 class members in the Allianz-Dresdner subtrack still had not received notice of the settlement, the claims administrator initiated a supplemental mailing of postcard notices to these investors clearly stating that the deadline for objecting or opting out of the settlement had been extended until January 14, 2011. Accordingly, although Clifton complains that "a completely new notice should have been issued

to actually inform the class members of the actual, pertinent dates," that is exactly what happened for the vast majority of class members who had not received a postcard notice by the September 21 deadline. Clifton's case is unique because she was sent the original postcard notice prior to the September 21 deadline but did not receive it until after a short delay because of the erroneous address provided by SSB. But aside from the circumstances specific to Clifton's claim, it is difficult to imagine any situation in which a significant number of class members would not have received notice in a timely manner. As discussed above, notice need not be perfect—and with 27 million notices sent in this case, perfection would have been nearly impossible—and due process is satisfied "so long as class counsel acted reasonably in selecting means likely to inform persons affected." *Buxbaum*, 216 F.R.D. at 80. There is little doubt that the notice program at issue here satisfies this standard.

> B.  Miscellaneous Objections: Adequacy of Settlement, Suitability of Class Representative, and Reasonableness of Attorneys' Fees

Clifton also raises boilerplate objections related to the adequacy of class compensation, the suitability of the class representative, and the amount of proposed attorneys' fees. Clifton's objection as to adequacy of class compensation stems from the $10 minimum threshold requirement for distribution of funds. Clifton contends that this threshold is "grossly unfair to the subclass owning less than the minimum number of shares [necessary] to receive compensation." (Clifton Objection at 3.) Yet minimum payment thresholds, which are designed to ensure that the cost of processing, printing, and mailing a check does not exceed the value of a claim, have consistently and repeatedly been upheld in federal courts. *See, e.g.*, *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484, 2007 WL 4526593, at *12 (S.D.N.Y. Dec. 20, 2007) (approving $50 minimum distribution amount "in order to foster the efficient administration of the settlement"); *In re Global Crossing Sec. & ERISA Litig.*, 225

4

F.R.D. 436, 463 (S.D.N.Y. 2004) ("Class counsel are entitled to use their discretion to conclude that, at some point, the need to avoid excessive expense to the class as a whole outweighs the minimal loss to the claimants who are not receiving their *de minimis* amounts of relief."). In light of this precedent, Clifton's objection to the minimum payment threshold is without merit.

Clifton also briefly challenges the suitability of the class representative, arguing that the class representative is a larger shareholder and that "the interests of the largest shareholder is [sic] advanced at the expense of the smaller investors." (Clifton Objection at 4.) This objection is also unpersuasive. First, there are actually two class representatives (the Combined Welfare Fund and an individual named Warren Meier), and Mr. Meier is actually a smaller shareholder than Clifton. Moreover, Clifton has adduced no evidence indicating that the class representatives have not adequately and fairly represented the interests of the class as a whole.

Finally, Clifton purports to object to the attorneys' fees provided for by the settlement. In truth, however, she merely recites boilerplate language describing the standards by which fee awards are judged and never provides any factual basis for an objection. Regardless, the 25 percent fee sought, which creates a negative lodestar multiplier of 0.87, falls well within the range of a reasonable fee. Accordingly, this objection, like the others raised by Clifton, is denied.

A separate order is being entered herewith overruling Clifton's objection.

Date: March 23, 2011                  /s/
                                                       J. Frederick Motz
                                                       United States District Judge