IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MUTUAL FUNDS ) <br> INVESTMENT LITIGATION ) <br> ) <br> This Document Relates To: ) <br> *MFS Sub-Track*, ) <br> 04-md-15863-04 ) <br> ) | MDL 1586 <br><br> Case No. 04-MD-15863-04 <br> (Hon. J. Frederick Motz) |

**INVESTOR CLASS LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

Dated: November 13, 2012

Court-appointed Investor Class Lead Plaintiff, the City of Chicago Deferred Compensation Plan, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, respectfully submits this memorandum in support of its motion for entry of the [Proposed] Order Approving Distribution Plan (the "Distribution Order") in the MFS sub-track of MDL-1586 – *In re Mutual Funds Investment Litigation* (the "Action"), as set forth in the accompanying Declaration of Jason Zuena in Support of Motion for Approval of Distribution Plan (the "Zuena Declaration" or "Zuena Decl."), submitted on behalf of the Court-approved Claims Administrator, The Garden City Group, Inc. ("GCG").[1]

## INTRODUCTION

If granted, the motion will permit the distribution of settlement proceeds to members of the Investor Class ("Investor Class Members") whose Proofs of Claim are accepted by the Court. More specifically, the proposed Distribution Order will, among other things: (i) approve GCG's administrative determinations accepting and rejecting the Proofs of Claim submitted in the Action (including its determination to reject the Contested Claims described in the Zuena Declaration and discussed below); (ii) direct the distribution of the Net Settlement Fund and the OAG/Canary Fund to claimants whose Proofs of Claim have been accepted as valid and approved by the Court and who would receive a distribution amount of $20.00 or greater (the cut-off for payments set forth in the Court-approved Plan of Allocation); (iii) direct that distribution checks state that the check must be cashed within 90 days after the issue date; (iv) direct that Authorized Claimants will forfeit all recovery from the settlement proceeds if they fail to cash their distribution checks in a timely manner; (v) adopt the recommended plan for the funds remaining following the Distribution; (vi)

---

[1] All capitalized terms not otherwise defined herein shall have the meanings as ascribed to them in the Zuena Declaration or in the Order and Final Judgments entered in the Action on October 25, 2010 (Dkt. Nos. 3534-3541) (which incorporate by reference the defined terms in the Preliminary Order for Notice and Hearing in Connection with Settlement Proceedings in the MFS Sub-Track entered on May 19, 2010 (Dkt. No. 3371) (the "Preliminary Approval Order") and in the respective stipulations of settlement filed with the Court in the Action (Dkt. Nos. 3337-8, 3337-10, 3337-11, 3337-12, 3337-14, 3337-16, 3337-18 and 3337-19)).

release claims related to the claims administration process; (vii) approve GCG's fees and expenses incurred and to be incurred in connection with the administration of the Settlements; (viii) authorize destruction of Proof of Claim forms after the Distribution; and (ix) provide that the Court retains jurisdiction to consider any further applications concerning the administration of the Settlements, and such other and further relief as the Court deems appropriate.

## BACKGROUND

Between January and March 2010, the parties finalized the terms of the respective settlements (the "Settlements") resolving the claims asserted in the Action against the MFS Defendants, the MFS Funds Defendants, the Security Brokerage Parties, BAS, the Bear Stearns Defendants, the Canary Defendants, Tewksbury, and Wilshire Associates.[2] Pursuant to the Settlements, a total of $75,042,250 in cash was paid into escrow for the benefit of the Investor Class.[3] In addition, a total of $2,190,000 plus interest, which was obtained by the Office of the New York Attorney General in its settlement with the Canary Defendants (the "OAG/Canary Fund"), was transferred to an escrow account controlled by Investor Class Lead Counsel pending distribution to the Investor Class.

---

[2] The Settlements are embodied in the following stipulations of settlement which were filed with the Court on April 21, 2010:  (i) the MFS/Security Brokerage Severed Agreement and Stipulation of Settlement (Dkt. No. 3337-8) (the "Security Brokerage Stipulation"); (ii) the Stipulation and Agreement of Settlement (MFS Defendants) (Dkt. No. 3337-10) (the "MFS Defendants Stipulation"); (iii) the Stipulation and Agreement of Settlement (MFS Funds Defendants) (Dkt. No. 3337-11) (the "MFS Funds Defendants Stipulation"); (iv) the MFS/BAS Severed Agreement and Stipulation of Settlement (Dkt. No. 3337-12) (the "BAS Stipulation"); (v) the MFS/Bear Stearns Severed Agreement and Stipulation of Settlement (Dkt. No. 3337-14) (the "Bear Stearns Stipulation"); (vi) the MFS/Canary Severed Agreement and Stipulation of Settlement (Dkt. No. 3337-16) (the "Canary Stipulation"); (vii) the Stipulation and Agreement of Settlement with Tewksbury (Dkt. No. 3337-18) (the "Tewksbury Stipulation"); and (viii) the Stipulation and Agreement of Settlement with Wilshire Associates (Dkt. No. 3337-19) (the "Wilshire Associates Stipulation") (collectively, the "Stipulations").

[3] Pursuant to the Court-approved Plan of Allocation, the Net Settlement Fund will be distributed to the eligible Class Members who submit valid Proofs of Claim.  If any uncashed payments remain in the Net Settlement Fund after the initial distribution and any subsequent cost-effective redistributions of the Fund, such amounts will be distributed to the MFS Funds.

On May 19, 2010, the Court entered the Preliminary Approval Order which approved Investor Class Lead Counsel's selection of GCG as the Claims Administrator for the Settlements. Pursuant to Preliminary Approval Order, GCG was retained to, among other things, print and mail copies of the Notice to Class Members, to publish the Publication Notice, to process the Proofs of Claim submitted in the Action, and to effectuate the distribution of the settlement proceeds.

On October 21, 2010, the Court held a hearing to consider the proposed Settlements and, in the Orders and Final Judgments entered October 25, 2010, the Court approved the Settlements set forth in the respective Stipulations, and directed the parties to implement and consummate the Settlements in accordance with the terms and provisions of the respective Stipulations.[4] In the Judgments, the Court also approved the final certification of the Investor Class, for purposes of the Settlements only, consisting of "every natural person or any legal entity (including, without limitation, individuals, corporations, employee pension or other benefit or ERISA plans, and trusts) ("Person") who, during the period between and including July 31, 1999 and December 8, 2003 (the "Class Period"), purchased, owned or held shares in any of the MFS Funds set forth on Exhibit 1 [to the Judgments]" (Judgments ¶ 3).[5]

The Effective Date of each of the Settlements has occurred and the Claims Administrator has completed the processing of the Proofs of Claim submitted in the Action. Accordingly, pursuant to the Preliminary Approval Order and the Stipulations, the Net Settlement Fund and OAG/Canary

---

[4] *See* Order and Final Judgment with Respect to MFS Defendants (Dkt. No. 3534); Order and Final Judgment with Respect to Banc of America Securities (Dkt. No. 3535); Order and Final Judgment with Respect to Bear Stearns Defendants (Dkt. No. 3536); Order and Final Judgment with Respect to Canary Defendants (Dkt. No. 3537); Order and Final Judgment with Respect to MFS Funds Defendants (Dkt. No. 3538); Order and Final Judgment with Respect to Security Brokerage Parties (Dkt. No. 3539); Order and Final Judgment with Respect to Tewksbury (Dkt. No. 3540); and Order and Final Judgment with Respect to Wilshire Associates (Dkt. No. 3541).

[5] The Defendants in the Actions and certain other persons and entities were excluded from the Investor Class by definition as set forth in the Judgments.

3

Fund may be distributed to the Authorized Claimants upon entry of an appropriate order by the Court.

## CLAIMS ADMINISTRATION

As set forth in the accompanying Zuena Declaration, GCG mailed over 7.2 million copies of the Notice to potential Class Members in this Action. *See* Zuena Decl. ¶¶ 3, 9. Under the terms of the Preliminary Approval Order and the Notice, all Investor Class Members wishing to participate in the distribution of the Net Settlement Fund were required to submit their Proofs of Claims by December 8, 2010. As detailed in the accompanying Zuena Declaration, GCG has received and processed 270,759 Proofs of Claim in this Action. Zuena Decl. ¶¶ 4, 59.

As more fully described in the Zuena Declaration, GCG and Investor Class Lead Counsel developed a streamlined and flexible claims process in an effort to permit as many Investor Class Members to participate in the Settlements as possible. *See* Zuena Decl. ¶ 3. Investor Class Members who purchased or held their MFS Fund shares directly with MFS ("Director Investors") were able to call a toll-free hotline maintained by MFS to request (free of charge) the information concerning their MFS Fund holdings required to complete their Proofs of Claims. *Id*. Investor Class Members who did not invest directly with MFS, but instead invested in MFS Funds through their broker or some other financial intermediary ("Indirect Investors") were required to submit brokerage statements or other supporting documentation to verify their Class Period holdings and establish their membership in the Class. *Id.* However, with respect to all Investor Class Members, the Court-approved documentation requirement was flexible by design, and Investor Class Members were encouraged to submit the best documentation they reasonably had or could obtain concerning their ownership of MFS Funds. *Id.* The goal of this relaxed documentation requirement has been to permit as many Investor Class Members to participate in the Settlements as possible under the terms

4

of the Court-approved Plan of Allocation, while still protecting the substantial interest of the Investor Class in avoiding payment of fraudulent claims.

GCG also placed a great emphasis on, and devoted significant resources to, assisting claimants with deficient claims to cure their submissions so that they would be eligible to participate in the distribution of the settlement proceeds. *See* Zuena Decl. ¶ 31. With respect to wholly deficient Proofs of Claim (for example, if the Proof of Claim had no supporting documentation or was unsigned), GCG sent a rejection letter to the claimant describing the defect(s) with his, her or its Proof of Claim and stating what, if anything, was necessary to cure the claim. *Id*. ¶ 32. GCG also mailed rejection letters to claimants whose Proofs of Claim were determined to be partially deficient (for example, if the claimant was missing documentation for part of the Proof of Claim, or did not supply adequate documentation to support some year-end shareholding information), advising the claimants of the defect(s) in the Proof of Claim and stating what was necessary to cure such defect(s). *Id*. ¶ 34.[6]

Consistent with ¶ 41(f) of the Preliminary Approval Order, all rejection letters specifically advised the claimant that he, she or it had the right, within twenty (20) days after the mailing of the rejection letter, to contest the rejection of the claim and request Court review of the disposition of the claim. Zuena Decl. ¶¶ 35, 42. As set forth in the Zuena Declaration, letters contesting GCG's administrative determinations rejecting claims were received with respect to 186 claims. *Id*. ¶ 42. Many of these claimants simultaneously provided GCG with adequate documentation or information to complete their Proof of Claim and cure any remaining deficiencies, and these claims are now being recommended for acceptance. *Id*. A number of other claimants affirmatively withdrew their requests for Court review after GCG contacted them and explained the basis for its administrative

---

[6] Copies of sample rejection letters are attached as an exhibit to the Zuena Declaration. Zuena Decl. ¶ 35 and Exhibit A thereto.

5

determination. *Id*. As a result, as discussed below, 28 claimants have an outstanding request for this Court's review of GCG's administrative determination to reject their claims.

As set forth in the Zuena Declaration, of the 270,759 claims received, GCG has determined that 222,607 are acceptable for payment in whole or in part (subject to the $20.00 cut-off for payment set forth in the Court-approved Plan of Allocation), and that 48,152 should be wholly rejected because they are ineligible, wholly deficient, or have no Recognized Claim when calculated in accordance with the Court-approved Plan of Allocation. Zuena Decl. ¶¶ 59-61.

The 270,759 Proofs of Claim received include 3,438 claims that were submitted after the Court-approved claim-filing deadline of December 8, 2010, of which 2,884 were, but for the late submission, otherwise eligible. Zuena Decl. ¶ 40. While these 2,884 claims were late, they were received while the processing of timely claims was ongoing, and due to the amount of time needed to process the timely claims received, the processing of these late claims did not delay the completion of the claims administration process or the distribution of the settlement proceeds. *Id*. Investor Class Lead Plaintiff believes that, when the equities are balanced, it would be unfair to prevent an otherwise eligible claim from participating in the distribution of the settlement proceeds solely because it was submitted after the Court-approved claim-filing deadline, when it was submitted while claims were still being processed. Accordingly, Investor Class Lead Plaintiff requests that the Court approve GCG's administrative determination to accept these late, but otherwise eligible claims.

In order to facilitate the efficient distribution of the Net Settlement Fund and OAG/Canary Fund, however, there must be a final cut-off after which no other claims may be accepted. Accordingly, Investor Class Lead Plaintiff respectfully requests that the Order entered by the Court

6

provide that no Proof of Claim received after November 5, 2012 be eligible for payment for any reason whatsoever.

Investor Class Lead Plaintiff further requests that the Court approve GCG's administrative determinations accepting and rejecting claims as set forth in the Zuena Declaration, including its determinations concerning the Contested Claims discussed below.

## **CONTESTED CLAIMS**

While over 270,000 Proofs of Claim have been submitted in this Action, only 28 claimants (the "Contesting Claimants") have an outstanding request for Court review of the rejection of their claims (the "Contested Claims"). The Contested Claims are discussed in paragraphs 42-50 of the Zuena Declaration, and a detailed description of each of the Contested Claims is forth in the chart attached as Exhibit B to the Zuena Declaration.[7]

As set forth in the Zuena Declaration, 18 of the Contested Claims – Contested Claim Nos. 1 – 18 – were rejected because the claimant failed to provide any information concerning his, her or its

---

[7] In addition to the 28 claimants that have an outstanding dispute concerning their rejected claims, there are 3 claimants with valid claims that have recently objected to the Court-approved Plan of Allocation, including the $20 minimum payment threshold set forth in the Plan of Allocation: Jeff Mitchell (Claim Nos. 05372064 and 07797900), Abdul Aswad (Claim No. 8039619), and Sandra Singer, on behalf of Lucille Sand Decd IRA (Claim No. 8308577). Investor Class Lead Counsel has responded in writing to each of these claimants explaining, among other things, (i) that the notice disseminated to the Class in the summer of 2010 informed Class Members of their right to object to any aspect of the Settlements and/or the proposed Plan of Allocation set forth in the Long-Form Notice; (ii) following the notice to the Class, the Final Settlement Hearing was held before the Court on October 21, 2010, at which the Court considered all objections submitted with respect to the Settlements, including an objection to the proposed Plan of Allocation which specifically opposed the $20 cut-off for payments set forth in the plan (*see also* Dkt. No. 3491 at 12-13 (discussing rationale for minimum payment threshold in class action settlements)), and (iii) following the Final Settlement Hearing, on October 25, 2010, the Court entered the Order Approving Plan of Allocation which approved all aspects of the Plan of Allocation, including the $20 cut-off for payments, and that order is now final. Investor Class Lead Counsel has also explained to each of these claimants that GCG has administered the MFS claims process in accordance with the Court-approved Plan of Allocation and, although the claimant has filed a valid claim, based on their MFS Funds shareholdings during the Class Period and their corresponding Recognized Claim amounts calculated under the Plan of Allocation, they will not be eligible to receive a payment from the distribution of the settlement proceeds because their *pro rata* payment amount will fall under the $20 minimum payment threshold. In addition, in response to each claimant's request for an explanation of how their claim was calculated under the Plan of Allocation, each claimant was provided with a detailed claim calculation analysis which sets forth the calculation of his/her Recognized Claim under the Plan of Allocation.

Class Period holdings of MFS Funds. As explained in the Zuena Declaration and above, GCG and Investor Class Lead Counsel developed a flexible claim-filing procedure that has encouraged Investor Class Members to submit the best documentation they reasonably had or could obtain concerning their ownership of MFS Funds. Zuena Decl. ¶ 3. As a result of the claim-filing procedures established by GCG and Investor Class Lead Counsel, and approved by the Court, more than 222,600 valid claims have been filed in the Action. As set forth in the Zuena Declaration, nearly 110,800 of the valid claims were submitted by "Indirect Investors," such as Contesting Claimant Nos. 1-10, who invested in MFS Funds through a financial intermediary (rather than directly through MFS) and were required to provide GCG with information concerning their MFS Fund shareholdings based on ownership records kept in their possession or maintained by their broker or some other third party (such as brokerage account statements, tax filings or any other verified information). *Id*. ¶ 45. Meanwhile, just over 111,800 eligible claims were filed by Direct Investors, such as Contesting Claimant Nos. 11 – 18, who had access to a toll-free number that enabled them to contact an MFS representative and receive (free of charge) the information concerning their MFS Fund holdings required to complete their claims. *Id*. However, in circumstances where a claimant has not provided any information regarding their MFS Fund shareholdings during the Class Period, as is the situation with Contesting Claimants Nos. 1 – 18, GCG has rejected their claims because it has no basis for determining whether, or to what extent, the claimant can participate in the Settlements.

As set forth in the Zuena Declaration, Contested Claim Nos. 19 – 22 were rejected because each of these claimants failed to provide documentation to support the year-end shareholding balances provided on their Proof of Claim. Zuena Decl. ¶ 46. In order to guard against fraudulent claims and to ensure the accurate calculation of Recognized Claim amounts, claimants were required

to submit documentation in support of their claimed MFS shareholdings during the Class Period. *Id*. at ¶ 47.  As explained above and in the Zuena Declaration, the documentation requirement for these Settlements has been flexible by design, and Investor Class Members were encouraged to submit the best documentation they reasonably had or could obtain in support of their claims. However, in circumstances were claimants have not provided any documentation in support of their claimed amount of their year-end MFS shareholdings, as is the situation with the Contesting Claimants Nos. 19 – 22, GCG has rejected their claims because there is no way for GCG to verify that these claimants in fact held the stated amount of shares of MFS Funds over a relevant portion of the Class Period.

Finally, Contested Claim Nos. 23 – 28 were rejected because the share balance information provided with respect to each of these claims does not demonstrate that the claimant is eligible to share in the settlement proceeds.  Zuena Decl. ¶ 48.  Specifically, as set forth in the Zuena Declaration, Contesting Claimant No. 23 and Contesting Claimant No. 24 each submitted claims demonstrating that they owned shares of the MFS Total Return Fund in the year 2003, while Contesting Claimant No. 25 submitted a claim demonstrating that she owned shares of the MFS Government Securities Fund in the year 2003; however, the Plan of Allocation approved by the Court does not provide for payment for shares held in those funds during the year 2003.[8]  *Id*. at ¶ 49. Meanwhile, as described in the Zuena declaration, Contested Claim Nos. 26-28 were initially rejected because the claimant's initial submission did not provide any information concerning the

---

[8] As explained in the Zuena Declaration, Table A on page 11 of the Long-Form Notice sets forth, for each MFS Fund, the "Alleged Dilution Losses Per Share" for each of the five "Intervals" during the Class Period. Zuena Decl. ¶ 49, n. 17.  The "Dilution Losses" set forth on Table A, which were calculated and verified by Investor Class Lead Plaintiff's outside damages expert, are used to determine each claimant's "Recognized Claim" under the Plan of Allocation.  *Id.*  As explained in Footnote 5 on page 11 of the Long-Form Notice, where Table A presents a "—", as is the case with the MFS Total Return Fund and the MFS Government Securities Fund for Interval 5, the Plan of Allocation does not provide for a payment from the settlement proceeds. *Id.*

9

claimant's holdings of MFS Funds; however, these claims were ultimately rejected because the shareholding information provided to GCG through the deficiency process demonstrates that the claimant did not hold any MFS shares at any of year-ends during the Class Period. *Id*. at ¶ 50. Accordingly, none of these claimants have established that they are eligible for recovery from the settlement proceeds.

For the reasons set forth herein and in the Zuena Declaration, Investor Class Lead Plaintiff requests that the Court accept GCG's administrative determination to reject each of the Contested Claims.

## FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with GCG's agreement with Investor Class Lead Counsel to act as the Claims Administrator, GCG was responsible for, among other things, mailing and publishing notice to the Class, processing the Proofs of Claims submitted in the Action, and allocating and distributing the Net Settlement Fund and the OAG/Canary Fund to Authorized Claimants. As set forth in the Zuena Declaration, GCG's fees and expenses for its work performed and to be performed on behalf of the Class total $9,729,245.33. Zuena Decl. ¶ 71. To date, GCG has received payments totaling $8,767,901.41. *Id*. Accordingly, there is a balance due to GCG of $961,343.92, which amount includes GCG's anticipated fees and expenses for the initial distribution of the settlement proceeds. *Id.* Investor Class Lead Plaintiff respectfully requests that the Court approve all of GCG's fees and expenses.

## DISTRIBUTION OF THE NET SETTLEMENT FUND AND THE OAG/CANARY FUND

As set forth in detail in the Zuena Declaration, and consistent with the Preliminary Approval Order and the Stipulations, GCG has completed the processing of all claims submitted in the Action, and all claimants whose claims have been rejected, in whole or in part, have been notified and

provided the opportunity to contest such rejection. Accordingly, pursuant to the terms of the Preliminary Approval Order and the Stipulations, Investor Class Lead Plaintiff, on notice to Defendants' counsel, respectfully moves for an order approving GCG's administrative determinations concerning the acceptance and rejection of the claims submitted herein and approving a plan for distribution of the Net Settlement Fund and OAG/Canary Fund to Authorized Claimants consistent with the Plan of Allocation previously approved by the Court.[9]

Investor Class Lead Plaintiff respectfully requests that the Court authorize and direct the distribution of the Net Settlement Fund and the OAG/Canary Fund to those Authorized Claimants listed in Exhibits C-1 and C-2 to the Zuena Declaration. Consistent with the Court-approved Plan of Allocation and as set forth in the Zuena Declaration (¶ 72), upon entry of the proposed Distribution Order, GCG will distribute 100% of the available balance of the Net Settlement Fund (after deducting all payments previously allowed and requested herein and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns and any escrow fees) and 100% of the available balance of the OAG/Canary Fund (after the payment of any estimated taxes and the costs of preparing appropriate tax returns and any escrow fees) to the Authorized Claimants who would receive a distribution amount of at least $20.00 based on their Recognized Claims in comparison to the total Recognized Claims of all Authorized Claimants (the "Distribution"). Authorized Claimants whose distribution amounts are less than the $20.00 cut-off for payment set forth in the Court-approved Plan of Allocation will not receive a payment from the Distribution.

---

[9] Under the terms of the Stipulations, the Defendants and their attorneys have no responsibility for the Claims Administrator's determinations pertaining to payments from the settlement proceeds. *See* Security Brokerage Stipulation ¶ 25; MFS Defendants Stipulation ¶ 37; MFS Funds Defendants Stipulation ¶ 14; BAS Stipulation ¶ 29; Bear Stearns Stipulation ¶ 30; Canary Stipulation ¶ 28; Tewksbury Stipulation ¶ 25; and Wilshire Associates Stipulation ¶ 26.

**DISPOSITION OF ANY UNCLAIMED/UNCASHED BALANCE**

Consistent with the Court-approved Plan of Allocation, in order to encourage Authorized Claimants to cash their Distribution checks promptly and to avoid or reduce future expenses relating to uncashed checks, all of the Distribution checks will bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." In an effort to have as many Authorized Claimants as possible cash their checks, GCG will perform follow up with Authorized Claimants who initially fail to cash their Distribution checks. *See* Zuena Decl. ¶ 72(b) n.18.

Consistent with the Court-approved Plan of Allocation, subsequent to the passage of six (6) months from the Distribution, if Plaintiffs' Counsel, in consultation with the Claims Administrator, determine that it is cost-effective to do so, the Claims Administrator will conduct a re-distribution of any funds remaining in the Net Settlement Fund and of any funds remaining in the OAG/Canary Fund, by reason of returned or uncashed checks or otherwise, to Authorized Claimants who have cashed their Distribution checks and who would receive at least $75.00 from such re-distribution based on their Recognized Claims, after payment from the Net Settlement Fund of any unpaid costs or fees incurred in administering the funds, including for such re-distribution. With respect to the MFS Plan only, prior to the occurrence of any re-distribution and in lieu of receiving a *pro rata* second distribution or other additional distributions, in the event that the MFS Plan has received a distribution of less than $185,000, provided that there are sufficient funds remaining to fund such a payment (after taking into account any reasonable allowances for any unpaid taxes or administrative expenses), the MFS Plan will, before any other re-distribution occurs, receive the difference between $185,000 and the amount the MFS Plan received from the Distribution. Additional re-distributions will occur thereafter to Authorized Claimants (other than the MFS Plan) in three (3)-month intervals

if Plaintiffs' Counsel, in consultation with the Claims Administrator, determine that additional re-distribution is cost-effective.  At any such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance of the Net Settlement Fund shall, subject to Court approval, be distributed to the respective MFS Funds in proportion to their alleged dilution losses as found by Investor Class Lead Plaintiff's Damages Expert.

## **RELEASE OF CLAIMS**

In order to allow the full and final distribution of the Net Settlement Fund and the OAG/Canary Fund, it is necessary to bar any further claims against the Net Settlement Fund and the OAG/Canary Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of Settlement Fund, the Net Settlement Fund or the OAG/Canary Fund, be released and discharged from any and all claims arising out of such involvement.  Accordingly, Investor Class Lead Plaintiff respectfully requests that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Proofs of Claim submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund, the Net Settlement Fund, or the OAG/Canary Fund, from any and all claims arising out of such involvement, and bar all Class Members, whether or not they receive payment from the funds, from making any further claims against the Net Settlement Fund, the OAG/Canary Fund, Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Plaintiffs' Counsel in connection with the administration or taxation of the Settlement

13

Fund, Net Settlement Fund or OAG/Canary Fund beyond the amount allocated to Authorized Claimants.

## CONCLUSION

For the foregoing reasons, Investor Class Lead Plaintiff respectfully requests that its Motion for Approval of Distribution Plan be approved and the proposed Order Approving Distribution Plan be entered.

Dated:  November 13, 2012            Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

  /s/ *William C. Fredericks*
William C. Fredericks
John J. Mills
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

*Lead Counsel for the Investor Class Lead Plaintiff and the Investor Class*

#658376