## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION | MDL 1586 |
| This Document Relates to: | 1:04-MD-15863-JFM |
| Alger Sub-track | |

## MEMORANDUM IN SUPPORT OF INVESTOR CLASS PLAINTIFFS' MOTION FOR DISTRIBUTION OF SETTLEMENT PROCEEDS IN THE ALGER SUB-TRACK

Court-appointed Lead Plaintiff Donna Roubicek (formerly, Donna Gaffney) and additional plaintiff Gerald Born (together, the "Investor Class Plaintiffs"), by and through their undersigned counsel, hereby submit this memorandum in support of their motion for an order pursuant to Federal Rule of Civil Procedure 23(e), that would approve the plan for distribution of the Net Settlement Fund and the OAG/Canary Fund to the Class and Alger Settlement Funds, as set forth in the accompanying Affidavit of Eric S. Schachter in Support of Motion for Distribution of Settlement Proceeds in the Alger Sub-Track (the "Schachter Affidavit") submitted on behalf of Rust Consulting, Inc. ("Rust" or the "Claims Administrator"), the Court-approved claims administrator for the settlements obtained in the Alger Sub-track of MDL 1586 – *In re Mutual Funds Investment Litigation* (the "Action").[1]

## PROCEDURAL HISTORY AND BACKGROUND ON SETTLEMENTS

Investor Class Plaintiffs (on behalf of the Class), Derivative Plaintiffs (derivatively on behalf of certain mutual funds in the Alger Fund Complex advised and/or managed by Fred

---

[1] Unless otherwise defined, all capitalized terms used herein shall have the meanings set forth in the accompanying Schachter Affidavit and the Orders and Final Judgments entered in the Action on October 25, 2010 (Dkt. Nos. 3527-3530) (collectively, the "Judgments") which incorporate by reference the defined terms and definitions in the Preliminary Approval Order (Dkt. No. 3368) and the respective stipulations of settlement filed with the Court in the Action (Dkt. Nos. 3339-9, 3339-11, 3339-14 and 3339-17) (the "Stipulations").

Alger Management, Inc. (the "Alger Funds")[2] and the Settling Entities (as defined below) (together, the "Parties") entered into five separate settlements, as embodied in the following Stipulations (the "Settlements"), resulting in a global settlement of all claims asserted in the Action:

- the Stipulation of Settlement dated June 2, 2009 entered into between Investor Class Plaintiffs and Derivative Plaintiffs (collectively, the "Plaintiffs"), the Alger Defendants (*i.e.*, Fred Alger Management, Inc., Fred Alger and Company, Incorporated, Alger Associates, Inc. and Alger Shareholder Services, Inc., and any and all of their present or former officers, directors and trustees, including without limitation, Fred M. Alger, III, Daniel C. Chung, Gregory S. Duch and James P. Connelly, Jr.[3]) and defendant Wilshire Associates, Inc.;

- the Alger/Bear Stearns Severed Agreement and Stipulation of Settlement dated January 15, 2010 entered into between Investor Class Plaintiffs and the Bear Stearns Defendants (*i.e.*, Bear, Stearns & Co. Inc., Bear, Stearns Securities Corp, The Bear Stearns Companies Inc., currently known as J.P. Morgan Securities Inc., J.P. Morgan Clearing Corp. and The Bear Stearns Companies LLC, respectively) and the Master Agreement of Settlement with Bear Stearns Defendants;

---

[2]   The Alger Funds are as follows: Alger LargeCap Growth Portfolio (f/k/a Alger Growth Portfolio) (n/k/a Alger Large Cap Growth Fund); Alger MidCap Growth Portfolio (n/k/a Alger Mid Cap Growth Fund); Alger SmallCap Growth Portfolio (f/k/a Alger Small Cap Portfolio) (n/k/a Alger Small Cap Growth Fund); Alger Capital Appreciation Portfolio (n/k/a Alger Capital Appreciation Fund); Alger American Balanced Portfolio (n/k/a Alger Balanced Portfolio); Alger Health Sciences Portfolio (n/k/a Alger Health Sciences Fund); Spectra Fund (n/k/a Alger Spectra Fund); China – US Growth Fund (n/k/a Alger China – U.S. Growth Fund); The Alger Institutional Fund (n/k/a The Alger Institutional Funds); The Alger American Fund (n/k/a The Alger Portfolios); and Castle Convertible Fund, Inc. (collectively, the "Alger Releasing Funds"). In connection with the Settlements, Investor Lead Counsel's expert concluded that only the following Alger Releasing Funds should recover from the Settlements related to allegations of market-timing and/or late trading in the Alger Fund Complex: (i) Alger American Balanced Portfolio (n/k/a Alger Balanced Portfolio); (ii) Alger American Small Capitalization Portfolio (n/k/a Alger Small Cap Growth Fund); (iii) Alger Capital Appreciation Portfolio (n/k/a Alger Capital Appreciation Fund); (iv) Alger LargeCap Growth Portfolio (f/k/a Alger Growth Portfolio) (n/k/a Alger Large Cap Growth Funds); and (v) Alger MidCap Growth Portfolio (n/k/a Alger Mid Cap Growth Fund (collectively, the "Alger Settlement Funds").

[3]   Although all claims against the Alger Fund, the Alger American Fund, the Alger Institutional Fund and Spectra Fund and their trustees were previously dismissed from the lawsuit, it is understood and agreed that these funds, together with any other mutual fund managed by Fred Alger Management, Inc., as well as their trustees, shall be deemed to be included among the "Alger Defendants" for purposes of settlement.

- the Alger/Canary Severed Agreement and Stipulation of Settlement dated January 15, 2010 entered into between Plaintiffs and the Canary Defendants (*i.e.*, Canary Capital Partners, LLC, Canary Capital Partners, Ltd., Canary Investment Management, LLC and Edward J. Stern) and the Master Agreement of Settlement with Canary Defendants; and

- the Alger/BAS Severed Agreement and Stipulation of Settlement dated as of January 28, 2010 entered into between Plaintiffs and Banc of America Securities LLC and related entities ("BAS") and the Master Agreement of Settlement with Banc of America Securities LLC.[4]

The Settlements provide for the total payment of $4,828,800 in cash (the "Settlement Fund"), plus interest earned thereon.[5]   Specifically, the Settlement Fund is comprised of: (i) $2,950,000 paid on behalf of the Alger Defendants, (ii) $950,000 paid on behalf of Wilshire Associates, Inc., (iii) $404,800 paid on behalf of BAS,[6] (iv) $224,000 paid on behalf of the Bear Stearns Defendants, and (v) $300,000 paid on behalf of the Canary Defendants.   These funds have been escrowed and are currently earning interest.   The Settlement Fund, net of any taxes on the income thereof, and net of any funds used to pay Court-awarded attorneys' fees and expenses and other costs, including notice and administrative costs, is the Net Settlement Fund.   In addition to the Net Settlement Fund, Rust will also distribute $600,000 plus interest obtained by the Office of the New York Attorney General in a settlement with the Canary Defendants (the "OAG/Canary Fund").

The notice campaign was conducted in accordance with the Court's Preliminary Order for Notice and Hearing in Connection With Settlement Proceedings in the Alger Sub-Track dated

---

[4]   The Alger Defendants, Wilshire Associates, Inc., the Bear Stearns Defendants, the Canary Defendants and BAS are collectively referred to herein as the "Settling Entities."

[5]   The Settlements described herein are distinct from the settlements reached with government regulators, including the Securities and Exchange Commission ("SEC"), concerning market-timing and late trading in Alger mutual funds.   Any payment a claimant may be eligible to receive under the Settlements described herein is in addition to any payment he, she or it may receive from the SEC and/or other regulators.

[6]   The $404,800 paid on behalf of BAS is comprised of a $341,000 principal settlement amount and a $63,800 contribution towards the costs of notice and administration of the settlement.

May 19, 2010 (the "Preliminary Approval Order").  By its Preliminary Approval Order, the Court directed that the Notice of Pendency and Proposed Settlements of Class and Derivative Actions, Motion for Attorneys' Fees and Expenses, and Settlement Hearing (the "Notice") be mailed to all identifiable members of the Class.  In addition to the mailed Notice, Plaintiffs also utilized the Internet to facilitate notice to the Class and current shareholders of the Alger Releasing Funds.  Specifically, Rust constructed an extensive informational website for the Settlements, www.AlgerMutualFundLitigation.com (the "Alger Settlement Website"), on which Rust posted the Long-Form Notice of Pendency and Proposed Settlements of Class and Derivative Actions, Motion for Attorneys' Fees and Expenses, and Settlement Hearing (the "Long Form Notice"), a more detailed version of the mailed Notice which included the Court-approved plan for allocating the settlement proceeds (the "Plan of Allocation"), and the Proof of Claim and Release form ("Claim Form").  Further, a "global" summary notice – serving to generally inform the public of the proposed settlements reached in sixteen of the seventeen mutual fund sub-tracks involved in the MDL Action -  was published in *People* Magazine, *The Wall Street Journal*, the *New York Times* and via *PR Newswire*, and disseminated through the use of targeted web-based "banner ads."

In addition, pursuant to the Preliminary Approval Order, the Court preliminarily certified, solely for purposes of effectuating the Settlements, a class pursuant to Rule 23 of the Federal Rules of Civil Procedure consisting of all persons who, during the period from November 1, 1998 to September 3, 2003, inclusive, purchased and/or held shares in certain mutual funds in the Alger Fund Complex advised and/or managed by Fred Alger Management, Inc.[7]  Excluded from

---

[7]  Investor Lead Counsel brought the class action to represent and pursue the claims of all holders of shares in the Alger Funds who had potentially been injured by market timing or late trading during the Class Period.

the Class are the Settling Entities, members of the immediate family of each of the individual defendants, any subsidiary, affiliate, director, officer, or employee of any of the Settling Entities, any entity in which any excluded person or entity has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person or entity.[8]

Thereafter, the Court held a hearing on October 21, 2010 to consider, among other things, whether the proposed Settlements should be granted final approval.  By its Judgments entered on October 25, 2010, the Court, among other things, reaffirmed its certification of the Class and approved the Settlements as fair, reasonable and adequate and in the best interests of the Class and the Alger Funds.  In addition, the notice procedures were declared to be proper, and the Action was dismissed with prejudice.  By its Order Approving Plan of Allocation of Settlement Proceeds in the Alger Sub-Track entered on October 25, 2010, the Court approved the Plan of Allocation as set forth in the Long Form Notice, along with the claims process for administering the Plan of Allocation.

Moreover, the Court approved the retention of Rust to facilitate notice, to administer the Settlements, to perform all analyses and accounting procedures in connection with the claims submitted, and to effectuate distribution of the Net Settlement Fund and OAG/Canary Fund. Rust has consented to the jurisdiction of this Court.

## THE SETTLEMENT FUND

Pursuant to the Stipulations, the Settling Entities have deposited $4,828,800 (plus interest) into an escrow account maintained by Citizens Bank on behalf of the Class and the

---

[8]  Also excluded from the Class are all persons and entities who excluded themselves from the Settlements by timely requesting exclusion in accordance with the requirements set forth in the Long Form Notice (as set forth on Exhibits 1 or 2 to the Judgments).

Alger Settlement Funds (the "Alger Escrow Account").[9]  In total, $1,819.94 in income has been earned on the settlement proceeds since the date of the initial deposit into the Alger Escrow Account.  In addition, the following expenses have been paid from the Settlement Fund:  (i) a total of $713,125.92 in administrative expenses;[10] (ii) $1,842.00 in tax related expenses; (iii) $1,275,105.60 in attorneys' fees and expenses awarded by the Court;[11] and (iv) a total of $3,000 to Investor Class Plaintiffs awarded by the Court.  On or about May 6, 2011, the OAG/Canary Fund plus interest (*i.e.*, $706,364.97) was deposited into the Alger Escrow Account.  As of December 14, 2012, the balance of the Alger Escrow Account was $3,551,491.47.

## CLAIMS ADMINISTRATION

In accordance with the mailed Notice and the Long Form Notice (together, the "Notices"), all Class Members wishing to participate in the Settlements were required to complete a Claim Form and to mail the Claim Form, together with supporting documentation, to the post office box identified in the Notices, which was maintained by Rust, postmarked no later than December 8, 2010.[12]  Employees of Rust have carefully reviewed, processed and analyzed

---

[9]   The settlement amounts paid by the cross-track defendants involved in the Alger Sub-Track (*i.e.*, BAS, the Bear Stearns Defendants and the Canary Defendants) were funded and held in various escrow accounts prior to being transferred to the Alger Escrow Account.  Any interest earned on these settlement amounts (attributable to the Alger Sub-Track) during this time was also transferred to the Alger Escrow Account (*i.e.*, $7,580.08).

[10]  In addition to the $676,542.95 paid to Rust from the Settlement Fund (*see* Section titled "Fees and Expenses of Claims Administrator and Taxes" below) $36,582.97 was paid to The Garden City Group, Inc. representing the Alger Sub-Track's share of the global publication program for the MDL 1586 – *In re Mutual Funds Investment Litigation*.

[11]  Pursuant to the Court's Order Awarding Attorneys' Fees and Expenses in the Alger Sub-Track entered on October 25, 2010, the Court awarded 20% of the Settlement Fund to Lead Counsel (*i.e.*, $965,760), 1.25% of the Settlement Fund to Liaison Counsel (*i.e.*, $60,360), and $240,022.92 in expenses plus interest on such amounts.

[12]  With respect to supporting documentation, Class Members were required to submit documentation to show the number of shares they held in the Alger Settlement Funds at or around each year-end of the Class Period.  In an effort to assist potential claimants in obtaining

all of the Claim Forms submitted, and have responded in a prompt manner to all claimant inquiries regarding the Action, the Settlements and the procedures for completing and submitting claims.  Schachter Aff. at ¶8.

### CLAIM DEFICIENCIES AND REJECTED CLAIMS

As set forth in the accompanying Schachter Affidavit, for all submitted claims that were determined to be intrinsically ineligible (*i.e.*, claims that cannot be cured by submitting additional information) or duplicative of another submitted claim, Rust mailed a "Notice of Ineligibility" to the claimant advising him, her or it of the ineligibility/rejection of their claim. *See* Schachter Aff. at ¶12.  For all submitted claims that were determined to be deficient primarily due to missing information and/or documentation needed to calculate losses pursuant to the Plan of Allocation, Rust mailed a "Notice of Deficiency" to the claimant advising him, her or it of the deficiency(s) with the claim and what was necessary to complete the claim. Schachter Aff. at ¶13.[13]  Electronically submitted claims that were determined to be ineligible or deficient were notified of their ineligibility or deficiency by means of a Transaction Report. Schachter Aff. at ¶14.  The Notices of Ineligibility and Transaction Reports advised claimants that they had the right to contest Rust's determination of the ineligibility of their claims, or their claims' deficiency(ies), within twenty days and could submit their dispute to the Court for

---

this information, the Alger Settlement Website was updated, at the request of the Court, with several suggestions on how to locate this information.  In addition, for potential claimants who purchased their shares directly through Fred Alger & Company, Incorporated, the Alger Settlement Website provided a contact phone number for Fred Alger & Company, Incorporated. Additionally, Rust provided Class Members who provided incomplete or partial documentation the benefit of the doubt in order to permit as many Class Members as possible to share in the settlement proceeds.  Schachter Aff. at ¶4, fn 6.

[13]   Sample Notices of Ineligibility and a sample Notice of Deficiency are attached to the Schachter Affidavit as Exhibits C and D, respectively.

resolution. Schachter Aff. at ¶16. There are no outstanding requests for the Court's review of any submitted claim. *Id*.

**ADMINISTRATIVE DETERMINATIONS
WITH RESPECT TO SUBMITTED CLAIMS**

**I.      Submitted Claims Recommended for Acceptance**

A total of 10,328 claims were submitted in connection with the Settlements, 7,408 of which are being recommended for acceptance. Schachter Aff. at ¶19. Of the total claims submitted, a total of 7,292 valid claims were submitted timely (*i.e.*, postmarked on or before the claims submission deadline of December 8, 2010). Schachter Aff. at ¶19(a); *see also* Exhibit G to the Schachter Affidavit listing all valid and timely submitted claims, in claim number order. In addition, a total of 116 otherwise valid claims were submitted after the December 8, 2010 claims submission deadline, but no later than November 13, 2012 (the "Late Claims").[14] Schachter Aff. at ¶19(b); *see also* Exhibit H to the Schachter Affidavit listing all otherwise valid claims submitted after December 8, 2010, in claim number order. No valid claim received by November 13, 2012 has been rejected simply for being postmarked after the December 8, 2010 claim submission deadline. Schachter Aff. at ¶19(c). According to its analysis, Rust has found 7,408 of the total claims submitted to be proper and considered valid. Schachter Aff. at ¶19. Accordingly, Investor Class Plaintiffs respectfully request that this Court approve Rust's administrative determination(s) with respect to the accepted claims listed on Exhibits G and H to the Schachter Affidavit.

---

[14]  Investor Class Plaintiffs respectfully request the Court to approve November 13, 2012 as the final cut-off date after which no additional claims may be accepted so that there may be a proportional distribution of the Net Settlement Fund and OAG/Canary Fund and the distribution may be accomplished. Schachter Aff. at ¶19(d).

## II.      Submitted Claims Recommended for Rejection

Rust has also rejected 2,920 claims.  Schachter Aff. at ¶17; *see also* Exhibit F to the Schachter Affidavit listing all ineligible claimants and the reason(s) for rejection.  Paragraph 17 of the Schachter Affidavit sets forth the specific reasons for the rejection of these claims: (i) 1,877 claims were rejected because the claims indicated no eligible holdings in the Alger Settlement Funds; (ii) 462 claims were rejected because the claims did not calculate to a Recognized Claim pursuant to the Court-approved Plan of Allocation set forth in the Long Form Notice; (iii) 413 claims were rejected because the claims provided insufficient information or documentation to support the claim; and (iv) 168 claims were rejected because the claims were duplicates of previously submitted claims.  Schachter Aff. at ¶17.  Accordingly, Investor Class Plaintiffs respectfully request that this Court approve Rust's administrative determinations with respect to the rejected claims listed on Exhibit F to the Schachter Affidavit.

### FEES AND EXPENSES OF CLAIMS ADMINISTRATOR AND TAXES

In accordance with Rust's agreement with Plaintiffs' Counsel to act as the claims administrator in connection with the Settlements of the Action, Rust is responsible for, among other things, mailing notice to the Class, processing Claim Forms, and allocating and distributing the Net Settlement Fund and OAG/Canary Fund to eligible claimants.  As set forth in the accompanying Schachter Affidavit, Rust's fees and expenses incurred to date in connection with the administration of the Settlements and expected to be incurred through the distribution of the settlement proceeds amount to $941,768.17.  Schachter Aff. at ¶¶27-28; *see also* Exhibit I to the Schachter Affidavit (attaching copies of Rust's invoices for its outstanding administration fees and expenses).[15]  To date, Rust has received payments from the Settlement Fund totaling

---

[15]   Of the $941,768.17 in costs incurred or expected to be incurred by Rust, approximately

$676,542.95. Accordingly, Rust's unreimbursed fees and expenses total $265,225.22 to be paid from the Settlement Fund. *Id.*

In addition, the Settlement Fund was invested principally in short term United States Agency or Treasury Securities or mutual funds invested solely in such securities. Under the provisions of §1.468B of the Internal Revenue Code, taxes must be paid on the Settlement Fund. Monies payable to the Internal Revenue Service at the time of distribution on the interest earned on the settlement proceeds, if any, will be withheld from payment to the Class and immediately paid to the Internal Revenue Service.

Investor Class Plaintiffs respectfully request that the Court approve payment of Rust's unreimbursed fees and expenses and direct payment of Rust's unreimbursed fees and expenses, as well as any taxes due, prior to distribution of the Net Settlement Fund to the Class.

## DISTRIBUTION PROCESS

The Net Settlement Fund and OAG/Canary Fund are ready to be distributed at this time.[16] Investor Class Plaintiffs therefore respectfully request the Court direct Rust to distribute the Net Settlement Fund and OAG/Canary Fund to the claimants whose claims Rust has administratively determined to be valid (including claims received after the December 8, 2010 submission deadline but no later than November 13, 2012), as listed on Exhibits G and H to the Schachter Affidavit (the "Authorized Claimants"). Pursuant to the Long Form Notice, if these administrative determinations are approved, each of these claimants will receive a *pro rata* share

---

$505,761.13 relates to print, postage, broker reimbursement and other out-of-pocket expenses.

[16] As set forth in the Long Form Notice, "[t]he Settling Entities do not have any responsibility or liability with respect to claims administration, the management, investment or distribution of the Settlement Fund, the Net Settlement Fund or the OAG/Canary recovery, or the Plan of Allocation."

of the Net Settlement Fund and OAG/Canary Fund based on his, her, or its Recognized Claim compared to the total Recognized Claims of all accepted claimants.

It may be expected that not all of the checks sent to the 7,408 Authorized Claimants will be cashed promptly, and that not all of the Authorized Claimants will be located.  Pursuant to the Plan of Allocation, if any funds remain in the Net Settlement Fund because of uncashed distributions or other reasons, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks, any balance remaining in the Net Settlement Fund one (1) year after the initial distribution of such funds shall be distributed to the Alger Settlement Funds, as agreed upon by Plaintiffs' Counsel, in proportion to the alleged harm to each Alger Settlement Fund as determined by Investor Lead Counsel's expert.

## **<u>RELEASE OF CLAIMS</u>**

Investor Class Plaintiffs respectfully request this Court release and discharge all persons who are involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claim Forms filed in this Action, or who are otherwise involved in the administration or taxation of the Settlement Fund, the Net Settlement Fund, or the OAG/Canary Fund from any and all claims arising out of such involvement, and, pursuant to the release terms of the Settlements, bar all Class Members, whether or not they are to receive payment from the Net Settlement Fund and OAG/Canary Fund, from making any further claim against the Net Settlement Fund and the OAG/Canary Fund or the parties released pursuant to the Settlements beyond the amount allocated to them by the Settlements as approved by the Court.

## RECORD RETENTION AND DESTRUCTION

Investor Class Plaintiffs respectfully request that the Court authorize Rust to destroy the paper and electronic copies of the claims and all supporting documentation three (3) years after the distribution of the Net Settlement Fund and OAG/Canary Fund.

## CONCLUSION

Based on the foregoing, Investor Class Plaintiffs respectfully request that the Court approve the Motion for Distribution of Net Settlement Fund and enter the [Proposed] Order Authorizing Distribution of Settlement Proceeds in the Alger Sub-Track submitted herewith.

DATED: December 18, 2012                     Respectfully submitted,


**KESSLER TOPAZ
MELTZER & CHECK, LLP**


_____/s/ Michael K. Yarnoff_____
Michael K. Yarnoff
Jennifer L. Enck
280 King of Prussia Road
Radnor, PA  19087
Telephone:  (610) 667-7706
Facsimile:   (610) 667-7056

*Investor Lead Counsel for Plaintiffs
in the MDL Alger Sub-track*